# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**WHITMAN-WALKER CLINIC, Inc. et. al.**
**(Plaintiffs)**

**V.**                                                **1:20-cv-01630-JEB**

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES et. al.**
**(Defendants)**

## AMICUS BRIEF BY
**(1)  DE FACTO ATTORNEYS GENERAL, (2)  SPECIAL FORCES OF LIBERTY,  (3) THE ALLIANCE OF BLACK AND WHITE EX-GAYS AND EX-TRANS, (4)  CENTER FOR GARDEN STATE FAMILIES,  (5) COALITION OF DOCTORS DEFENDING REPARATIVE THERAPY, (6)  THE COALITION OF MULTI-RACIAL PASTORS, (7) WARRIORS FOR CHRIST IN SUPPORT OF DEFENDANTS**

## QUESTION PRESENTED

Should the Plaintiffs' case be dismissed for lack of subject matter jurisdiction and for failing to state a claim upon which relief can be granted?

What is the controlling Constitutional basis supporting the 2020 Trump Rule that repealed and replaced the 2016 Obama Rule and does *Bostock* overrule the 2020 Trump Rule?

Should the Court sua sponte dismiss this case?

## INTEREST OF THE PARTIES

The interest of the parties are found in the attached declarations.[1]

---

[1] **De Facto Attorneys General** consists, primarily of former Judge Advocate Generals, assistant State Attorneys General, and assistant U.S. Attorneys. De Facto Attorneys General takes on political hot topics that are sometimes too complex for the different aspects of DOJ to handle alone.  The paramount mission of De Facto Attorneys General is to uphold the Constitution of the United States and the rule of law, preventing other groups like the Plaintiffs in this case from twisting the Constitution. See *Penkoski v. Bowser*, 1:20-cv-01519 (D.D.C. June 10, 2020).

**Special Forces Of Liberty** is a group of highspeed Soldiers who author laws that parallel Judaeo-Christian principles in an effort to maximize human flourishing. Some of the relevant legislation that SFOL has authored that is relevant to this action is the Disentanglement Act; the Life Appropriation Act; the Elevated Marriage Act; and the Stop Social Media Censorship Act. (See www.disentanglementact.com; www.lifeappropriationact.com; www.stopsocialmediacensorshipact.com)

**An Alliance Of Ex-Gays and Ex-trans** consists of former self-identified homosexuals and self-identified transvestites who were once leaders in the LGBTQ cult. They now seek to expose the horrors and lies of the dangerous LGBTQ cult and its religious ideology, while giving voice to voiceless ex-gays and ex-trans individuals. See Declaration of Alliance of Black and White Ex-Gays and Ex-Trans; see declarations of Quinlan, Goodspeed, Cothran, and Harley.

**The Center For Garden State Families'** mission is to protect and promote faith, freedom and the natural family, in culture and public policy. https://www.gardenstatefamilies.org/. See the declaration of Quinlan.

**The Coalition Of Doctors Defending Reparative Therapy** consists of doctors who attest that there is no such thing as a gay gene and that the idea that sexual orientation is predicated on immutability is a lie. See the declaration of Dr. Tara King.

**Coalition Of Multi-Racial Pastors** consists of pastors, religious experts, theologians, and licensed ministers who testify that Secular Humanism is a religion and that the LGBTQ cult is a denominational sect that is inseparably linked to that religion. See the Declaration of the Coalition of Multi-Racial Pastors.

**Warriors For Christ** consists of Christians who have been viciously persecuted in the LGBTQ cult in the wake of the government's endorsement of their dangerous and phony tolerance agenda. https://www.wfcchurch.org/. See the declaration of Pastor Penkoski, Lisa Boucher, and Christian Resistance.

**TABLE OF CONTENTS**

I.  INTRODUCTION
......................................................................................................................1

II.  THE 2016 OBAMA RULE VIOLATED THE ESTABLISHMENT CLAUSE OF THE
FIRST AMENDMENT WHEREAS THE TRUMP 2020 RULE DOES NOT
......................................................................................................................2

    A.  LEGAL PROCEDURAL HISTORY CONCERNING SECULAR HUMANISM
......................................................................................................................4

        1.  From 1776 to 1940s Religion Involved Theism
......................................................................................................................4

        2.  From The 1940s Forward - Religion Includes Theism and Non-theism
......................................................................................................................4

    B.  THE ESTABLISHMENT CLAUSE AS IT RELATES TO SECULAR HUMANISM
......................................................................................................................14

    C.  SECULAR HUMANISM - A DEFINITION
......................................................................................................................17

    D.  THE EVIDENCE SHOWS THAT THE LGBTQ CULT IS A  DENOMINATIONAL
        SECT THAT IS INSEPARABLY LINKED TO THE RELIGION OF SECULAR
        HUMANISM.

III.  THE PLAINTIFFS' CASE SHOULD BE DISMISSED WITH PREJUDICE BECAUSE
THE 2016 OBAMA RULE VIOLATES ALL THREE PRONGS OF THE *LEMON* TEST BY A
LANDSLIDE
......................................................................................................................22

    A.  THE COURT SHOULD DISMISS THE PLAINTIFFS' COMPLAINT BECAUSE
        THE 2016 OBAMA RULE WAS A SHAM THAT FAILS PRONG ONE OF
*LEMON*
......................................................................................................................23

        1.  The Language Within The Four Corners Of The Plaintiffs' Self-Defeating
            Complaint Shows That The 2016 Rule Was A Sham That Lacked A Primary
            Secular Purpose
......................................................................................................................24

        2.  The Plaintiffs Falsely Camouflaging Their Plight In Equal Protection
            Language Shows The 2016 Rule Was A Sham Predicated On An
            Unprincipled Ploy
......................................................................................................................27

        3.  The Plaintiffs' Attempted Misuse Of The Substantive Due Process Clause
            Demonstrates That the 2016 Rule Is A Non-Secular Sham
......................................................................................................................30

        4.  The Plaintiffs' Case Is Based On Nothing More Than Emotional Appeals
            That Cannot Be Used To Usurp The Establishment Clause
......................................................................................................................33

    B.  THE COURT SHOULD DISMISS THE PLAINTIFFS ACTION BECAUSE THE
        2016 RULE FAILS PRONG TWO OF THE *LEMON* TEST WHEREAS THE 2020

TRUMP RULE DOES NOT
.................................................................................................................................33
    C. THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE
      2016 OBAMA RULE FAILED PRONG THREE OF LEMON
.................................................................................................................................38
V.  THE PLAINTIFFS' CASE SHOULD BE DISMISSED BECAUSE HHS HAS A
NARROWLY TAILORED COMPELLING INTEREST TO UPHOLD COMMUNITY
STANDARDS OF DECENCY
.................................................................................................................................39
VI.  ADDRESSING THE ULTIMATE QUESTION - PUBLIC INTEREST
.................................................................................................................................41
VII.  CONCLUSION
.................................................................................................................................45

**Table Of Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997)
.................................................................................................................................22
*ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*,
698 F.2d 1098  (11th Cir. 1983)
.................................................................................................................................23
*Am. A theists, Inc. v. City of Starke*,
2007 U.S. Dist. LEXIS 19512 (M.D. Fla. 2007)
.................................................................................................................................25
*Bostock v. Clayton Cty., Ga.*,
590 U.S. ___, 2020 WL 3146686 (2020)
...........................................................................................................2, 21, 31, 36
*Berman* was had in *George v. United States*,
196 F.2d 445 (9th Cir. 1952)
.................................................................................................................................8
*Brown v. Board of Educ.*,
347 U.S. 483 (1954)
.............................................................................................................................28, 36
*Bowers v. Hardwick*,
478 U. S. 186 (1986)
.................................................................................................................................31
*Board of Educ, of Kiryas Joel Vill. Sch. Dist.v. Grumet*,
512 U.S. 687 (1994)
.............................................................................................................................34, 35
*Bookcase, Inc. v. Broderick*,
18 N.Y.2d 71 (1966)
.................................................................................................................................40
*City of Boerne v. Flores*,

521 U.S. 507 (1997)

...............................................................................................................................34

*County of Allegheny v. ACLU,*
492 US 573 (1989)

..............................................................................................................................35

*Cooper Industries, Inc. v. Aviall Services, Inc.*
543 U.S. 157 (2004)

...............................................................................................................................36

*Committee for Pub. Educ. v. Nyquist,*
413 U.S. 756 (1973)

...............................................................................................................................38

*Church of the Holy Trinity v. United States,*
143 U.S. 457 (1892)

...............................................................................................................................43

*Davis v. Beason,*
133 U.S. 333 (1890)

.......................................................................................................................5, 6, 14

*District Attorney's Office for Third Judicial Dist.* v. *Osborne,*
557 U. S. 52 (2009)

...............................................................................................................................31

*Dred Scott v. Sandford,*
60 U.S. 393 (1857)

...............................................................................................................................36

*Edwards v. Aguillard,*
482 U.S. 578 (1987)

..........................................................................................................................22, 23

*Everson v. Board of Education,*
330 U.S. 1 (1947)

.......................................................................................................................14, 16, 38

*Fellowship of Humanity v. County of Alameda,*
153 Cal. App. 2d 673 (1957)

.........................................................................................................................3, 10

*George v. United States,*
196 F.2d 445 (9th Cir. 1952)

.................................................................................................................................9

*Ginsberg v. New York,*
390 U.S. 629 (1968)

...............................................................................................................................31

*Hein v. Freedom From Religion Foundation,*
551 U.S. 587 (2007)

.................................................................................................................................2

*Holloman v. Harland,*
370 F.3 1252 (11th Cir. 2004)

...............................................................................................................................31

*Indiana Civil Liberties Union v. O'Bannon,*
259 F.3d 766 (7th Cir. 2001)
.................................................................................................................34

*Jagar v. Douglas County School,*
862 F.2d 824 (11th Cir. 1989)
.................................................................................................................32

*Kiobel v. Royal Dutch Petroleum Co.,*
 621 F.3d 111 (2d Cir. 2010)
.................................................................................................................42

*Larkin v. Grendel's Den,*
459 U.S. 116 (1982)
.................................................................................................................34

*Lawrence v. Texas,*
539 U.S. 558 (2003)
.................................................................................................................31

*Lemon v. Kurtzman,*
403 U.S. 602 (1971)
.............................................................................................................22, 23

*Lee v. Weisman,*
505 U.S. 577 (1992)
.................................................................................................................23

*Lindell v. McCallum,*
352 F.3d 1107 (7th Cir. 2003)
...................................................................................................................4

*Liberty v. Nyquist,*
413 U.S. 756 (1973)
.................................................................................................................23

*Lynch v. Donnelly,*
465 U.S. 668 (1984)
.................................................................................................................37

*Malnak v. Yogi,*
592 F.2d 197 (3d Cir.1979)
...................................................................................................................4

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
138 S. Ct. 1719 (2018)
.................................................................................................................23

*McCreary Cnty, Ky. v. ACLU of Ky.,*
545 U.S. 844 (2005)
.............................................................................................................23, 33

*Mitchell v. Helms,*
530 U.S. 793 (2000)
.............................................................................................................22, 38

*Mishkin v. State of New York,*
383 U.S. 502 (1966)
.................................................................................................................40

*Moore* v. *East Cleveland,*
431 U. S. 494  (1977)
................................................................................................................................32

*Ninth Circuit in Berman v. United States,*
156 F.2d 377 (9th Cir. 1946)
..................................................................................................................................8

*Obergefell v. Hodges,*
135 S.Ct. 2584 (2015)
.........................................................................................................23, 24, 31

*Paris Adult Theatre I v. Slaton,*
413 US 49 (1973)
................................................................................................................................39

*Planned Planned Parenthood v. Casey,*
505 U.S. 833 (1992)
................................................................................................................................43

*Plessy v. Ferguson,*
163 U.S. 537 (1896)
................................................................................................................................36

*Reynolds v. United States,*
98 U.S. 145 (1878)
.................................................................................................4, 5, 14, 31, 43

*Real Alternatives, Inc. v. Se'y Dep 't of Health & Human Ser*, 150 F. Supp. 3d 419 (3d Cir. 2017)
................................................................................................................................4, 18

*Rosenberger v. Rector & Visitors of the Univ, of Va ,*
515 U.S. 819 (1995)
................................................................................................................................38

*Santa Fe Indep, Sch. Dist v, Doe,*
530 U.S. 290 (2000)
................................................................................................................................37

*Schlegel v. United States,*
416 F. 2d 1372 (Ct. Cl. 1969)
................................................................................................................................37

*School District of A Bington Township, Pa. v. Schempp,*
374 U.S. 203 (1963)
................................................................................................................14, 16

*School Dist. v. Ball,*
473 U.S. 373 (1985)
................................................................................................................................34

*Slaughter-House Cases,*
83 U.S. 36 (1873)
................................................................................................................................28

*Seminole Tribe of Fla. v. Florida,*
517 U.S. 44 (1996)
................................................................................................................................37

*St. Joseph Stock Yards Co. v. United States,*

298 U.S. 38 (1936)
..................................................................................................................37

*Theriault v. Silber*,
547 F.2d 1279 (5th Cir. 1977)
....................................................................................................................4

*Thomas v. Review Bd.*,
101 S.Ct. 1425 (1981)
....................................................................................................................4

*Torcaso v. Watkins*,
367 U.S. 488 (1961)
...................................................................................................3, 10, 16

*Troxel* v. *Granville*,
530 U.S. 57 (2000)
..................................................................................................................32

*Trunk v . City of San Diego*,
629 F.3d 1099 (9th Cir. 2011)
..................................................................................................................25

*United States v. Kauten*,
133 F.2d 703 (2d Cir. 1943)
....................................................................................................................8

*United States v. Seeger*,
380 U.S. 163 (1965)
............................................................................................................11, 13

*United States v. Macintosh*,
283 U.S. 605 (1931)
....................................................................................................................7

*United States* v. *Salerno*,
481 U. S. 739 (1987)
..................................................................................................................31

*United States v. Windsor*,
133 S.Ct. 2675 (2013)
..................................................................................................................31

*Wallace v. Jaffree*,
472 U.S. 38 (1985)
..................................................................................................................34

*Washington Ethical Society v. District of Columbia*,
101 U.S. App. D.C. 371 (D.C. Cir 1957)
..............................................................................................................3, 10

*Washington v. Glucksberg*,
521 U. S. 702 (1997)
..................................................................................................................31

*Wells v. City and County of Denver*,
257 F.3d 1132 (10th Cir. 2001)
....................................................................................................................4

*Welsh v. United States*, 398 U.S. 333 (1970)

.............................................................................................................13

*Zorach v. Clauson,*
343 U.S. 306 (1952)
.............................................................................................................10

**Other Authorities**

L. TRIBE, AMERICAN CONSTITUTIONAL LAW 826 (1978)
.....................................................................................................6, 14

Constitutional Definition of Religion, 91 HARV. L. Rav. 1056 (1978)
.......................................................................................6, 9, 12, 13, 14

50 U.S.C. § 456
...............................................................................................................8

P. JACOB, THE CONSCRIPTION OF CONSCIENCE: THE AMERICAN STATE AND THE
CONSCIENTIOUS OBJECTOR, 1940-47 (1952)
...............................................................................................................8

Toms and Whitehead, The Religious Student in Public Education: Resolving a Constitutional
Dilemma, 27 EMORY L.J. 3 (1978)
.............................................................................................................10

Blanshard, *Three Cheers for Our Secular State,* HUMANIST, Mar./Apr. 1976
.............................................................................................................10

50 U.S.C. § 456(J) (Supp. II 1972)
.............................................................................................................10

STAMHER, DEFINING RELIGION: FEDERAL AID AND ACADEMIC FREEDOM 1,
RELIGION AND PUBLIC ORDER, 116, 147 (1964)
.............................................................................................................11

Konvitz, The Meaning of "Religion" in the FirstAmendment: The Torcaso Case, 1963
CATHOLIC WORLD 288, 289-90.
.............................................................................................................11

P. TILLICH, DYNAMICS OF FAITH (1958)
.............................................................................................................12

P. TILLICH, THE SHAKING OF THE FOUNDATIONS (1972)
.............................................................................................................12

Bowser, *Delimiting Religion in the Constitution:A Classification Problem,* 11 VAL. U.L. REV.
163 (1977)
.............................................................................................................13

Boyan, *Defining Religion in Operational and Institutional Terms,* 116 U. PA. L. REv 479
(1968)
.............................................................................................................13

Clancy and Weiss, The Conscientious Objector Exemption: *Problems in Conceptual Clarity and
Constitutional Considerations,* 17 ME.L. REV. 479 (1968)
.............................................................................................................13

Clark, *Guidelines for the Free Exercise Clause,* 83 HARV. L. REV. 327 (1969)
.............................................................................................................13

Killilea, *Standards for Expanding Freedom of Conscience,* 34 U. Prrr. L. REv. 531 (1973)
.............................................................................................................13

Rabin, *When is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise,* 51 CORNELL L.Q. 231 (1966) ..................................................................................13

Comment, *Defining Religion: Of God, the Constitution and the* D.A.R., 32 U. CHI. L. REv. 533 (1965) ..................................................................................13

*Elimination of All Forms of Religious Intolerance,* U.N. Doc. A/8330 (1971) ..................................................................................13

Rabin, *When Is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise,* 51 CORNELL L.Q. 231, 244 (1966) ..................................................................................13

EDUCATION AMENDMENTS CONFERENCE REPORT, REP. No. 1701, 94th Cong., 2d Sess. 211 (1976) ..................................................................................15

LITTLE, PIERCE AND THE RELIGION CLAUSES: SOME REFLECTIONS IN SUMMARY, FREEDOM AND EDUCATION: PIERCE V. SOCIETY OF SISTERS RECONSIDERED 69, 72 (D. Kommers & M. Wa-hoske eds. 1978) ..................................................................................15

*Humanistic Values in the Public School Curriculum: Problems in Defining an Appropriate "Wall of Separation,"* 61 Nw. U.L. REV. 795 (1966) ..................................................................................16

KOLENDA, RELIGION WITHOUT GOD (1976) ..................................................................................16

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1173 (W. Morris ed. 1973 ..................................................................................16

2 SHORTER OXFORD DICTIONARY ON HISTORICAL PRINCIPLES 1828 (1934) ..................................................................................17

G. HOLYOAKE, SECULARISM, THE PRACTICAL PHILOSOPHY OF THE PEOPLE (1845) ..................................................................................17

G.HOLYOAKE, LIFE OF HOLYOAKE SIXTY YEARS OF AN AGITATOR'S LIFE 293-94 (1906) ..................................................................................17

G. HOLYOAKE, THE HISTORY OF THE LAST TRIAL BY JURY FOR ATHEISM IN ENGLAND (M. O'Hair ed. 1972) ..................................................................................17

F. SCHAEFFER, THE GOD WHO IS THERE (1968) ..................................................................................17

H. BROWN, THE RECONSTRUCTION OF THE REPUBLIC 19 (1977) ..................................................................................17

J. SIRE, THE UNIVERSE NEXT DOOR 29 (1976) ..................................................................................17

Stacy Swimp, *LGBT Comparison of Marriage Redefinition to Historical Black Civil Rights Struggles is Dishonest and Manufactured* (March 7, 2014) ..................................................................................28

LIFE APPROPRIATION ACT

......................................................................................................39

(UCMJ) 809.ART.90

......................................................................................................41

## I.  INTRODUCTION

The Court should dismiss the Plaintiffs' eight count self-defeating complaint for lacking

subject matter jurisdiction and because the Plaintiffs' complaint fails to state a claim upon which

relief can be granted.  The evidence shows that the paramount legal basis supporting the 2020

Trump Rule, which includes the so-called unrelated statutes for purposes of this brief, is the First

Amendment Establishment Clause of the United States Constitution.[1]  The 2020 Trump Rule is

neutral and secular and does not violate the Establishment Clause of the First Amendment,

whereas the 2016 Obama Rule is controversial and non-secular and violates the Establishment

Clause from every angle.  According to the testimonies of ex-gays, ex-transvestites, medical

experts, persecuted Christians, and licensed ministers,[2] "sexual orientation" orthodoxy and

"gender identity" ideology are doctrines, dogmas, mythologies that are inseparably linked to the

religion of Secular Humanism.[3]  The 2016 Obama Rule was supremely unconstitutional in its

making and enforcement because it failed all three prongs of the *Lemon* Test and, therefore,

violated the Establishment Clause of the First Amendment by (1) constituting a non-secular

sham that lacked a primary secular purpose, by (2) cultivating an indefensible legal weapon

---

[1] "The [2020] Trump] Rule eliminates the prohibitions on gender identity and sexual orientation discrimination in these regulations  [85 Fed. Reg. at 37, 219-21, 37,247-48 (to be codified at 45 C.F.R. §§ 147.104(e), 155.120(c)(1)(ii), 155.220(j)(2)(i), 156.200(e), & 156.1230(b)(2) 42 C.F.R. §§ 438.3(d)(4), 438.206 (c)(2), and 440.262, 42 C.F.R. § 438.3(d)(4),  42 C.F.R. § 460.98(b)(3)]"  all for the same reason - the Establishment Clause of the First Amendment requires that sexual orientation and gender identity be removed because their inclusion shows respect, endorsement, and favoritism towards the LGBTQ Secular Humanist religion.
[2] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King  ¶¶ 1-20.
[3] Secular Humanism is also commonly referred to postmodern western individualistic moral relativism, expressive individualism, or the religion of wokeness.
https://podcasts.apple.com/us/podcast/ep-1024-the-religion-of-wokeness/id1047335260?i=10004 76823217

against non-observers of the religion of Secular Humanism, and by (3) serving to excessively

entangle the government with the religion of Secular Humanism, as advocated by the LGBTQ

cult. [4] The 2016 Obama Rule cannot be reinstated because it fails all three prongs of *Lemon*,

whereas the 2020 Trump Rule aligns with what the Establishment Clause requires.

## II. THE 2016 OBAMA RULE VIOLATED THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT WHEREAS THE TRUMP 2020 RULE DOES NOT

"The Establishment Clause of the First Amendment to the United States Constitution

declares: "[The Government] shall make no law respecting an establishment of religion." U.S.

Const. amend. I." (DE # 1 ¶ 293). "The Establishment Clause prohibits the government from

favoring one religion over another, or religion over non-religion." Id.[5] One of the paramount

duties of this Honorable Court is to determine the trajectory of the First Amendment.  Justice

Scalia repeatedly said that the most under-developed area of the law is Establishment Clause

jurisprudence, and this *Amici* brief will help cure that.  Preliminarily, it is important for *Amici* to

---

[4] The Plaintiffs contend that the language of the 2020 Trump Rule should revert back to the language of the 2016 Obama Rule by relying on the recent decision in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (2020).  (DE # 1 ¶ 96). The Plaintiffs accuse the Defendants of lacking an adequate legal basis for modifying the rule, alleging that the Defendants adjusted the Rule based on a single district court ruling out of Texas. (DE # 1 ¶ 13). The legal basis that commands that the 2020 Trump Rule replace the 2016 Obama Rule is the First Amendment Establishment Clause because the language of 2016 Obama Rule, which included the doctrines of sexual orientation and gender identity, caused the Rule to violate the Establishment Clause by putting the religion of Secular Humanism over non-religion.  The 2016 Obama Rule was non-secular and controversial, whereas the 2020 Trump Rule is secular and neutral.  The Establishment Clause requires that the Government view men as men and women are women. The Free Exercise Clause allows the Plaintiffs to pretend that they are not.
[5] HHS is part of the executive branch and the Establishment Clause applies just as equally to Executive Branch expenditures as it does to legislative exercises of the Taxing and Spending Power, to permit Executive Branch use of appropriated funds to accomplish an unconstitutional end would mean that "Establishment Clause protection would melt away." (Souter, J., dissenting). *Hein v. Freedom From Religion Foundatio*n , 551 U.S. 587, 640 (2007) (Souter, J., dissenting).

establish that (1) Secular Humanism is a religion for the purposes of the First Amendment

Establishment Clause, that (2) the LGBTQ cult is a non-secular religious organization that is

inseparably linked to the religion of Secular Humanism, and that (3) "gender identity" ideology

and "sexual orientation" orthodoxy are doctrines that flow directly out of the religion of Secular

Humanism in a manner that is barred from government's respect, endorsement, favoritism, and

recognition under the Establishment Cause for the very reasons set forth in the Plaintiffs'

self-defeating complaint. ( See DE # 1 ¶¶ 291 -302).

Yet, the first question to answer is what is religion? According to religious experts, all

religion amounts to is a set of unproven answers to the greater questions like why are we here,

what gives us identity, what should we be doing as humans, and what happens after death.[6]   The

evidence shows that the Establishment Clause of the First Amendment was not merely designed

to stop the government from recognizing the edicts of institutionalized religions, but it was also

designed - if not more so - to prohibit the government from respecting the doctrines of

non-institutionalized religions, like LGBTQ Secular Humanism. Id.[7] The *Amici*'s did not come

up with the idea that Secular Humanism is a religion for the purposes of the First Amendment

Establishment Clause. The Supreme Court and just about all of the Courts of appeals did.[8]   The

---

[6] (Decl. Coalition of Multi-Racial Pastors ¶ 2)

[7] The fact of the matter is that it takes a huge amount of religious faith to believe that mankind is just a bundle of accidental particles, animated pieces of meat, or a bundle of chemicals or that there is no design or higher law at work.  Countless religious experts have acknowledged that "irreligion" is "religion," that a "critic of religion" is "a new religion."

[8] The United States Supreme Court already found that Secular Humanism is a religion for the purposes of the First Amendment Establishment Clause in *Torcaso v. Watkins*, 367 U.S. 488, n. 11 (1961), stating "among religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism, and others. See *Washington Ethical Society v. District of Columbia*, 249 F.2d 127, 101 U.S. App. D.C. 371 (D.C. Cir 1957); *Fellowship of Humanity v. County of Alameda*, 153 Cal.App.2d 673, 315 P.2d 394 (1957); II Encyclopaedia of the Social Sciences 293; 4

*Amici* begin their analysis on the procedural history of Secular Humanism being recognized as a religion by the Courts.

## A. LEGAL PROCEDURAL HISTORY CONCERNING SECULAR HUMANISM

### 1. *From 1776 to 1940s Religion Involved Theism*

The Supreme Court did not undertake an extended interpretive examination of the religion clauses of the First Amendment until the 1870's. Prior to that time "religion" was assumed to be theism. However, the heated controversy concerning the Mormon Church forced the Supreme Court to define "religion" in *Reynolds v. United States*, 98 U.S. 145 (1878). Congress passed a law making bigamy a criminal offense in any territory under the jurisdiction of the federal government. *Reynolds*, 18. 98 U.S.at 146. The legislation was clearly aimed at the Mormon practice of polygamy, which conflicted with Christian theism's tenet of monogamy. See R. MORGAN, THE SUPREME COURT AND RELIGION 40-44 (1972). George Reynolds, a Mormon, was indicted and convicted of bigamy. *Id.* at 146. Mr. Reynolds claimed the right to practice polygamy, a tenet of faith in his religion, as a guarantee of the First Amendment Free Exercise Clause. Id. at 161-62. The Supreme Court replied that:

> Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a necessary part of religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice. . . .

---

Encyclopaedia Britannica (1957 ed.) 325-327; 21 id., at 797; Archer, Faiths Men Live By (2d ed. revised by Purinton), 120-138, 254-313; 1961 World Almanac 695, 712; Year Book of American Churches for 1961, at 29, 47." Most of the Federal Court of appeals have also already found that Secular Humanism is a religion for the purpose of the First Amendment Establishment Clause in cases such as *Malnak v. Yogi*, 592 F.2d 197, 200-15 (3d Cir.1979); *Theriault v. Silber*, 547 F.2d 1279, 1281 (5th Cir. 1977); *Thomas v. Review Bd.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003); *Real Alternatives, Inc. v. Se'y Dep 't of Health & Human Ser*, 150 F. Supp. 3d 419, 2017 WL3324690 (3d Cir. Aug. 4, 2017); and *Wells v. City and County of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001). (See also the Decl. of Multi-Racial Pastors ¶¶ 2-3)

> So here, as a law of the organization of a society under the exclusive dominion of the
> United States, it is provided that plural marriages shall not be allowed. Can a man excuse
> his practices to the contrary because of his religious belief? To permit this would be to
> make the professed doctrines of religious belief superior to the law of the land, and in
> effect to permit every citizen to become a law unto himself. Government could exist only
> in name under such circumstances. *Reynolds* , 98 U.S. at 166-167.

The Supreme Court upheld the Act's constitutionality and established some general theistic

guidelines by which the religious clauses would be interpreted. *Id.* at 166. *Reynolds* laid the seed

for the belief-action dichotomy which persists today within the Free Exercise Clause. *Reynolds*

was the first decision in which the Supreme Court restricted religious freedom to "mere belief

and opinions," by declaring that "[C]ongress was deprived of all legislative power over mere

opinion, but was left free to reach actions which were in violation of social duties or subversive

of good order....." The Supreme Court in *Reynolds* presupposed that the United States was a

Christian nation that supported traditional theistic tenets.

   The *Reynolds* rationale has great First Amendment implications when it is realized that

the traditional theistic religious practices that the *Reynolds* court presupposed were entitled to

First Amendment protection have now judicially been reduced to "mere opinion" or "belief,"

which has implications for both the Free Exercise Clause and the Establishment Clause. Yet,

*Reynolds* also signaled that traditional theism, and, in particular, Christianity, has lost its

historically-preferred position.

   The Mormon cases following *Reynolds* represent no substantial departure or addition to

the reasoning of *Reynolds*.  Eleven years after *Reynolds* the Supreme Court, in *Davis v. Beason*,

133 U.S. 333 (1890) elaborated significantly upon the religion clauses. The Supreme Court held

that the Mormon appellant's "opinions" concerning polygamy were not religious tenets, and that

not only the practice, but also the teaching or counseling of polygamy constituted criminal

actions.  The importance of *Davis* lies in the Supreme Court's definition of the term "religion" and its reaffirmation of traditional Christian theism. The Supreme Court held:

> The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose for reverence for his being and character, and of obedience to his will.  It is often confused with the cultus or form of worship of a particular sect, but it is distinguishable from the latter. . . . It was never intended or supposed that the [first] amendment could be invoked as a protection against the legislation for the punishment of acts inimical to the peace, good order and morals of society. . . . However free the exercise of religion may be, it must be subordinate to the criminal laws of the country passed with reference to actions regarded by general consent as properly the subjects of punitive legislation. . . . Probably never in the history of this country has it been seriously contended that the whole punitive power of the government for acts, recognized by the general consent of the Christian world in modern times as proper matters for prohibitory legislation, must be suspended in order that the tenets of a religious sect encouraging crime may be carried out without hinderance. *Davis*, 133 U.S. at 342 - 343.

Again the Supreme Court was equating "religion" with theism, and drawing from theism its absolute monogamy standard.  *Davis* provides a very appropriate example of the predominant judicial image of religion which stressed traditional elements like theologies, sacraments, and above all, worship of a deity.[9]

Referring to *Davis*, Harvard law professor, Lawrence Tribe stated that "at least through the nine-teenth century, religion was given a fairly narrow reading . . . 'religion' referred to theistic notions respecting divinity, morality, and worship..." L. TRIBE, AMERICAN CONSTITUTIONAL LAW 826 (1978).   Religion, as defined in *Davis,* involves a belief in a "Creator," which, the Supreme Court held, imposes certain obligations upon each individual to obey the will of the "Creator," or Supreme Being.  This definition of religion mirrors that understood by James Madison, and those within the historical milieu that drafted the First Amendment,[10] and is, therefore, both historically and constitutionally accurate.  Moreover, the

---

[9] See Constitutional Definition of Religion, 91 HARV. L. Rav. 1056, *supra* note 1060 (1978).
[10]  See note 31 *supra* and accompanying text.

Supreme Court's definition corresponds with American religious heritage and was applicable to a society overwhelmingly dominated by theistic Christianity. This non-sectarian definition, applied to a Judeo-Christian society, is clearly compatible with the First Amendment religion clauses.[11]

To summarize, the Supreme Court in *Reynolds* and *Davis* basically established three things (1) religion involves a deity, (2) citizens can believe whatever they want, and (3) the legislature can pass laws based on Christian morality, prohibiting any pagan religious practice that is self-evidently barbaric and in opposition to Christian morality, but the government cannot mandate belief in Christianity.  The Supreme Court was essentially acknowledging the fact that without faith, there is no basis for morality and without morality, there is no basis for law, asserting that America is unofficially a Christian Nation without requiring a belief in the merits of Christian doctrine.

### 2. *From The 1940s Forward - Religion Includes Theism and Non-theism*

Beginning in the 1940's, traditional theistic religion came under increasing attack. The federal courts began to broaden and diversify the definition of "religion," until by the end of the 1960's the judicial definition of religion was altered from sustenance of belief-belief in and obligation owed to the "Creator" to the impact of the belief on the life of the person expressing and holding it.  The judicial transformation of "religion" corresponds to the change that was taking place in a previously theistic society.  Society's basis of truth was shifting from traditional theism's emphasis on God-centeredness to Secular Humanism's emphasis on man-centeredness, with the result being that the finite man of society ignores the absolutes revealed by God and instead relies upon the rationalization of his own mind.

---

[11] Following the *Davis*, the Supreme Court rendered a decision in *United States v. Macintosh*, 283 U.S. 605 (1931) that served to reinforce *Davis*.

The signaled departure from theistic religion came in *United States v. Kauten*, 133 F.2d

703 (2d Cir. 1943). [12] *Kauten* sought exemption from military service as a conscientious

objector. He argued that as a matter of "religious conscience" he could not take up arms to

defend the United States but admitted that his position was not based upon a "belief in Deity."[13]

The Second Circuit accepted Kauten's assertion that his belief was a "religion" by stating

that:

> Religious belief arises from a sense of the inadequacy of reason as a means of relating the
> individual to his fellow men and to his universe a sense common to men in the most
> primitive and the most highly civilized societies....It is a belief finding expression in a
> conscience which categorically requires the believer to disregard elementary self-interest
> and to accept martyrdom in preference to transgressing its tenets....[Conscientious
> objection] may justly be regarded as a response of the individual to an inward mentor,
> call it conscience or God, that is for many persons at the present time the equivalent of
> what has always been thought a religious impulse.[14]

---

[12] *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943). Interpreting the same statute, the
*Ninth Circuit in Berman v. United States*, 156 F.2d 377 (9th Cir. 1946), *cert. denied,* 329 U.S.
795 (1946), again restated the traditional definition of religion. The court held that "religious
training and belief" is something apart from conscience or "high moralistic philosophy." 156
F.2d at 380. In his dissent, Judge Denman argued for the more expansive concept of religion. He
said: [Many of the great religious faiths with hundreds of millions of followers have no God .... It
is wrong to say that 'a sincere devotion to a moralistic philosophy' is inconsistent with 'a belief in
his responsibility to an authority higher and beyond any earthly one,' if that supernatural
authority is confined to a belief in a particular god. This would exclude all Taoist China and in
the Western world all believers in Comte's religion of humanism in which humanity is exalted
into the throne occupied by a supreme being in monotheistic religions. Id. at 384.  A similar
result as that of *Berman* was had in *George v. United States*, 196 F.2d 445 (9th Cir. 1952).
[13] *Id*.at 705, 707. The *Kauten* court was interpreting the Selective Training and Service Act, 50
U.S.C. § 456(J)(Supp. 11 1972). See generally P. JACOB, THE CONSCRIPTION OF
CONSCIENCE: THE AMERICAN STATE AND THE CONSCIENTIOUS OBJECTOR,
1940-47 (1952).
[14] *United States v. Kauten*, 133 F.2d 703, 708 (2d Cir. 1943). Interpreting the same statute, the
Ninth Circuit in *Berman v. United States*, 156 F.2d 377 (9th Cir. 1946), cert. denied, 329 U.S.
795 (1946), again restated the traditional definition of religion. The court held that "religious
training and belief" is something apart from conscience or "high moralistic philosophy." 156
F.2d at 380. In his dissent, Judge Denman argued for the more expansive concept of religion. He
said
"[Many of the great religious faiths with hundreds of millions of followers have no God .... It is
wrong to say that 'a sincere devotion to a moralistic philosophy' is inconsistent with 'a belief in

The *Kauten* decision represents an intense and dramatic shift in emphasis. Whereas *Davis* saw religion as relating man to God, *Kauten* examined the relationship of man to the broad universe and to other men. Where most courts had considered the external attributes of a denomination, its dogma, doctrines, and creeds, the Second Circuit focused on the psychological function of the belief in the life of the individual.[15]

Although *Kauten* concerned the interpretation of the Selective Service Act of 1940, beginning with *United States v. Ballard*, 322 U.S. 78 (1944), the courts began to shift their inquiry and analysis of "religion." In *Ballard*, the Supreme Court held that the truth or verity of a person's religious doctrines or beliefs could not be considered by a judge or jury without running afoul of the First Amendment. *Ballard*, 322 U.S. at 86. The Supreme Court concluded that only the particular adherent's sincerity of belief may be examined:

> [Freedom of religion] embraces the right to maintain theories of life and of death and of the hereafter which are rank heresy to followers of the orthodox faiths. . . . Men may believe what they can't prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are real as life to some may be incomprehensible to others. *Ballard* at 87-88.

In *Ballard* the Supreme Court made it clear that the classification of a "belief" as religion does not depend upon the tenets of the creed, but rather upon the sincerity of the belief. "Consequently, the characterization of a belief as religious would seem to be beyond the competence of anyone other than the adherent."[16] Thus, the Supreme Court has adopted a

---

his responsibility to an authority higher and beyond any earthly one,' if that supernatural authority is confined to a belief in a particular god. This would exclude all Taoist China and in the Western world all believers in Comte's religion of humanism in which humanity is exalted into the throne occupied by a supreme being in monotheistic religions." Id. at 384. A similar result as that of *Berman* was had in *George v. United States*, 196 F.2d 445 (9th Cir. 1952).

[15] *See Constitutional Definition,* supra note 12, at 1061.

[16] See *Constitutional Definition*, supra note 12, at 1063.

concept of religion which is tantamount to Secular Humanism's position of the centrality of man, because the basis of both is the deification of man's reason.[17]

The conceptual framework of religion as "belief" was enhanced by the Supreme Court's 1961 decision of *Torcaso v. Watkins*, 367 U.S. 488 (1961). In *Torcaso*, a unanimous Supreme Court held that it was unconstitutional for Maryland to require a declaration of belief in God as a condition to becoming a notary public because it placed the state "on the side of one particular sort of believers."[18] The Supreme Court held that this provision of the Maryland constitution invaded Torcaso's "freedom of belief and religion" because the Establishment Clause prevents the government from forcing a person to profess a belief or disbelief in any religion, aid any religion, oppose non-believers, or aid theistic' faiths[19] against non-theistic faiths.[20] The Supreme Court's continual dilution and dichotomization of "religion," represents the stark turnabout that

---

[17] In *Zorach v. Clauson*, 343 U.S. 306 (1952), the Court upheld off-campus release-time programs in public schools. The Court stated that "we are a religious people whose institutions presuppose a Supreme Being." Id. at 313. See also Toms and Whitehead, The Religious Student in Public Education: Resolving a Constitutional Dilemma, 27 EMORY L.J. 3 (1978). Several decisions were rendered in the mid-1950's which involved humanist organizations seeking tax exemption as religious institutions. *Washington Ethical Society v. District of Columbia*, 249 F.2d 127 (D.C. Cir. 1957); *Fellowship of Humanity v. County of Alameda*, 153 Cal. App. 2d 673, 315 P.2d 394 (1957). The courts avoided the constitutional question by construing the applicable statutes to include non-theistic groups and interpreting "religion broadly in terms of the social function of the group rather than the context of its beliefs." Id. at 406. See also Galanter, Religious Freedom in the United States: A Turning Point?, 1966 Wis. L. REv. 217 (1966).

[18] *Id.* at 490. Article 37 of the Declaration of Rights of the Maryland Constitution reads: "[N]o religious test ought ever be required as a qualification for any office of profit or trust in this State, other than a declaration of belief in the existence of God.... MARYLAND CONSTITUTION, art. 37.

[19] The Court considered theistic faiths as "those religions based on a belief in the existence of God." *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961).

[20] *Id.* at 495-96. The opinion did not reveal whether or not Torcaso had any beliefs or religion. One commentator has stated, however, that Torcaso was a "Secular Humanist." Blanshard, *Three Cheers for Our Secular State,* HUMANIST, Mar./Apr. 1976, at 17, 22.

has occurred since the *Davis* decision.[21] In the Supreme Court's view, the humanistic belief of deifying the individual and the rationalization of Man's mind qualifies as a religion. The "Creator" spoken of in *Davis* has taken on new rivals, which in the eyes of the judiciary are his equal. The *Torcaso* court was specific in the beliefs it identified as religious:

> Among religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddism, Taoism, Ethical Culture, Secular Humanism and others.[22]

*Torcaso* was the first Supreme Court decision to identify and accept "Secular Humanism" as a "religion." Although the Supreme Court did not define "Secular Humanism," it is clear that Secular Humanism is a religious belief system subject to First Amendment protection and prohibition. In 1965 the Supreme Court entered a final stage in defining religious belief, wherein "religion" and "conscience" are merged. In *United States v. Seeger,* 380 U.S. 163 (1965), the Supreme Court upheld the conscientious objector status of three men, despite the fact that their religious beliefs did not conform to the concept of religion as defined in section 6(j) of the Universal Military Training and Service Act of 1948. Patently, the Act only granted exemptions to objectors whose religion was directly related to their belief in a Supreme Being. 50 U.S.C. § 456(J) (Supp. II 1972). The Supreme Court examined the legislative history of the Act and concluded that Congress had intentionally provided a broad definition of "religion." The Supreme Court reasoned that Congress' utilization of the term "Supreme Being," rather than the term "God," indicated their intent to broaden the meaning of the word "religion."[23]

---

[21] STAMHER, DEFINING RELIGION: FEDERAL AID AND ACADEMIC FREEDOM 1, RELIGION AND PUBLIC ORDER, 116, 147 (1964); Konvitz, The Meaning of "Religion" in the FirstAmendment: The Torcaso Case, 1963 CATHOLIC WORLD 288, 289-90.
[22] *United States v. Seeger,* 380 US 163, 495 n.11 (1965)
[23] *Seeger,* 380 U.S. 163 at 175.

The Supreme Court attempted to define "Supreme Being" by consulting several progressive theologians,[24] most notably, Paul Tillich.  Tillich's view is that the essence of religion is "ultimate concern,"[25] and therefore, religion is itself "ultimate concern."  Further, Tillich postulates that the term "God" does not define religion, but it is "ultimate concern."[26] Tillich's thesis is that "the concern of any individual can be ranked, and that if we probe deeply enough, we will discover the underlying concern which gives meaning and orientation to a person's whole life."[27]   Under the belief as ultimate concern as religion theory proffered by Tillich, everybody has a religion.  Obviously, Tillich's theory minimizes the importance of a belief in Yahweh (YHWH), the God of the Bible. With dependence upon Tillich and the progressive theologians, the Supreme Court determined that a belief is valid if it is "sincere and meaningful [and it] occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God of one who clearly qualifies for the exemption. Where such beliefs have parallel positions in the lives of their respective holders we cannot say that one is 'in relation to a Supreme Being' and the other is not." *Seeger,* 380 U.S. at 166.  Therefore, a "belief" is

---

[24] Those authorities consulted included; Paul Tillich, John A. T. Robinson, Bishop of Woolwich, the Scheme of the Ecumenical Council, Vatican II, and Dr. David Saville Muzzey of the Ethical Culture. Id. at 163, 180-83.  (Decl. Coalition of Multi-Racial Pastors ¶ 2).
[25]  P. TILLICH, DYNAMICS OF FAITH 1-2 (1958) (hereinafter referred to as TILLICH). (Decl. Coalition of Multi-Racial Pastors ¶ 2).
[26] Tillich states: The name of this infinite and inexhaustible depth and ground of all being is God. That depth is what God means. And if that word has not much meaning for you, translate it, and speak of the depth of your life, of the source of your being, of your ultimate concern, of what you take seriously without any reservation. Perhaps, in order to do so, you must forget everything traditional that you have learned about God, perhaps even the word itself. For if you know that God means depth, you known much about him. You cannot then call yourself an atheist or unbeliever. For you cannot think or say: Life has no depth! Life is shallow. Being itself is surface only. If you could say this in complete seriousness, you would be an atheist; but otherwise you are not. He who knows about depth knows about God. P. TILLICH, THE SHAKING OF THE FOUNDATIONS 63-64 (1972).  (Decl. Coalition of Multi-Racial Pastors ¶ 2).
[27] *See Constitutional Definition,* supra note 12, at 1066.

constitutionally protected if it is in a "parallel position" to that of a belief in the traditional

theistic concept of God.[28] (Decl. Coalition of Multi-Racial Pastors ¶ 2)

The *Seeger* decision defined religion as all sincere beliefs "based upon a power or being,

or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent.[29]

Thus, according to *Seeger*, "religion" includes atheists and agnostics, as well as adherents to

traditional theism.[30]  The logical conclusion from the *Seeger* decision is that "[a]bsolute vertical

disbelief in the traditional sense - disbelief in God - is irrelevant"[31] to First Amendment

considerations.  In other words, belief or disbelief in the traditional theistic view of God

(Creator) is no longer relevant.  The conclusion is that a "belief" is a constitutionally protectable

religion only if it parallels a belief in traditional theism and does not rest "solely" upon practical

---

[28] *Id. See generally* Bowser, *Delimiting Religion in the Constitution:A Classification Problem,* 11 VAL. U.L. REV. 163 (1977); Boyan, *Defining Religion in Operational and Institutional Terms,* 116 U. PA. L. REv. 479 (1968); Clancy and Weiss, The Conscientious Objector Exemption: *Problems in Conceptual Clarity and Constitutional Considerations,* 17 ME.L. REV. 479 (1968); Clark, *Guidelines for the Free Exercise Clause,* 83 HARV. L. REV. 327 (1969); Killilea, *Standards for Expanding Freedom of Conscience,* 34 U. Prrr. L. REv. 531 (1973); Rabin, *When is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise,* 51 CORNELL L.Q. 231 (1966); Comment, *Defining Religion: Of God, the Constitution and the* D.A.R., 32 U. CHI. L. REv. 533 (1965).  (Decl. Coalition of Multi-Racial Pastors ¶ 2)
[29] *Seeger* at 176. In *Welsh v. United States*, 398 U.S. 333 (1970), the Supreme Court extended the *Seeger* rationale and held "that purely ethical and moral considerations were religious." The Supreme Court further blurred the distinction between religion and morality by holding that a sincere person may be denied an exemption only if his belief or belief system does "not rest upon and invade ethical or religious principles, but instead rests solely upon considerations of policy, pragmatism or expediency." *Id*. at 342-43.
[30] Comments one writer: The Supreme Court's expansive approach parallels evolving notions of religious toleration developing in the international community. For example, the United Nations Commission on Human Rights has defined "religion or belief'" as including "theistic, non-theistic, and atheistic beliefs." *Elimination of All Forms of Religious Intolerance,* U.N. Doc. A/8330 (1971) (draft convention). *See Constitutional Definition, supra* note 12, at 1065 n.59.
[31] Rabin, *When Is a Religious Belief Religious: United States v. Seeger and the Scope of Free Exercise,* 51 CORNELL L.Q. 231, 244 (1966) (hereinafter referred to as Rabin).

or expedient policies. The definition of religion as belief is a radical departure from the historical

definition of religion as used in traditional theism.  Furthermore, the judicial definition of

religion as belief is a sharp break with the early Supreme Court cases that defined religion as

Man's relationship to his Creator.[32]  From a preferred position within the religion clauses,

traditional theism has been relegated to the level of all other belief systems. (Decl. Coalition of

Multi-Racial Pastors ¶ 2).

### B. THE ESTABLISHMENT CLAUSE AS IT RELATES TO SECULAR HUMANISM

In 1878 the Supreme Court in *Reynolds v. United States*, 98 U.S. 145 (1878) framed the

Free Exercise clause in terms of a belief-action dichotomy and held that religious beliefs and

opinions are absolute and protected, whereas religious action is not.  Justice Rutledge, dissenting

in *Everson v. Board of Education*, 330 U.S. 1 (1947) of the Township of Ewing stated:

> "Religion" appears only once in the [First] Amendment. But the word governs two
> prohibitions and governs them alike. It does not have two meanings, one narrow to forbid
> "an establishment" and an other, much broader, for securing "the free exercise thereof."[33]

It follows then that what the Free Exercise Clause protects, the Establishment Clause prohibits

when such establishment is government-sponsored.  Therefore, in considering belief-as-religion,

if the government in any way sponsors, finances or becomes actively involved in the promotion

of a religion, a "sincere belief" of "ultimate concern," then such state action violates the

Establishment Clause.  Secular Humanism, being no less a religion than theism, is equally

susceptible to the Establishment Clause, and its expression, in any form, is clearly

---

[32] *Davis*, 133 U.S. 333 at 341.

[33] Id. at 32. "At the time the first amendment was adopted, the establishment and free exercise
clauses were probably compatible, even complementary." *Constitutional Definition*, supra note
12, at 1083. Professor Tribe states that to "the Framers, the religion clauses were at least
compatible and at best mutually supportive." L. TRIBE, supra note 87, at 814.

unconstitutional.  As Justice Clark stated in *School District of A Bington Township, Pa. v.*

*Schempp,* 374 U.S. 203, 225 (1963):

> [T]he State may not establish a "religion of secularism" in the sense of affirmatively
> opposing or showing hostility to religion, thus "preferring those who believe in no
> religion over those who do believe."[34]

The prohibition against the State establishing a "religion of secularism" was strengthened in

*Torcaso v. Watkins,* 367 U.S. at 495 n.11 in which the Supreme Court recognized that the First

Amendment grants the same protection and imposes the same limitations on the religion of

Secular Humanism as are applicable to theism.  Therefore, it logically follows that the

government is prohibited from establishing non-theistic or secular ideologies under the same

authority as it is prohibited from establishing theistic practices.

Historically speaking, the First Amendment implications of the broad view of

belief-as-religion applied in the public education system have been far-reaching.[35] Not only is the

---

[34] In seeming accord with the Supreme Court's mandate against the establishment of the "religion
of secularism" in the context of public education, an amendment was appended to the Higher
Education Amendments of 1976 which stated: "No grant, contract, or support is authorized under
the foreign studies and language development portions of Title II of the bill [amendment to the
National Defense Education Act] for any educational program, curriculum research and
development, administrator-teacher orientation, or any project involving one or more students or
teacher-administrators involving any aspect of the religion of secular humanism." 122
CONGRESSIONAL RECORD H 4,317-19 (daily ed. May 12, 1976). The amendment, offered
by former Representative John B. Conlan (R-Arizona), passed the House by a roll-call vote of
222 ayes, 174 notes. *Id.* at 4318. A similar provision was not included in the Senate version of
the Higher Education Amendments of 1976, and House-Senate conferees on the legislation later
dropped the amendment from the final version of the act signed by the President. See
EDUCATION AMENDMENTS CONFERENCE REPORT, REP. No. 1701, 94th Cong., 2d
Sess. 211 (1976). The humanists' reaction to the Conlan amendment was both vehement and
emotionally tinged. *See, e.g., The Evangelical Right: The Attack on Secular Humanism,*
HUMANIST, Sept./Oct. 1976.
[35] LITTLE, PIERCE AND THE RELIGION CLAUSES: SOME REFLECTIONS IN
SUMMARY, FREEDOM AND EDUCATION: PIERCE V. SOCIETY OF SISTERS
RECONSIDERED 69, 72 (D. Kommers & M. Wa-hoske eds. 1978). *See generally,* Comment,

government forbidden to establish a religion in the public school system, but the government is also prohibited from establishing religion through any of its governmental organs. This would include the court systems, legislative bodies, and executive agencies.

In the instant case, the Plaintiffs want the 2016 Obama Rule in place because they want the Government to establish "religion without God"[36] over non-religion, knowing that "sexual orientation" and "gender identity" are religious constructs that flow directly out of Secular Humanism.[37] The Supreme Court has recognized this "religion without God," like the one promoted by the LGBTQ cult, as the "religion of secularism." See *Schempp*, 374 U.S. 203 at 225. The Supreme Court, however, has mandated government's religious "neutrality."[38] The government's neutrality supposedly means that the government is to prefer no religion or religious group over and above another religion or group. *Torcaso* at 495. This means that the 2020 Trump Rule is constitutionally sound because it is neutral towards religion, whereas the 2016 Obama Rule is unconstitutional because it lacks religious neutrality.

## C. SECULAR HUMANISM - A DEFINITION

The word "secular" by definition refers to "the temporal rather than the spiritual."[39] "Secularism" is a doctrinal belief that morality is based solely in regard to the temporal well-being of mankind to the exclusion of all belief in God, a supreme being, or a future eternity.

---

*Humanistic Values in the Public School Curriculum: Problems in Defining an Appropriate "Wall of Separation,"* 61 Nw. U.L. REV. 795 (1966).

[36] KOLENDA, RELIGION WITHOUT GOD (1976).

[37] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20

[38] See, e.g., *Schempp* at 222, (wherein the Court speaks of a "wholesome 'neutrality.'" *Everson*, 330 U.S. at 18.

[39] AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1173 (W. Morris ed. 1973) (Decl. Coalition of Multi-Racial Pastors ¶ 3).

[40] "Humanism" is a philosophy or attitude that is concerned with human beings, their

achievement and interests, and the condition or quality of being human, rather than with the

abstract beings and problems of theology.[41] "Secularism" is nontheistic and "humanism" is

secular because it excludes the basic tenets of theism.  Therefore, Secular Humanism is

nontheistic. However, while Secular Humanism is nontheistic, it is religious because it directs

itself toward religious beliefs and practices that are in active opposition to traditional theism.[42]

_____

[40] 2 SHORTER OXFORD DICTIONARY ON HISTORICAL PRINCIPLES 1828 (1934). Secularism has been defined as "The view that consideration of the present well going of mankind should predominate over religious considerations in civil affairs or public education." Id.  (Decl. Coalition of Multi-Racial Pastors ¶  3).

[41] Id. at 640 (definition of Humanism). One of the earliest writers discussing secularism was George Holyoake. It was in 1845 that he defined "secularism" as the doctrine that morality should be based solely in regard to the well-being of mankind in the present life, to the exclusion of all considerations drawn from belief in God or in a future existence beyond death. See generally G. HOLYOAKE, SECULARISM, THE PRACTICAL PHILOSOPHY OF THE PEOPLE (1845). Moreover, Holyoake envisioned secularism as being "independent of theistical or other doctrine" rather than as atheistic or anti-theological in attempts to avoid being characterized himself as an atheist.  G.HOLYOAKE, LIFE OF HOLYOAKE SIXTY YEARS OF AN AGITATOR'S LIFE 293-94 (1906). Holyoake attempted to illustrate such independence with his "house" analogy: [A] man could judge a house as to its suitability of situation, structure, surround- ings, and general desirableness, without ever knowing who was the architect or landlord; and if as occupant, he received no application for rent, he ought in gratitude to keep the place in good repair. So it is with this world. It is our dwelling place. We know the laws of sanitation, economy, and equity, upon which health, wealth, and security depend. All these things are quite independent of any knowledge of the origin of the universe or the owner of it. And as no demands are made upon us in consideration of our tenancy, the least we can do is to improve the estate as our acknowledgement of the advantage we enjoy. This is Secularism. Id. at 294. Cf. G. HOLYOAKE, THE HISTORY OF THE LAST TRIAL BY JURY FOR ATHEISM IN ENGLAND (M. O'Hair ed. 1972). Holyoake's view, of course, is contrary to traditional biblical theism. E.g., F. SCHAEFFER, THE GOD WHO IS THERE (1968).

[42] H. BROWN, THE RECONSTRUCTION OF THE REPUBLIC 19 (1977). J. SIRE, THE UNIVERSE NEXT DOOR 29 (1976) (hereinafter referred to as SIRE). Sire comments: We can summarize this conception of man in God's image by saying that, like God, man has personality, self-transcendence, intelligence (the capacity for reason and knowledge), morality (the capacity for recognizing and understanding good and evil), gregariousness or social capacity (man's characteristic and fundamental desire and need for human companionship-community especially represented by the 'male' and 'female' aspect) and creativity (the ability to imagine new things or to endow old things with human significance). (Decl. Coalition of Multi-Racial Pastors ¶  5)

Humanism is a doctrine centered solely on human interests or values. Therefore, humanism defies Man collectively and individually, whereas theism worships God. Moreover, while humanism draws its values and absolutes from the finite reasoning of relativistic Man, theism has received its values and absolutes through the revelation of the infinite Deity or Creator. Both humanism and theism worship their own "god." The difference is the object of worship not the act. Therefore, Secular Humanism is a religion whose doctrine worships Man as the source of all knowledge and truth, whereas theism worships God as the source of all knowledge and truth.

### D.  THE EVIDENCE SHOWS THAT THE LGBTQ CULT IS A DENOMINATIONAL SECT THAT IS INSEPARABLY LINKED TO THE RELIGION OF SECULAR HUMANISM.

The evidence shows that LGBTQ cult is a denominational sect of the religion of Secular Humanism. The LGBTQ cult, which the Plaintiffs are part of, meets the legal definition of a religion because it is a closed system that is  "organized, full, and provide a comprehensive code by which individuals may guide their daily activities." [43]  LGBTQ cult's creed and speech codes, which include sexual orientation, gender identity, other doctrines, represent "ultimate concern," "sincere belief," and a "non-theistic belief system" in a manner that undeniably makes it a denominational sect of the religion of Secular Humanism. *Id*  Humanist Manifestos I and II spells out that Secular Humanism will be expressed in "widely varying ways."[44]

---

[43]  In See *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*,150F. Supp. 3d 419, 872 (3d Cir. Aug. 4, 2017)., the court stated: *"we detect a difference in the "philosophical views" espoused by [the plaintiffs], and the "secular moral system[s]...equivalent to religion except for non-belief in God" that Judge Easterbrook describes in *Center for Inquiry,* 758 F.3d at 873. There, the Seventh Circuit references organized groups of people who subscribe to belief systems such as Atheism, Shintoism, Janism, Buddhism, and secular humanism, all of which "are situated similarly to religions in everything except belief in a deity." *Id*. at 872. These systems are organized, full, and provide a comprehensive code by which individuals may guide their daily activities."

[44] Humanist Manifestos I and II, supra note 176 at 13-15.

The LGBTQ community is a religion because its core doctrines, like gender identity theory and sexual orientation orthodoxy, are nothing more than a series of unproven faith-based assumptions and naked assertions that are implicitly religious and inseparably linked to the religion of Secular Humanism. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20).  The LGBTQ cult is highly funded and organized with its own mantras and spiritual take on reality. Id.  Instead of having a cross, the ten commandments, or the star and crescent, the LGBTQ cult has a rainbow colored flag to convey its private moral code.[45]  Just because LGBTQ cult denies that it is a religion does not mean that it is not and just because the LGBTQ cult says that its quest is based on equality does not mean that it is.

Even the Plaintiffs' Complaint itself is rife with religious ideology that the Plaintiffs' attempt to pass off as "medical science." (DE # 1 ¶ 54)  Yet, in view of the testimonials from medical experts, ex-gays, ex-trans, and religious experts, it takes a huge amount of religious faith

---

[45]  The LGBTQ cult's creed overlaps with the BLM cult's creed, which can be viewed here - https://blacklivesmatter.com/what-we-believe/.   Both the LGBTQ cult and the BLM have been gathering together to recite incantations and hosting public ritualistic atonement ceremonies. Here are some of the creed pulled from the BLM website that overlap directly with the liturgical orthodoxy of the LGBTQ cult:
    (1)  We make space for transgender brothers and sisters to participate and lead.
    (2)  We disrupt the Western-prescribed nuclear family structure requirement by supporting each other as extended families and "villages" that collectively care for one another, especially our children, to the degree that mothers, parents, and children are comfortable.
    (3)  We are self-reflexive and do the work required to dismantle cisgender privilege and uplift Black trans folk, especially Black trans women who continue to be disproportionately impacted by trans-antagonistic violence.
    (4)  We foster a queer-affirming network. When we gather, we do so with the intention of freeing ourselves from the tight grip of heteronormative thinking, or rather, the belief that all in the world are heterosexual.
    (5)  We are guided by the fact that all Black lives matter, regardless of actual or perceived sexual identity, gender identity, gender expression, economic status, ability, disability, religious beliefs or disbeliefs, immigration status, or location.

to believe that (1) a person is born gay, that (2) a person comes out of an invisible closet and is baptized homosexual with immutable traits,[46] that (3) sexual orientation orthodoxy and gender identity ideology are "medical science."[47]  It takes an enormous amount of religious faith and a lot of intellectual squinting to actually believe that "[self-identified t]ransgender people have a gender identity that differs from the sex assigned to them at birth.  A person's gender identity is a core, defining trait fundamental to a person's sense of self and personhood." (DE #1 ¶ 226). There is literally zero proof that these kinds of naked assertions scattered throughout the Plaintiffs' complaint are true. All such statements are unproven faith-based assumptions that are implicitly religious and advance anti-theism in an effort to justify practices that are inconsistent with the peace and safety of the Nation.  For millennia, LGBTQ practices have amounted to is licentious anti-theism.  LGBTQ ideology is the mirror opposite of Christianity.  The Plaintiffs themselves acknowledge that by trying to argue that the 2020 Trump Rule indirectly promotes Christianity, but what the Plaintiffs fail to understand is that the 2020 Trump Rule is actually neutral towards religion, non-controversial, and secular in nature and that it is the 2016 Obama Rule that is controversial, unnatural, and non-secular - seeking to put the religion of Secular Humanism over non-religion in violation of the principles separating church and state.

---

[46]  The Plaintiffs use the term "closeted" in their complaint in their effort to challenge the 2020 Corrected Rule, as if it was a non-secular and neutral concept.  If there was nothing inherently immoral about LGBTQ practices and ideology then remaining "closeted" would not be a concern. (Complaint at 194) But LGBTQ ideology and practices are self-evidently shameful, like pedophilia, polygamy, zoophilia, and rape are. The Plaintiffs are peddling religious theories that are camouflage as a request for equality. The goal of the Plaintiffs is to entangle our government with the religion of Secular Humanism so that they feel less ashamed and inadequate about a life-style that naturally produces feelings of shame and inadequacy.

[47] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.

The Plaintiffs contend that the language of the 2020 Trump Rule should revert back to the language of the 2016 Obama Rule by relying on the recent decision in *Bostock v. Clayton Cty., Ga.*, 590 U.S. ___, 2020 WL 3146686 (2020).  The Plaintiffs accuse the Defendants of lacking an adequate legal basis for modifying the rule, alleging that the Defendants adjusted the Rule based on a single Federal district court ruling out of Texas.  (DE # 1 ¶ 13).  The Plaintiffs' characterization is false. The legal basis that commands that the 2020 Trump Rule replace the 2016 Obama Rule is the First Amendment Establishment Clause because the language of 2016 Obama Rule, which pays respect to "sexual orientation" orthodoxy and "gender identity" ideology, causes the 2016 Obama Rule to violate the Establishment Clause by putting the religion of Secular Humanism over non-religion.  The 2016 Obama Rule was non-secular, whereas the 2020 Trump Rule is secular and neutral.  The Establishment Clause requires that the Government view "men as men" and "women as women." Fortunately for the Plaintiffs, the 2020 Trump Rule does not prohibit self-identified homosexuals or self-identified transvestites from pretending that "men are woman" or that "woman are men" because the Free Exercise Clause safeguards their right to believe in implausible faith-based ideology that is removed from reality. [48]  Yet, the Plaintiffs' allegations that the corrections to the 2016 Obama Rule violate 5 U.S.C. § 706(2)(A) for being "arbitrary and capricious" is false.  (See DE # 1 ¶¶ 226-239).  The replacement of the 2016 Obama Rule by the 2020 Trump Rule is not "arbitrary and capricious,"

---

[48] The 2016 Obama Rule "fosters discrimination" against non-observers of the religion of Secular Humanism as advocated by the LGBTQ cult. (Complaint 197).  The Constitutional 2020 Corrected Rule is neutral towards religion and is secular. The Constitutional 2020 Corrected rule does not "foster discrimination" against self-identified homosexuals because it does not ban them from seeking non-secular procedures from providers and insurers who want to provide them. This is a major distinction with a difference that the Plaintiffs fail to understand.

it is precisely what the Establishment Clause of the First Amendment of the United States

Constitution requires in view of the *Lemon* Test.

### III. THE PLAINTIFFS' CASE SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE 2016 OBAMA RULE VIOLATES ALL THREE PRONGS OF THE *LEMON* TEST BY A LANDSLIDE

The Plaintiffs' complaint should be dismissed with prejudice for a lack of subject matter

jurisdiction and for failing to state a claim because the 2016 Obama Rule violated the

Establishment Clause by failing all three prongs of the *Lemon* Test, whereas the 2020 Trump

Rule does not fail the test whatsoever.  To pass muster under the Establishment Clause, a

practice must satisfy the *Lemon* test, pursuant to which it must: (1) have a valid secular purpose;

(2) not have the effect of advancing, endorsing, or inhibiting religion; and (3) not foster

excessive entanglement with religion." See *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

Government action "violates the Establishment Clause if it fails to satisfy any of these prongs."

*Edwards v. Aguillard,* 482 U.S. 578, 583 (1987); *Agostini v. Felton*, 521 U.S. 203, 218 (1997).

The evidence shows that the 2016 Obama Rule was repealed and replaced because it failed all

three prongs of the *Lemon* Test by a landslide in its creation and in its enforcement, and,

therefore, violated the First Amendment Establishment Clause because the 2016 Obama Rule (1)

constituted a non-secular sham that lacks a primary secular purpose, (2) cultivated an

indefensible legal weapon against non-observers of the religion of Secular Humanism, and (3)

served to excessively entangle the government with the religion of Secular Humanism, as

advocated by the LGBTQ cult. The Trump 2020 Rule does not fail any of the prongs of *Lemon*.

### A.  THE COURT SHOULD DISMISS THE PLAINTIFFS' COMPLAINT BECAUSE THE 2016 OBAMA RULE WAS A SHAM THAT FAILS PRONG ONE OF *LEMON*

The Court should dismiss the Plaintiffs' complaint because the 2016 Obama Rule amounts to a non-secular sham that lacks a primary secular purpose, and attempts to put the religion of Secular Humanism over non-religion. (See DE # 1 ¶ 53) See *Lemon*, 403 U.S. at 612; see also *Mitchell v. Helms*, 530 U.S. 793, at 807-808 (2000) (plurality opinion); *Doe v. Sch. Bd of Ouachita Parish*, 274 F,3d 289, 293 (5th Cir. 2001). To avoid invalidation, a government action, policy, regulation, or statute "must have a secular...purpose." At the core of the "Establishment Clause is the requirement that a government justify in secular terms its purpose for engaging in activities which may appear to endorse the beliefs of a particular religion." *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, 698 F.2d 1098, 1111 (11th Cir. 1983). This secular purpose must be the "pre-eminent" and "primary" force driving the government's action, and "has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844 (2005).

The evidence shows that the 2016 Obama Rule was nothing more than a religious sham that lacked a secular purpose, whereas the 2020 Trump Rule removed the religious constructs of "sexual orientation" and "gender identity" to ensure that the policy had a neutral secular purpose. [49] If the stated goal of the 2016 Rule was to create tolerance, unity, and equality, it would create the very opposite if left in place. The Governments' entanglement with the LGBTQ cult has been a complete disaster. For example, in the wake of decisions, like in *Obergefell v. Hodges*,

---

[49]   The Supreme Court has emphasized that there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," *Lee v. Weisman*, 505 U.S. 577, 592 (1992). The Federal courts have thus "been particularly vigilant in monitoring compliance with the Establishment Clause" in the public-school context, see *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987).

135 S.Ct. 2584 (2015), there has not been a landrush on gay marriage,[50] there has been a landrush on Christian persecution. ( Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian Resistance ¶¶ 1-21 ). *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018). Moreover, in the wake of *Obergefell* there has not been a landrush to "live and let live," there has been a landrush for devout LGBTQ activist to infiltrate public elementary schools and public libraries for the sole purpose of targeting minors to indoctrinate them to their Secular Humanism religion with the government's official stamp of approval.[51] The Plaintiffs want more of that sort of thing, as they seek to feel morally superior by using a series of racially exploitative imperialistic power plays that are intellectually dishonest.

### *1. The Language Within The Four Corners Of The Plaintiffs' Self-Defeating Complaint Shows That The 2016 Rule Was A Sham That Lacked A Primary Secular Purpose*

In his dissent in *Obergefell*, Chief Justice Roberts said that "times can blind."[52] He was wrong. The *Amici* live in these times. They are not blind. They can see transcultural truth, and the truth is that the 2020 Trump Rule is supported by the Establishment Clause. What blinds is a subscription to the religion of Secular Humanism. As a result of their intellectual blindness, the

---

[50] Prior to the *Obergefell* decision a few years ago, the 7.9 percent of gays who were married would have amounted to 154,000 married gay couples. Two years later, this had grown to 10.2 percent or 198,000 married couples. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 8).

[51] When the LGBTQ cult says "love is love" what they really mean is that they are perfectly ok with government assets being used to crush anyone - like the Amici - who dare to believe that LGBTQ ideology is dehumanizing, dangerous, destructive, desensitizing, depersonalizing, and subversive to human flourishing. What we have discovered in the wake of the Government's entanglement with the LGBTQ woke mob is that love without truth is just shallow sentimentality, that people who are intolerant of intolerant people are intolerant and that people who are judgmental against judgmental people are judgmental.

[52] See also. "Times can blind." Tr. of Oral Arg. on Question 1, at 9, 10 *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015), stated by the Petitioners.

Plaintiffs fail to see that they themselves provided the very legal basis in their complaint for why

their complaint itself should be dismissed. (See DE # 1 ¶¶ 291-302).  In paragraph 294 of the

complaint, the Plaintiffs provide the very legal basis for exactly why the 2020 Trump Rule must

replace the 2016 Obama Rule when stating:

> The Establishment Clause permits the government to provide religious accommodations
> or exemptions from generally applicable laws only if, among other requirements, the
> accommodation (1) lifts a substantial, government-imposed burden on the exercise of
> religion, and (2) does not shift substantial costs or burdens onto a discrete class of third
> parties, without regard for the third parties' interests. In other words, the government may
> "accommodate" religion in accordance with the Free Exercise Clause, but it may not
> "promote" religion.  (DE # 1 ¶¶ 294)

The 2016 Obama Rule was amended precisely because it "promoted" the religion of Secular

Humanism, as advocated by the LGBTQ cult.  *Id.*  According to the attached declarations from

ex-gays, medical experts, and licensed ministers,  "gender identity" theory and "sexual

orientation" orthodoxy are not a secular "medical science"[53] as the Plaintiffs pretend. (Decl. Dr.

King ¶¶ 1-20; Decl. Dr. Cretella ¶¶ 1-20).  "The starkly religious message" that does not escape

notice of the "reasonable observers" is that the 2016 Obama Rule intended to promote "sexual

orientation" orthodoxy and "gender identity" theory through the organs of government while

giving the apprehension to all citizens that the favored religion of the Nation was Secular

Humanism.  See  *Trunk v . City of San Diego*,  629 F.3d 1099 (9th Cir. 2011); *Am. A theists, Inc.*

*v. City of Starke*,  2007 U.S. Dist. LEXIS 19512 (M.D. Fla. 2007).[54]

---

[53] (DE # 1 ¶ 54).

[54] Even though the testimonials of ex-gays and ex-trans - American citizens who the Plaintiffs
insist do not exist - are attached to this *Amici* in support of the 2020 Trump Rule change, who
testify under oath that that they are living proof that gender identity and sexual orientation
doctrines are implausible, the *Amici* are not here to prove or disprove that a gay gene exists or
that gender identity is predicated on immutability. Decl. Alliance of Black and White Ex-Gays
and Ex-Trans. ¶ 9.  The *Amici* have appeared to argue that the validity of gender identity and
sexual orientation orthodoxy are not proven, and, therefore, sexual orientation and gender

In Paragraph 295 the Plaintiffs assert the exact opposite of the truth by stating:

> The Revised Rule violates the Establishment Clause by creating expansive religious exemptions for health care providers, plans, and employees at the expense of third parties – namely, plaintiffs, other providers, and most importantly the patients and the individuals whom plaintiffs serve. It invites health care providers, including insurance companies, hospitals, doctors, and nurses, to deny LGBTQ patients necessary medical treatment based on their religious beliefs. (DE # 1 ¶ 295).

The 2020 Trump Rule cures the Establishment Clause violations of the 2016 Obama Rule which removes all of the LGBTQ doctrines from the statute, which otherwise forces all providers, all insurers, and all taxpaying citizens to have to respect the merits of LGBTQ Secular Humanism and treat it as the official, undisputed, and supreme religion of the United States. The 2016 Obama Rule is the definition of coercive and non-secular, whereas the 2020 Trump Rule is neutral, natural, non-controversial, and secular in nature.[55]   Accordingly, the 2016 Obama Rule was patently unconstitutional under the Establishment Clause from its inception. The 2020 Trump Rule cures those violations and restores the rule of law.

Here is how the Plaintiffs' complaint actually should actually read to reflect the actual truth: the 2016 Obama Rule was replaced for violating the Establishment Clause because it:

---

identity are a matter of faith, which means that they fall within the exclusive jurisdiction of the Establishment and Free Exercise Clause of the First Amendment. The Establishment Clause balanced with the Free Exercise Clause informs all government actors how to respond to self-asserted sex-based identity narratives that are questionably real, questionably moral, and have a tendency to erode community standards of decency.

[55] The 2020 Trump Rule is secular and neutral just like traditional marriage is. In the Disentanglement Act, a bill that the Amici wrote for all 50 states, the *Amici* define "secular marriage" as a "legal union that represents an intended lifelong commitment between one person who was born male and one person who was born female as husband and wife, who are of equal but opposite genders, who become spouses of the opposite sex, and who have corresponding sexual anatomy that if coalesced have the actual or symbolic potential to create offspring who will likely have the input of the two spouses with whom they share the same genetic code and unbroken ancestral chain with." See https://disentanglementact.com/

(a) "has the primary purpose and effect of favoring, preferring, and endorsing [Secular Humanism] religious beliefs and [the LGBTQ] religious denominations over others and over nonreligion;" (DE # 1 ¶ 299)

(b) "has the primary purpose and effect of preferring the religious beliefs of [the LGBTQ denomination] and institutions over the lives, health, and other rights and interests of third parties;" (DE # 1 ¶ 299)

(c) "impermissibly entangles government with [the] religion [of Secular Humanism as advocated by the LGBTQ denomination];" (DE # 1 ¶ 299)

(d) makes [all taxpayers to include non-observers of the religion of LGBTQ Secular Humanism] bear the costs and harms of [the free exercise rights for non-observers of the licentious Secular Humanism religion to oppose its demented ideology]; (DE # 1 ¶ 99)

The language of the Plaintiffs' own complaint supplies the very reason why it should be dismissed under a FRCP 12(b)(6) motion and for why the Court lacks subject matter jurisdiction to hear this case.[56] The LGBTQ cult is immensely dangerous because it not only attempts to distort self-evident morality and normalize licentiousness, it attempts to distort constitutional interpretation to mean exactly opposite to what it was designed to mean.[57]

### 2.  The Plaintiffs Falsely Camouflaging Their Plight In Equal Protection Language Shows The 2016 Rule Was A Sham Predicated On An Unprincipled Ploy

The Equal Protection Clauses of the Fifth and Fourteenth Amendments hold special significance for Black Americans. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 11).   The text of the Fourteenth Amendment, which applies to the states, guarantees that "no state shall . . . deny to any person within its jurisdiction equal protection of the laws." U.S. Const., amend. XIV, § 1.  The Due Process Clause of the Fifth Amendment, which applies to the

---

[56] The 2016 unconstitutional rule causes all taxpayers to suffer the stigma of government-sanctioned discrimination for being manated to support a government that has excessively entangled itself with the depraved religion of Secular Humanism, as advocated by the LGBTQ sect.  The notion that self-identified transvestites will endure significant psychological burdens or, if they can afford it, pay for things like,  "brow reduction" to feminize the face, "breast augmentation," and lesson training to "modify the vocal range," out-of-pocket is a sham that fails the laughing test. (DE # 1  ¶ 300).

[57] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 10

Federal government, is similar and "includes within it a prohibition against the denial of equal

protection of the laws by the federal government, its agencies, or its officials or employees." (DE

# 1 ¶ 262).  When the Equal Protection Clause of the Fourteenth Amendment became law in

1868, many Black Americans were recently emancipated slaves.  Four years later in 1872, the

Supreme Court suggested that race discrimination was "the evil [the Civil War Amendments]

were designed to remedy," *Slaughter-House Cases*, 83 U.S. 36, 72 (1873) ("We do not say that

no one else but the negro can share in [their] protection, but . . . in any fair and just construction

of any section or phrase of these [Civil War] amendments, it is necessary to look to the purpose

which we have said was the pervading spirit of them all, the evil which they were designed to

remedy.").  It took nearly a century after the Civil War for the Supreme Court to enforce a

modicum of what we now know as substantive equality. See *Brown v. Board of Educ.*, 347 U.S.

483 (1954).

The disgraces in our nation's history pertaining to the civil rights of Black Americans are

unmatched.  No other class of individuals have ever been enslaved, or lawfully viewed not as

human, but as property. *See, e.g.*, Stacy Swimp, *LGBT Comparison of Marriage Redefinition to

Historical Black Civil Rights Struggles is Dishonest and Manufactured* (March 7, 2014),

(http://stacyswimp.net/2014/03/07/lgbt-comparison-of-marriage-redefinition-to-historical-Black-

civil-rights-struggles-is-dishonest-and- manufactured).   Black Americans were subjected to

policies that forced them to attend different schools, walk on separate public sidewalks, sit at the

back of the bus, drink out of separate drinking fountains, and denied their right to assemble or

vote. *Id.*  The dishonest LGBTQ cult has not been subject to any of those things, and certainly

not for reasons that relate to immutability and genetics.

The Plaintiffs' complaint reveals the inconvenient truth that the LGBTQ cult acting in concert with the BLM cult to maliciously hijack the legitimate race-based civil rights movement for the sole purpose of entangling our government with their barbaric Secular Humanist religion that is predicated on an objectively repugnant private moral code by floating a stream of false equivalencies. For the LGBTQ cult to step on the backs of slaves in an effort to secure unconstitutional ends is truly a rare form of evil. The Plaintiffs are guilty of exactly that. Skin color is based on immutability and genetics, whereas sexual orientation and gender identity are based on religious faith.[58] The evidence shows that any government actor who dares to pretend that the "phony gay-civil-rights movement" is equal to the "race-based-civil-rights movement," whereas the "race-based-civil-rights movement" was actually predicated on immutability and genetics, is guilty of racial animus in-kind that manages to be racially, sexually, intellectually, and emotionally exploitative.[59] Such offenders should probably be subject to harsh civil sanction and subject to counter suit for abuse of process and malicious prosecution. It is beyond offensive to people of color for the Plaintiffs to even compare their barbaric licentiousness fake plight to the race-based civil rights plight, which was actually based on immutable skin pigmentation. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 11; Decl. Dr. Cretella ¶¶ 1-20;

---

[58] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 7; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20
[59] Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 12; Decl. Dr. Cretella ¶¶ 1-20; Decl. Dr. King ¶¶ 1-20.
The Plaintiffs discuss animus in their complaint as an emotionally exploitative power play. (DE # 1 ¶¶ 167- 177). If you want to talk about who actually has animus in this controversy it is without question the LGBTQ cult. The LGBTQ cult - including the Plaintiffs - despise everyone who refuses to kneel down and condone their immensely evil and racist ideology. The ideology is so toxic, even the Plaintiffs have to admit that it tends to lead to "depression, anxiety, drug abuse, and other stress-related conditions" as if that is a selling point for why the Government should be forced to promote their spiritual take on reality. (DE # 1 ¶ 161). Every single thing the Plaintiffs argue is backwards and the exact opposite.

Decl. Dr. King ¶¶ 1-20). Only a dangerous religious group seeking totalitarianism would muster

the indecency to advance such false equivalences that tear at America's scars.  (See Decl.

Coalition of Multi-Racial Pastors ¶¶ 8 - 11).

The Plaintiffs falsely bring their plight in the name of racial equality. (DE # 1 ¶¶

259-273).   That was certainly a clever unprincipled ploy, for who can oppose "equality?" But

that is all that it is, an unprincipled ploy that ultimately runs afoul of Establishment Clause of the

First Amendment. While there are no such things as ex-black people, there are thousands of

ex-gays. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 13).  The Plaintiffs

pretend that ex-gays and ex-trans do not exist in the same way that Secular Humanist white

supremacist pretended that the civil liberties of Black Americans did not exist during the Jim

Crow era.  On balance, the 2016 Obama Rule was a sham that fails prong one of the *Lemon* test,

whereas the 2020 Trump Rule is Constitutionally sound.[60]

### 3.  The Plaintiffs' Attempted Misuse Of The Substantive Due Process Clause Demonstrates That the 2016 Rule Is A Non-Secular Sham

The Plaintiffs' efforts to pretend that the Substantive Due Process of the Fifth

Amendment supports their cause of action - alone - demonstrates that the 2016 Rule is a

non-secular sham.  (DE # 1 ¶¶ 291 - 302)  Substantive Due Process is not relevant to these

proceedings whatsoever.  Substantive Due Process can only be invoked if the matter involves

---

[60] Make no mistake, any government official that permits the government to entangle itself with LGBTQ Secular Humanism is on a mission to destroy the race-based civil rights movement led by Pastor Martin Luther King Jr. Such government officials are undoubtedly enemies of decency. President Obama certainly was. So was his unconstitutional 2016 Obama Rule that has been rightfully replaced by the 2020 Trump Rule. (Decl. Alliance of Black and White Ex-Gays and Ex-Trans. ¶ 14 )

American history and heritage.[61]  The history of homosexuality was that it was  illegal for the

same reason that polygamy still is until 2003 when the Supreme Court in *Lawrence v. Texas*, 539

U.S. 558 (2003) overruled *Bowers v. Hardwick,* 478 U. S. 186 (1986). See *Reynolds*, 98 U.S.145

at 166-167.  The *Amici* are not arguing that the homosexual practices return to being illegal

again, but *Amici* are demanding that the 2020 Trump Rule never revert back to include the

language of the 2016 Obama Rule because the Establishment Clause prohibits it for the very

reasons that the Plaintiffs argue that it does not. (See DE # 1 ¶¶  291 - 302).

### 4.  The Plaintiffs' Case Is Based On Nothing More Than Emotional Appeals That Cannot Be Used To Usurp The Establishment Clause

Like with the LGBTQ activist Plaintiffs in *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015),

*United States v. Windsor*, 133 S.Ct. 2675 (2013), and *Bostock v. Clayton Cty., Ga*., 590 U.S. ___,

2020 WL 3146686 (2020), the Plaintiffs' entire case here is based on nothing more than a

profuse stream of emotional appeals.[62] There is a long standing  jurisprudence that emotional

appeals - even seemingly really good ones - cannot be used to usurp the Establishment Clause.

See *Holloman v. Harland*, 370 F.3 1252 (11th Cir. 2004).[63] In this case, the Plaintiffs' complaint

---

[61] *Washington v. Glucksberg,* 521 U. S. 702, 721 (1997), many other cases both before and after have adopted the same approach. *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. 52, 72 (2009);; *Flores*, 507 U. S., at 303;; *United States* v. *Salerno*, 481 U. S. 739, 751 (1987);; *Moore* v. *East Cleveland*, 431 U. S. 494, 503 (1977) (plurality opinion); see also *id.,* at 544 (White, J., dissenting) ("The Judiciary, including this Court, is the most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or even the design of the Constitution.");; *Troxel* v. *Granville*, 530 U. S. 57, 96–101 (2000) (KENNEDY, J., dissenting) (consulting "'[o]ur Nation's history, legal traditions, and practices' and concluding that "[w]e owe it to the Nation's domestic relations legal structure . . . to proceed with caution" (quoting *Glucksberg*, 521 U. S., at 721)).
[62] *Obergefell, Windsor,* and *Bostock* were decided under the wrong Constitutional narrative, and the Secular Humanist justices know it or should have know it.
[63] In *Holloman,* a public school teacher defended a daily moment of silent prayer by arguing that she intended to teach students compassion, pursuant to a character education plan mandated by the State. Id. at 1285. The court concluded that this emotional explanation did not constitute a

consists of nothing more than a stream of emotional appeals that are barred from being used to

usurp the Establishment Clause.  Accordingly, the LGBTQ cult's efforts to force the 2020 Trump

Rule revert back into the 2016 Obama Rule must fail.[64]  Some examples of the emotional appeals

scattered throughout the complaint are in the following footnote: [65]  Because it is obvious that the

---

valid secular purpose because the teacher's most basic intent unquestionably was to offer her
students an opportunity to pray. "While [the teacher] may also have had a higher-order ultimate
goal of promoting compassion, we look not only to the ultimate goal or objective of the behavior,
but also to the more immediate, tangible, or lower-order consequences a government actor
intends to bring about." Id. The unmistakable message of the court's teaching in *Holloman* is that
a government actor cannot employ a religious means to serve an otherwise legitimate secular
interest. Id. at 1286. The *Holloman* court further concluded that "a person attempting to further
an ostensibly secular purpose through avowedly religious means is considered to have a
Constitutionally impermissible purpose." Id., citing *Jagar v. Douglas County School*, 862 F.2d
824, 830 (11th Cir. 1989)("An intrinsically religious practice cannot meet the secular purpose
prong of the *Lemon* test.").

[64] The Plaintiffs repeatedly allege that self-identified transvestites were getting turned away from
hospitals. (Complaint 191).  The Plaintiffs fail to understand the distinction between a secular
and non-secular medical procedure. For example, when a doctor performs an abortion because a
mother's life is in danger or because the pregnancy was the result of rape and incest, then that
abortion is secular in nature. See the Life Appropriation Act.  A non-secular abortion is an
abortion that takes place when a mother seeks to sacrifice her child on the altar of convenience.
The Establishment Clause of the First Amendment prohibits taxpayers from funding convenience
abortions and all existing state and federal policies that use taxpayer funds to finance procedures
are unconstitutional. (see the Life Appropriation Act; https://lifeappropriationact.com/).
Likewise, the government cannot be used to (1) coerce health care providers or insurers to
perform non-secular procedures that advance LGBTQ Secular Humanism ideology or to (3)
require that taxpayer funds be directly or indirectly used to subsidize such non-secular
procedures. Just as Secular Humanists have set up modern day child sacrifice mills in the form of
Planned Parenthood, the LGBTQ cult can erect their own non-secular transvestite facilities to
carry out their self-injurious religious practices - just not at the taxpayers expense.

[65]        Here are some examples of emotional appeals and what they signify: (1)  First,
"[Self-identified] LGBTQ people will be discouraged from seeking the health care they [feel]
that they need."(DE # 1 ¶ 184). Meanwhile, no one is making self-identified transvestites believe
in transgenderism or seek non-secular procedures.
        (2)  Second, the Plaintiffs repeatedly argue that the 2016 Obama Rule should be
reinstated because members of the LGBTQ cult might feel uncomfortable disclosing  "all aspects
of their health history, sexual history, and gender identity." (DE # 1 ¶ 199).  Choosing to speak
out or remain silent has no bearing on whether the 2020 Trump Rule reflects what the
Establishment Clause requires.#

2016 Obama Rule was a sham that lacked a primary secular purpose in violation of the Prong

One of Lemon, this factor - alone - "may be dispositive of the constitutional enquiry" in this

case. *McCreary County,* 545 U.S. at 850-51.

## B. THE COURT SHOULD DISMISS THE PLAINTIFFS ACTION BECAUSE THE 2016 RULE FAILS PRONG TWO OF THE *LEMON* TEST WHEREAS THE 2020 TRUMP RULE DOES NOT

The *Amici* - like tens of thousands of other Americans who do not condone Secular

Humanism - have been stalked, canceled, targeted, libeled, harangued, slandered, falsely

accused, punished, threatened, brutalized, persecuted, violated, and assaulted by the phony

tolerant and dangerous LGBTQ cult in the wake of the government's unconstitutional decision to

entangle itself with its immoral religious ideology. (Decl. Alliance of Black and White Ex-Gays

and Ex-Trans. ¶ 15; Decl. Pastor Penkoski ¶¶ 1-34; Decl. Lisa Boucher ¶¶ 1-10; Decl. Christian

Resistance ¶¶ 1-21). This Court should immediately dismiss the Plaintiffs' complaint because the

2016 Obama Rule is calculated to establish the religion of Secular Humanism, as advocated by

the LGBTQ cult as the official religion of the Nation in a manner that fails prong two of the

---

(3)  Third, the Plaintiffs contend that the 2020 Trump Rule "stigmatizes them as second-class citizens."(DE # 1 ¶ 271) Meanwhile the 2016 Obama Rule robs all ex-gays and ex-transvestites from any citizenship and it "stigmatizes" all providers, taxpayers, and insurers who sincerely believe that LGBTQ ideology and practices are objectively immoral as "second-class citizens" because it forces them to support a religious worldview in a manner that causes them to violate their own conscience.

(4)  Forth, the Plaintiffs contend that the Corrected 2020 Rule will contribute to "depression, anxiety, drug abuse, and other stress-related conditions" which is nothing more than an emotional appeal floated by the Plaintiffs to sneak around the Establishment Clause. (Complaint at 61). Meanwhile, back in reality, no one is making anyone take the path of indoctrinating themselves in LGBTQ ideology, and how the Plaintiffs think that the devastating consequences that come from buying into their religious worldview is a selling point to force the government to endorse it is more the same evidence of the profound intellectual darkness that surrounds the LGBTQ cult. The government has the obligation to not respect the LGBTQ ideology and it has the prerogative to regulate its practices. See *Reynolds*, 98 U.S.145 at 166-167.

*Lemon* Test.  The 2016 Rule is just another fire hose that can be used to blast away the civil rights of non-observers of the religion of Secular Humanism.  Under this second prong of the *Lemon* test, courts ask, "irrespective of the...stated purpose, whether [the state action]...has the primary effect of conveying a message that the [government] is advancing or inhibiting religion." *Indiana Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 771 (7th Cir. 2001).  The "effect prong asks whether, irrespective of government's actual purpose," *Wallace v. Jaffree,* 472 U.S. 38, 56 n.42 (1985), the "symbolic union of church and state...is sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices." *School Dist. v. Ball*, 473 U.S. 373, 390 (1985); *see also Larkin v. Grendel's Den*, 459 U.S. 116, 126-27 (1982)(even the "mere appearance" of religious endorsement is prohibited).  The Plaintiffs want the 2016 Obama Rule put back in place knowing that it will create an indefensible "legal weapon that no [Christian or non-observer of Secular Humanism] can obtain." *City of Boerne v. Flores,* 521 U.S. 507 (1997). The Plaintiffs seek to force insurers, providers, and taxpayers to respect their narrow and irrational take on sexuality, faith, and religion without the ability for any non-observer to object in light of the government's unconstitutional endorsement.

"A proper respect for both the Free Exercise and the Establishment Clauses compels the Federal Government to pursue a course of 'neutrality toward religion,' favoring neither one religion over others nor religious adherents collectively over nonadherents." *Board of Educ, of Kiryas Joel Vill. Sch. Dist.v. Grumet*, 512 U.S. 687, 696 (1994) (quoting *Liberty v. Nyquist*, 413 U.S. 756, 792-93 (1973)).  Of course the 2020 Trump Rule is neutral and does not take away from the LGBTQ cult to invent a religious belief system even though it is objectively licentious

and nothing more than an attempt to justify practices that are inconsistent with the peace and safety of the Nation.

The U.S. Constitution, while permitting legislators to act on preferences in policy and politics, plainly prohibits government actors to imbue official favored status on particular religious communities. See, e.g., *Grumet*, 512 U.S. 687 at 703 (stating that the "fundamental source of constitutional concern" in that case was that the government "itself may fail to exercise governmental authority in a religiously neutral way" and lauding that "principle at the heart of the Establishment Clause, that government should not prefer one religion to another, or religion to irreligion"). "Whatever else the Establishment Clause may mean…, it certainly means at the very least that the government may not demonstrate a preference for one particular sect or creed (including a preference for Christianity [and Secular Humanism] over other religions).[66]

The Plaintiffs want "sexual orientation" orthodoxy and "gender identity" ideology reinserted back into the 2020 Trump Rule knowing that it has the effect of causing the government to endorse the plausibility of their narrow, exclusive, and dangerous religious worldview.  Every time the government directly or symbolically endorses LGBTQ ideology, it causes devout members of the LGBTQ cult and its supporters to feel entitled to socially marginalize and even violently oppress anyone who dares to disagree with the plausibility of

---

[66] The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *County of Allegheny v. ACLU,* 492 US 573, 605 (1989) (citations and internal quotation marks omitted). This includes a prohibition of government actors putting non-institutionalized religions, like the religion of Secular Humanism, over non-religion through direct and symbolic acts.

their irrational ideology.  The Plaintiffs want the 2020 Trump Rule to revert back to the 2016

Obama Rule because the Plaintiffs are interested in "dominance," not "tolerance." [67]

The *Amici* can just hear the Plaintiffs calling the *Amici* "bigots" under their breath as they read

this because that is all the Plaintiffs can really do - name call - because they certainly cannot win

on the merits without asking the Court to become complicit in full fledge dishonest

misinterpretation of the law.  Attempting to gain level through *Bostock v. Clayton Cty., Ga.*, 590

U.S. ___, 2020 WL 3146686 (2020) will not cut it either because *Bostock* was decided on faulty

grounds just as *Dred Scott v. Sandford*, 60 U.S. 393 (1857) was.[68]

---

[67] The Plaintiffs demand in their complaint that the government require proper pronouns and speech codes that flow out of their religion be used by medical professionals.  (Complaint 188). The Establishment Clause of the First Amendment prohibits the government from mandating pronoun changes or speech codes to respect the creeds of Secular Humanism that flow out of the LGBTQ denomination. If members of the LGBTQ denomination want to use fake pronouns or speech codes that flow out of their implausible religion - they have every right to do so under the Free Exercise Clause. But the Establishment Clause prohibits the government from mandating pronoun changes or speech codes that respect Secular Humanism religion for the same reason the Establishment Clause blocks the government from endorsing, favoring, respecting, and recognizing gender identity and sexual orientation orthodoxy.  Doing so creates an indefensible legal weapon against non-observers of the religion of Secular Humanism.

[68] *Obergefell, Windsor,* and *Bostock* all must be relegated to the same trash heap of history that *Dred Scott v. Sandford*, 60 U.S. 393 (1857) was relegated to and for the same reasons. All of those cases involved liberal activist judges misusing substantive due process into a wellspring of unchecked judicial policy making. Just as *Brown v. Board of Education of Topeka*, 347 U.S. 483 (1954) overruled *Plessy v. Ferguson*, 163 U.S. 537 (1896), *Obergefell, Windsor,* and *Bostock* must be overruled for being decided on the wrong Constitutional bases. What the Plaintiffs do not understand is that "Stare Decisis" does not keep *Obergefell, Bostock,* and *Windsor* from being overruled because Supreme Court has held that "questions which merely lurk in the record, neither brought to attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Industries, Inc. v. Aviall Services, Inc.* 543 U.S. 157 (2004). The Establishment Clause claims were "lurking" in the record but undecided in *Obergefell, Windsor,* and *Bostock*. All three of those cases involved Constitutional interpretation and "[Stare Decisis] is at its weakest when [the courts] interpret the Constitution because [their] interpretation can be altered only by constitutional amendment or by overruling [their] prior decisions." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 63, 116 S.Ct. 1114, 1127, 134 L.Ed.2d 252 (1996); *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 94, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Stone and Cardozo, JJ., concurring in result) ("The doctrine of stare

It is obvious that the 2016 Obama Rule "[m]anifest[ed] a purpose to favor one faith over [all others]," *McCreary* at 860, thereby conveying to adherents of the selected faiths, "that they are insiders, favored members of the political community, and invariably sending the converse message to nonadherents." *Santa Fe Indep, Sch. Dist v, Doe*, 530 U.S. 290, 310 (2000)(citing *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) O'Connor, J., concurring)) (internal quotation marks omitted); see also *McCreary* at 860. The Establishment Clause forbids the government to dole out political benefits in this manner the Plaintiffs desire for the exact reasons the Plaintiffs allege in their self-defeating complaint. (DE # 1 ¶¶ 291- 302).

Even if it was proven that "many local primary-care physicians unaffiliated with Whitman-Walker have refused to prescribe hormone therapy for [self-identified] transgender[s]," such physicians have the fundamental right to do so because otherwise they will be required to violate their conscience by enabling a religious worldview to advance in a manner that they believe is deeply immoral. (DE # 1 ¶ 188)  The Plaintiffs want the 2020 Trump Rule to revert back to 2016 Obama Rule language so that the Plaintiffs can have a weapon to brutalize physicians, insurers, and providers for having the humility and common sense to believe that Secular Humanism ideology advocated by LGBTQ cult is immoral and that to advance LGBTQ Secular Humanism is itself an act of immorality.

### C.  THE PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THE 2016 OBAMA RULE FAILED PRONG THREE OF LEMON

"The [E]stablishment of religion' clause of the First Amendment means at least this: No tax in any amount, large or small, can be levied to support any religious activities or institutions:

---

decisis...has only a limited application in the field of constitutional law"). The Judicial branch is going to learn the difficult lesson that it never pays to go along with the LGBTQ cult's ongoing lies.

whatever they may be called, or whatever form they may adopt to teach or practice religion."
*Everson,* 330 U.S. at 15-16.  The Supreme Court has repeated this foundational principle on
many occasions and, despite finding that other, indirect forms of support sometimes pass
constitutional muster, has never strayed from the basic rule that the government may directly or
symbolically engage in action puts religion over non-religion.

    The 2016 Obama Rule violates the Establishment Clause by promoting LGBTQ ideology
through the organs of government.  See *Mitchell,*, 530 U.S. at 890 ("[F]rom the start we have
understood the Constitution to bar outright...aid to religion."); *Rosenberger v. Rector & Visitors
of the Univ, of Va* , 515 U.S. 819, 842 (1995) (stating that "[t]he Court of Appeals (and the
dissent) [were] correct to extract from our decisions the principle that we have recognized special
Establishment Clause dangers where the government [directly supports] sectarian institutions");
*Committee for Pub. Educ. v. Nyquist*, 413 U.S. 756, 772 (1973) ("Primary among those evils"
against which the Establishment Clause guards "have been sponsorship, financial support, and
active involvement of the sovereign in religious activity.") (citations and internal quotation
marks omitted).

    Here is the cleanest way of understanding how the 2016 Obama Rule violates prong three
of *Lemon*: (1) there are thousands of taxpayers, insurers, and health providers who sincerely
believe that LGBTQ ideology and practices are completely immoral; (2) it follows that these
taxpayers, insurers, and health providers also believe that to enable acts of immorality is itself an
act of immorality; (3) therefore, the 2020 Trump Rule must not be replaced with the 2016
Obama Rule because otherwise it will coercively cause taxpayers, insurers, and health providers
to violate their own conscience by the simple act of paying taxes or by providing health services

that promote LGBTQ ideology and practices; (4) this constitutes is an evil that the Establishment

Clause of the First Amendment was designed to prohibit. [69]

## V.  THE PLAINTIFFS' CASE SHOULD BE DISMISSED BECAUSE HHS HAS A NARROWLY TAILORED COMPELLING INTEREST TO UPHOLD COMMUNITY STANDARDS OF DECENCY

Even if the Establishment Clause of the First Amendment was not the dispositive legal

basis backing the 2020 Trump Rule - and it is - there are other reasons why the 2016 Obama

Rule had to be repealed and replaced. For example, the government has a narrowly tailored

compelling interest to uphold community standards of decency. *Paris Adult Theatre I v. Slaton*,

413 US 49 (1973).  LGBTQ ideology erodes community standards of decency.  Many courts

have taken the position that "any school boy knows that a homosexual act is immoral, indecent,

lewd, and obscene. Adult persons are even more conscious that this is true." *Schlegel v. United*

*States*, 416 F. 2d 1372, 1378 (Ct. Cl. 1969).  It is not as if this reality has somehow magically

changed just because it is the year 2020.  The Supreme Court has long since held that "to simply

adjust the definition of obscenity to social realities has always failed to be persuasive before the

---

[69] The Plaintiffs do not understand the difference between secular medical producers and non-secular cosmetic procedures in the same way that their sister denomination, Planned Parenthood Federation of America does not.  If a 32 year old woman wants to sacrifice her child on the altar of convenience because she believes that the baby inside the womb is not a person - she can do so - but the Establishment Clause requires that she pay for it herself so that there is no blood on the hands of the taxpayers who believe that such a practice are self-evidently evil. (See the Life Appropriation Act).  That is what the Establishment Clause balanced with the Free Exercise Clause requires. Likewise, if a 25 year old male who self-identifies as a transvestite wants to have an "brow reduction" to feminize his face, "breast augmentation," and lesson training to "modify the vocal range"  to advance his  religious belief that he is mystically really a woman trapped in a man's body, he can do so.  But he might have to pay for it himself because the government cannot force insurers, health providers, and taxpayers to cover the cost of non-secular procedures that may cause them to feel culpable in enabling acts of immorality. The Plaintiffs seem unwilling or incapable of understanding these principles and instead remain bent on twisting the truth just they attempt to distort everything else in life.

courts of the United States." *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20

L.Ed.2d 195 (1968), *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S. Ct. 958, 16 L. Ed. 2d

56 (1966), and *Bookcase, Inc. v. Broderick*, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 951, 218 N.E.2d

668, 671 (1966).  LGBTQ ideology and practices have always been classed as obscenity, and

community standards do not evolve, but the Plaintiffs prove that groups of people can become

desensitized, jaded, and blinded by the implausible religion of Secular Humanism. The Plaintiffs

seek to use the organs of government to desentize all Americans - forcing them to  kneel at their

altar so that the LGBTQ cult can feel less ashamed and inadequate about putting into practice a

religious belief system that naturally breeds feelings of shame and inadequacy.

HHS cannot be forced to reverted the 2020 Trump Rule back to the 2016 Obama Rule

because "sexual orientation" orthodoxy and "gender identity" ideology, like all LGBTQ dogma,

promotes licentiousness, leads to obscenity code violations, and amounts to nothing more than an

attempt to justify practices that are inconsistent with the peace and safety of the government.[70]

HHS has a narrowly tailored compelling government interest in replacing the indecent and

subversive 2016 Obama Rule with the 2020 Trump Rule, which does not erode community

standards of decency.

## VI.  ADDRESSING THE ULTIMATE QUESTION - PUBLIC INTEREST

The 2020 Trump Rule represents the truth, whereas the 2016 Obama Rule symbolizes a

lie.  The public interest would best be served by dismissing the Plaintiffs' case because the truth

is worth fighting for. The truth is that the 2020 Trump Rule accords with the Establishment

---

[70] As authors of the Human Trafficking And Child Exploitation Prevention Act, the Amici
constantly run up against the BLM cult and LGBTQ cult who want to get rid of obscenity codes
and to legalize prostitution.  See http://www.humantraffickingpreventionact.com/.

Clause and the 2016 Obama Rule does not. [71]  At the very heart of this controversy is the

ultimate question: "Is America a Christian Nation" or "Is America a Secular Humanist Nation?"

That is, the paramount question raised by this case is "must the laws of the United States be

based on the private moral code of Christianity or must the laws be predicated on the private

moral code of Secular Humanism?" This case provides that actual final answer that will serve the

public's interest by restoring the rule of law.  It is well established that without "faith," there is

no basis for "morality," and without "morality" there is no basis for "law."  There is no way to

avoid this axiom. (Decl. Coalition of Multi-Racial Pastors ¶¶ 10-11).  When a devout Secular

Humanist, like the Plaintiffs, implicitly suggests that not one moral doctrine should be used as

the basis for law, that position itself is a moral doctrine that they are asserting should be used as

---

[71]  The truth sets us free. Without "truth," there is no "freedom." "Freedom" comes from "the
truth," and "truth" is more important than we might think, and "freedom" is more complex than
we might know. *Id.* "Freedom" is not the presence of restriction nor the absence of restrictions.
"Freedom" is the presence of the right restrictions. The set of restrictions that fit the givenness of
our nature and accord with the truth about the way we are and the way things are. Take fish on
the grass. A fish on the grass is not free. *Id.*  It is only when the fish is restricted to the water that
it can swim lightning fast and even breath. And so it goes with humans.  We are not designed to
put into practice the ideology promoted by the LGBTQ cult.  The litergucial orthodoxy of the
LGBTQ cult does not accord with our "logas" - the way we are designed. This does not mean
that the Plaintiffs and others cannot put into practice LGBTQ orthodoxy, but it does mean that it
is unwise to do so from an objective reasonable observer standpoint and according to the
testimonies of ex-gays and ex-trans, who the Plaintiffs insist do not exist. (Decl. Alliance of
Black and White Ex-Gays and Ex-Trans. ¶ 16).  Before a litany of legislative bodies, the *Amici*
are constantly pressing for the enactment of policies that contain the right set of restrictions in
order to promote the greatest amount of peace, intimacy, reconciliation, forgiveness, and healing
to better enable human flourishing - to protect the "Western-prescribed nuclear family structure."
Now here, before this Court, is the opportunity for the judicial branch for the first time to tell the
truth which is this: (1) the LGBTQ community is a cult that is inseparably linked to the
anti-theistic religion of Secular Humanism; (2) the Establishment Clause prevents the State and
Federal Government from enacting and enforcing laws that directly or symbolically treat its
ideology as if it is real; (3) LGBTQ orthodoxy, while religious in nature, is subjected to limited
protection under the Free Exercise Clause because it promotes licentiousness and amounts to an
attempt to justify practices that are inconsistent with the peace and safety of the state.

the superior basis for law.  To suggest that all moral doctrines are equal and lead to human

flourishing is itself a truth claim that is vying for superiority amongst all the others.  To deny this

reality is just an imperialistic political power play and a way for moral relativists, like the

Plaintiffs, to try to come out on top in a policy debate so that they get their way.  If all moral

doctrine where equal, there would be no way to condemn Nazi ideology, which was based on the

religion of the blood, which was just another denomination of Secular Humanism.[72]

_____

[72] To say that "there are no absolute truths" is itself "an absolute truth" and to fail to see that is to
refuse to see.  *Id.* As C.S. Lewis stated, "You can't go on 'seeing through' things forever. The
whole point of seeing through something is to see something through it. To 'see through' all
things is the same as not to see." The evidence shows that the United States, as a Nation,
recognizes the existence of absolute truth, as reflected in the Constitution of the United States
and the Declaration of Independence. The United States recognized the existence of natural law
that parallels the edicts of Christianity at the Nuremberg trials, which the United States
government still recognizes. See *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 154 (2d
Cir. 2010).  Consider this, the Uniform Code of Military Justice (UCMJ) 809.ART.90 (20),
makes it clear that military personnel need to obey the "lawful command of his superior officer,"
891.ART.91 (2), the "lawful order of a warrant officer", 892.ART.92 (1) the "lawful general
order", 892.ART.92 (2) "lawful order." Military Officers have an obligation and a duty to only
obey lawful moral orders and indeed have an obligation to disobey unlawful immoral orders,
including orders issued by the President.  *Armbruster v. Cavanaugh*, 140 Fed. Appx. 564 (3rd
Cir. 2011). If a junior Army Officer is obligated to disobey immoral orders by superior
commanders, on what basis can he decide which orders are moral and which ones are not, if
there is not an objective universal morality that is self-evident like Christianity? Yet,  since such
an objective moral doctrine has been recognized to exist in the Military, then very obviously that
same objective moral doctrine is necessary as a foundation for laws and policies in the civilian
sector.  In his letter from Birmingham jail, Pastor Martin Luther King Jr. said that "the only way
that he can know that a human law is unjust is if there is a divine law/higher law from God." If
there was no God and no divine higher law, there would be no way of knowing if a particular
human law was unjust or not. If there is "no belief in God" and "no higher divine law," then
how can we say that any historical event is "unjust"? There would be no basis to condemn the
Nazis holocaust, slavery, or Jim Crow laws.  If there is nothing but "nature," and if "nature" is all
there is, what is more natural than violence?  Natural Selection explains that it is how we got
here  - the strong eating the weak right? The LGBTQ cult certainly believes that in accordance
with their "ends justify the means" philosophy as they repeatedly twist the truth in an unrelenting
effort to pump their toxic ideology through the organs of Government.

But the ultimate question remains: "Is America a Christian Nation or is America a Secular Humanist Nation?" The Supreme Court in *Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892) answered the question stating, "America is a Christian Nation," which should have in theory ended the debate.  However, the Supreme Court in *Planned Planned Parenthood v. Casey*, 505 U.S. 833, 846-47 (1992) implied that "America is a Secular Humanist Nation" when it enshrined the modern cultural mindset by stating "at the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe." But the *Casey* religious principle can be boiled down to mean "to each his own," which in German means, "Jedem das Seine," which is exactly what the sign over Buchenwald concentration camp read. So clearly America can never be a Secular Humanist Nation with a worldview that can produce a holocaust.

Here is the final answer, at best it could be said that "America is [unofficially] a Christian nation" insofar as the laws of this Country can parallel self-evident truth claims that parallel the truth claims found in the Bible by coincidence.  But the government must never mandate Christianity because, after all, it would promote the very same toxic legalism that Christ himself was so adamantly opposed to.[73]  The Fourteenth Amendment's Equal Protection Clause and the Declaration of Indepence parallel what is found in Genesis 1:27 that all men are made in the image of God, and therefore, each life matters.[74] This coincidental symmetry does not make the Fourteenth Amendment unconstitutional because it is based on self-evident truth that is natural,

---

[73] The Government can base laws on Christian morality. This is why polygamy and pedaphilia are illegal, even though the Plaintiffs wish they were legal.  See *Reynolds* at 166-167.
[74] "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." Declaration of Independence.

neutral, and non-controversial. Christianity can stand on its own merits, without the government's official endorsement and stamp of approval and does not need to be the mandated religion of the Country.  But the same cannot be said of the religion of Secular Humanism as advocated by the LGBTQ cult. Without the government's direct endorsement, the doctrine stemming from the  religion of Secular Humanism, as advocated by the LGBTQ cult, tends to implode under the weight of its own absurdity because it self-evidently bucks common sense.

Dismissing the Plaintiffs' lawsuit will convey that our government is not a church. It is not a redeemer.  And it will serve the public's interest by dismissing the Plaintiffs' complaint because it will reinforce the principles of the separation of church and state, conveying to the LGBTQ cult that the days of them pushing to get our government in bed with different denominations of Secular Humanism are over. The public interest will be best served by the restoration of the rule of law and the reinforcement of the ultimate supremacy of the Constitution of the United States.

## VII.  CONCLUSION

The cruelest thing that a parent can do to a child is to enable their destruction. The same applies to the government here in respect to the LGBTQ cult, which is continually desperate for the government's stamp of approval.  The 2020 Trump rule must be allowed to remain intact because it comports with the Establishment Clause of the First Amendment, unlike the 2016 Obama Rule.  "Obama" and his 2016 Rule have come to stand for "Constitutional abomination," whereas "Trump" and his 2020 Rule have come to represent the triumph in the restoration of the rule of law. At the root of this controversy in the past is the failure of litigants and some judges to know the objective difference between (1) right and wrong, (2) real and fake, and  (3) secular

and non-secular.  When Defendant Severino decried the 2016 Obama Rule because it ran counter to some people's "moral, and religious beliefs about biology" and because, in his opinion, the 2016 Obama Rule "create[d] special privileges, new protected classes, or new rights to particular procedures," he was partially right. (DE # 1 ¶ 168).  What Defendant Severino was trying to say is that the 2016 Obama Rule violated the Establishment Clause in its creation and enforcement for failing the three prongs of the *Lemon* Test.  In 2016, when Defendant Severino denounced the Department of Justice's enforcement of Title IX's sex discrimination protections as they applied to self-idenfied transvestites, as "using government power to coerce everyone, including children, into pledging allegiance to a radical new gender ideology" what he was really saying is that the government cannot endorse LGBTQ ideology because it is inseparably linked to the religion of Secular Humanism, and the Establishment Clause does not permit that for the reasons that the the Plaintiffs set out in their own self-defeating complaint. (DE # 1 ¶ 169, ¶¶ 291 - 302). The Trump 2020 Rule must be left to remain in place because Establishment Clause of the First Amendment is the legal basis supporting it.

/s/Chris Sevier Esq./
DE FACTO ATTORNEYS GENERAL
SPECIAL FORCES OF LIBERTY
Mailing address:
4301 50th St.
Suite 300, #2009
Washington, DC 20816
(615) 500-4411
#026577
ghostwarsmusic@gmail.com
www.humantraffickingpreventionact.com
www.stopsocialmediacensorshipact.com
www.stopguiltbyaccusationact.com
www.disentanglementact.com
www.lifeappropriationact.com
27A JA
Bravo Two Zero

/s/Gregory Degeyter Esq./
DE FACTO ATTORNEYS GENERAL
degeyterlaw@gmail.com
 9 Music Square South
Nashville, TN 37203
#24062695
(615) 500-4411
(713) 505-0524
Tango Whisky Gator 6

/s/Jason Rowe Esq./
Texas Bar #: 24073538
Rowe Law, PLLC
1720 Bissonnet
Houston, TX 77005
Office: 713-678-0774
Fax: 713-678-0266
Email: jason@rowelawtx.com
http://www.rowelawtx.com
Wilco Red Dragon

## CERTIFICATE OF SERVICE

A true copy of the foregoing was emailed and mailed to the following on July 9, 2020: LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 120 Wall Street 19th Floor New York, NY 10005 212-809-8585 Email: ogonzalez-pagan@lambdalegal.org;;  Carl Solomon Charles LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 120 Wall Street 19th Floor New York, NY 10005 212-809-8585 Email: ccharles@lambdalegal.org;;  Jamie Avra Gliksberg LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 65 E. Wacker Place Ste 2000 Chicago, IL 60601 312-663-4413 Fax: 312-663-4307 Email: jgliksberg@lambdalegal.org;;  Karen Loewy LAMBDA LEGAL DEFENSE & EDUCATION FUND 120 Wall Street, 19th floor New York, NY 10005 212-809-8585 Email: kloewy@lambdalegal.org;; Khristoph Becker STEPTOE & JOHNSON LLP 1114 Avenue of the Americas Ste Floor 35 New York, NY 10036 212-506-3900 Email: kbecker@steptoe.com;; Laura Joy Edelstein STEPTOE & JOHNSON LLP One Market Plaza Spear Tower Suite 3900 San Francisco, CA 94105 415-365-6770 Fax: 415-365-6670;; Michael A. Vatis STEPTOE & JOHNSON, LLP 1114 Avenue of the Americas 1114 Avenue of the Americas 35th Floor New York, NY 10036 212-506-3927 Fax: 212-506-3950 Email: mvatis@steptoe.com;; Johanna Dennehy STEPTOE & JOHNSON LLP 1330 Connecticut Avenue, NW Washington, DC 20036 202-429-5515 Email: jdennehy@steptoe.com

/s/Gregory Degeyter Esq./          /s/Jason Rowe Esq./          /s/Chris Sevier Esq./