**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WHITMAN-WALKER CLINIC, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01630-JEB |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR
A PRELIMINARY INJUNCTION
<u>OR A STAY PENDING JUDICIAL REVIEW PURSUANT TO 5 U.S.C. § 705</u>**

## INTRODUCTION

While there is little doubt that plaintiffs have strong opinions about the Department of Health and Human Services' (HHS) nondiscrimination rule (the "2020 Rule" or "Rule"), Article III requires something more than mere policy disagreement. Plaintiffs must demonstrate "injury in fact" as to each provision they seek to challenge—harm that is concrete, particularized, and "certainly impending." Plaintiffs must also show that the government actually caused the harm they allege, and that a decision from this Court is capable of redressing their asserted injuries. Moreover, because plaintiffs seek the extraordinary remedy of a preliminary injunction enjoining enforcement of the Rule, they must additionally show that their alleged injuries as to each provision are *irreparable*.

Plaintiffs, which allege harm by third parties not before this Court against patients who are also not before this Court, come nowhere close to satisfying this standard. The harm plaintiffs allege is fundamentally conjectural because plaintiffs fail to identify specific covered entities who threaten imminent discrimination against specific patients, let alone against the unnamed members of the organizations represented in this suit. Instead, plaintiffs assume that because, in their view, the 2020 Rule somehow "encourages" discrimination, some individuals may, at some point, suffer injury. And plaintiffs' attempts to connect injury to healthcare organizations are even further attenuated, as plaintiffs are forced to argue that supposed harm to future patients may have some unspecified impact on their bottom lines.

Even if plaintiffs could show concrete harm, they cannot explain how this Court might grant adequate relief to redress that harm. Plaintiffs dismiss the vacatur of the key portion of the 2020 Rule—the elimination of gender identity from the definition of "on the basis of sex"—with a wave of the hand. But plaintiffs never explain how the vacated portion of the Rule may be resurrected. The decision in *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928, 947 (N.D. Tex. 2019), is final, was not appealed by the government, and the government cannot simply ignore it. Thus, any relief in this case as to the definition of "on the basis of sex" would leave plaintiffs with the text of Section 1557 itself and the provisions it incorporates—not the 2016 Rule. And the

text of Section 1557 is precisely what this rule codified in its regulatory provisions.

Perhaps most lacking in plaintiffs' arguments is any meaningful attempt to connect their injuries to the specific provisions of the Rule they challenge. Indeed, after some 70 pages of briefing, plaintiffs dedicate only one paragraph to explaining how they have standing to contest each aspect of the Rule. But standing is not dispensed in gross—plaintiffs were required to explain with specificity how each provision might harm them. They have fallen woefully short of doing so.

Finally, plaintiffs cannot demonstrate how any harm they allege is irreparable. Plaintiffs suggest financial injury to their organizations, but they do not attempt to estimate what the 2020 Rule, which is fundamentally deregulatory, will cost them. Nor do they explain whether their injuries will be incurred suddenly or over a period of years. Such vague assertions fall far short of demonstrating entitlement to a preliminary injunction.

Because plaintiffs lack standing to contest the 2020 Rule, their claims should be rejected—and ultimately dismissed. But even if this Court determines that plaintiffs have standing, their motion should nevertheless be denied because they fail to show irreparable harm.

## ARGUMENT

## I.   PLAINTIFFS LACK STANDING

Under Article III, a plaintiff bears the burden of demonstrating that it has standing to litigate in federal court. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Plaintiffs, who initially declined to address standing, do not carry their burden in their reply brief. Plaintiffs' assertions of injury, which are premised on attenuated chains of events founded on conjecture, lack any real connection to the government conduct they have challenged. And plaintiffs fail entirely to explain how the relief they seek would redress their purported injuries. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

### A.  Plaintiffs Lack Standing to Attack Each of the Provisions They Challenge.

Plaintiffs justify their standing in broad strokes, arguing that because the 2020 Rule supposedly "eliminates regulatory nondiscrimination protections for LGBTQ people, people with

LEP, and countless others[,]" Pls.' Reply Mem. of P. & A. in Supp. of their Mot. for a Prelim. Inj. or, in the Alternative, a Stay Pending Judicial Review Pursuant to 5 U.S.C. § 705 ("Reply") at 4, ECF No. 43, plaintiffs have established imminent injury sufficient to satisfy Article III. But "[s]tanding is not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Instead, plaintiffs "must demonstrate standing for each claim [they] seek[] to press" and for "each form of relief sought," *DaimlerChrysler*, 547 U.S. at 352. But plaintiffs here cannot explain how they have standing to contest *any* of the provisions of the 2020 Rule they challenge. Indeed, rather than explaining how they might have standing to challenge each provision, their Reply relies exclusively on vague statements contained in various declarations that fail to connect *any* harm alleged to *any specific* provision challenged.

1. **Plaintiffs lack standing to challenge HHS's decision not to define "on the basis of sex."**

Plaintiffs' primary challenge is to HHS's decision to defer to the text of Title IX rather than attempt to define the term "on the basis of sex." As HHS explained, omitting a definition would allow the agency to apply the 2020 Rule in conformity with current case law—whatever that may ultimately be following the Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020). *See* 85 Fed. Reg. at 37,160, 37,168 (June 19, 2020) ("the elimination of a regulatory definition of such term would not preclude application of the Court's construction"). For several reasons, plaintiffs fail to demonstrate how declining to include a new definition for "on the basis of sex" (which the statute itself does not do) causes any real injury, let alone an imminent injury, traceable to HHS. *See Lujan*, 504 U.S. at 560–61.

*First*, plaintiffs cannot establish redressability. The definition of "on the basis of sex" that plaintiffs prefer was enjoined, then vacated, in *Franciscan Alliance*, 414 F. Supp. 3d at 947. Because the government did not appeal that decision, the vacatur is final and the government cannot simply ignore it. The only path for plaintiffs to resurrect the old language would be through a new rulemaking, which this Court lacks authority to require. *See* 42 U.S.C. § 18116(c) ("The Secretary *may* promulgate regulations to implement this section." (emphasis added)); *Sierra Club*

*v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) ("APA explicitly excludes from judicial review those agency actions that are 'committed to agency discretion by law.'" (quoting 5 U.S.C. § 701(a))). Faced with this dilemma, plaintiffs argue that *Franciscan Alliance* "is a legal nullity[,]" Reply at 3, but plaintiffs identify no case law that would permit a court or the government to disregard the final decision of a district court vacating all or part of a regulation. Plaintiffs are free to criticize the reasoning of *Franciscan Alliance*, but that discussion would necessarily be an academic one. Procedurally, the vacatur rendered the old provision invalid, and the government cannot simply disregard the judgment. *See Dept. of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1916 n.7 (2020) ("Our affirmance of the *NAACP* order vacating the rescission makes it unnecessary to examine the propriety of the nationwide scope of the injunctions issued by the District Courts in *Regents* and *Batalla Vidal*.").

*Second*, plaintiffs cannot show causation. As explained in the government's opposition, *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), controls. Plaintiffs argue that the lack of a definition for "on the basis of sex" somehow "invites discrimination against LGBTQ people." Reply at 19. But the 2020 Rule does not result in the government taking any action against plaintiffs, nor does it mandate any action on the part of third parties. Just like in *Simon*, plaintiffs do nothing more than speculate about what unnamed third parties may do at some point in the future. *See Simon*, 426 U.S. at 41–43. Indeed, if the threat of *incarceration* is an insufficient guarantee of third-party action for purposes of standing, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 617–18 (1973), plaintiffs cannot argue that the imposition of a new nondiscrimination rule—were that even an option—would sufficiently redress their alleged injuries. *See Weaver's Cove Energy, LLC v. R.I. Dep't of Envtl. Mgmt.*, 524 F.3d 1330, 1333 (D.C. Cir. 2008).

Simply put, plaintiffs cannot demonstrate that there is a substantial risk that the lack of a definition for "on the basis of sex" will injure them, that the government's action would be the cause of such an injury, or that the relief they seek can redress it. This Court therefore lacks

jurisdiction to consider plaintiffs' challenge.[1]

### 2. Plaintiffs lack standing to challenge HHS's elimination of the prohibition on categorical coverage exclusions.

For many of the same reasons plaintiffs lack standing to challenge the absence of a definition for "on the basis of sex," plaintiffs also cannot challenge the elimination of the categorical coverage exclusions. Plaintiffs premise their claim of harm on an assertion that eliminating this portion of the 2016 Rule "will result in a reduction in coverage and access to medically necessary health care for transgender and gender nonconforming patients," Reply at 19, but plaintiffs never explain why. In support of standing, plaintiffs cite a declaration, *see id. at 5*, which opines that elimination of the categorical coverage exclusion provision "invites health plans to discriminate through the exclusion of gender affirming procedures," Declaration of Naseema Shafi, CEO, Whitman-Walker Health ("Shafi Decl.") ¶ 27, ECF No. 29-3, and that "[t]o the extent that the Revised Rule results in insurance plans and insurance companies reducing their coverage of such therapies, Whitman-Walker itself—as well as our patients—will be directly harmed by reduced reimbursements[,]" *id.* ¶ 35. But plaintiffs fail to acknowledge that the provision in the 2016 Rule, 45 C.F.R. § 92.207(b)(4), prohibited only *categorical* exclusions—it did not speak to individual determinations. Thus, under either the old provision or the 2020 Rule, a covered entity may choose to deny a claim. Plaintiffs fail to explain how this change results in a non-speculative and certainly impending injury.

The 2020 Rule's provision is, in many respects, analogous to a Centers for Medicare & Medicaid Services ("CMS") decision concerning whether to issue a National Coverage Determination ("NCD"). As plaintiffs themselves explained in minimizing CMS's decision not to issue an NCD for sex-reassignment surgery, "declining to issue a NCD only means coverage determinations are made on a case-by-case basis, not that such treatment is or may be categorically

---

[1] Any challenge to "unrelated regulations," Reply at 5, would fail for similar reasons. Regardless, plaintiffs mention these regulations only in passing in their motion when discussing their challenge to HHS not including a definition for "on the basis of sex." *See, e.g.*, Mot. at 14 ("*Bostock* also forecloses HHS's elimination of gender identity and sexual orientation protections in unrelated regulations.").

excluded." Mot. at 17. Plaintiffs' own logic applies here with equal force. There is no standing because, regardless of the 2020 Rule, a covered entity may still deny insurance coverage.

### 3. Plaintiffs lack standing to challenge HHS's changes to language-access provisions.

Plaintiffs fail to establish standing to challenge the 2020 Rule's language-access provisions because they cannot identify an individual or organization that will be sufficiently harmed to support Article III standing. *See infra* I.B. Like much of the 2020 Rule, the language-access provisions are fundamentally deregulatory in nature. Under the new Rule, plaintiff medical providers remain free to offer all of the language assistance they desire—indeed, in many circumstances, they remain *obligated* to provide such services. *See* 85 Fed. Reg. at 37,245 (explaining when "services must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency").

Plaintiffs avoid acknowledging that the provision of language access services will continue under the 2020 Rule, and instead rely on statements asserting that such services will be unavailable or withheld under the 2020 Rule. For example, declarant Carpenter assumes that, under the 2020 Rule, his clients will lack "necessary translation[] services." Declaration of Dr. Ward Carpenter, MD Co-Director of Health Services, Los Angeles LGBT Center ¶ 19, ECF 29-10; *see also* Declaration of Hector Vargas, Executive Director, GLMA ¶ 23 ("The Revised Rule also harms patients with limited English proficiency ('LEP') who may not receive real-time good quality translator services."). Plaintiffs cannot rely on mere assertions that language services will be unavailable; they must explain *how* the 2020 Rule, which expressly provides for such services, will result in the situation plaintiffs claim to fear. And all of this, of course, assumes that plaintiffs actually represent patients—something plaintiffs have never demonstrated. *See infra* I.B. Any alleged harm to the providers themselves, in contrast, requires that this Court assume "a highly attenuated chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), that stretches injury in fact well beyond its breaking point. *See* Shafi Decl. ¶¶ 31–33 (speculating that covered entities will not provide language services, that patients will become sicker as a result of

poor communication, that such patients will later seek care at a plaintiff provider, and that the provider will incur additional costs from seeing patients with more serious conditions). Because plaintiffs do not allege concrete, particular facts demonstrating that they will be harmed as a result of the 2020 Rule's change to the language-access provisions, they lack standing to challenge it.

      **4.   Plaintiffs lack standing to challenge HHS's changes to the definition of a "covered entity."**

Plaintiffs' argument against HHS's construction of what counts as a "covered entity" is likewise premised on assumptions insufficient to confer Article III standing. For example, plaintiffs rely on declarant Fabian, who contends that as a result of the 2020 Rule's definition of covered entities, "health care professionals like myself and our patients, including LGBTQ patients, will no longer, according to HHS, be protected from discrimination in health care pursuant to Section 1557." Declaration of Dr. Deborah Fabian, MD ¶ 21, ECF No. 29-14; *see also* Declaration of Darrel Cummings, Chief of Staff, Los Angeles LGBT Center ¶ 31, ECF No 29-8 ("The Revised Rule also exempts numerous forms of health insurance from Section 1557, subjecting LGBTQ patients who rely on those forms of insurance to discrimination based on sex, gender identity, transgender status, sexual orientation, race, national origin, age, or disability."). Once again, plaintiffs simply assume that health care providers will discriminate as a result of the 2020 Rule, without explaining why or how. Plaintiffs do not explain, for instance, how the 2020 Rule's definition of covered entities effects a meaningful change in light of *Franciscan Alliance*'s vacatur of "gender identity" from the definition of "on the basis of sex," or the 2016 Rule's failure to include "sexual orientation" in that definition. *See supra* I.A.1. And race, national origin, age, and disability—highlighted by the declarants—are explicitly covered in the statutes that Section 1557, and thus the 2020 Rule, expressly incorporate. *See* 42 U.S.C. § 2000d; 20 U.S.C. § 1681; 42 U.S.C. § 6101; 29 U.S.C. § 794. The 2020 Rule therefore effects no material change in that regard. Finally, plaintiffs' alleged injury once again primarily affects patients not before this Court and focuses on the conduct of third parties rather than of HHS. *See Simon*, 426 U.S. at 41–42.

### 5. Plaintiffs lack standing to challenge the recognition of religious protections.

Plaintiffs fail entirely to explain how they are in a position to challenge the 2020 Rule's provisions regarding religious protections. *See* Reply at 6. As defendants have explained, those provisions do not create exemptions; they acknowledge that there are religious exemptions in other statutes that have always bound individuals and entities subject to Section 1557 because they are incorporated into Section 1557 (*e.g.*, 20 U.S.C. 1681(a)(3)). *See* Mem. of P. & A. in Opp'n to Pls.' Mot. for a Prelim. Inj. or a Stay Pending Judicial Review Pursuant to 5 U.S.C. § 705 ("Opp.") at 28–32, ECF No. 42. Assuming, arguendo, that HHS did in fact create new exemptions that were previously inapplicable, plaintiffs have nevertheless failed to demonstrate concrete harm that is "certainly impending" as a result of such considerations. *Clapper*, 568 U.S. at 401 (quoting *Whitmore*, 495 U.S. at 158). Speculation about how an unnamed third party provider may interact with an unnamed patient is insufficient to satisfy this standard. Indeed, speculation is even more acute here, where religious conscience is involved. Plaintiffs' theory assumes that a provider who would otherwise refuse to offer services as a result of the dictates of his or her religion, would be willing to violate those same beliefs in order to comply with a hypothetical HHS regulation. Plaintiffs have not explained why such a scenario is likely to occur, let alone how it would affect those actually before this Court. Finally, plaintiffs do not deny that the Religious Freedom Restoration Act, Pub. L. No. 103-141, 107 Stat. 1488, constrains HHS's ability to regulate now just as much as it did when the 2016 Rule was in effect. Plaintiffs fail to demonstrate how any supposed changes the 2020 Rule makes regarding other religious freedom protections would further alter the conduct of providers.

### 6. Plaintiffs lack standing to challenge HHS's reading of the proper standard for Section 1557 claims.

Finally, plaintiffs cannot justify standing to challenge HHS's determination that, in accordance with the plain text of Section 1557, "[t]he enforcement mechanisms provided for and available under such title VI, title IX, section [504], or such Age Discrimination Act shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a). The two citations plaintiffs

rely on in their Reply to support standing for this point assert that individuals who have multiple protected characteristics will be harmed by the elimination of a unitary standard under 45 C.F.R. § 92.301. *See* Declaration of Bamby Salcedo, President and CEO, The TransLatin@ Coalition ("Salcedo Decl.")  ¶ 37, ECF No. 29-6 ("Discrimination based on sexual orientation, gender identity, transgender status, national origin, disability and LEP status is often intertwined, as threads braided into one rope, and is difficult to separate."); Declaration of Arianna Inurritegui-Lint, Executive Director of Arianna's Center ("Lint Decl.") ¶ 52, ECF No. 29-7 ("This change will have a particularly harmful effect because discrimination based on sexual orientation, gender identity, transgender status, national origin, disability, and LEP status does not occur in an identity vacuum."). But once again, plaintiffs fail to explain *how* the change will cause this effect. Moreover, because many courts have held that Section 1557 challenges may be brought via private rights of action, courts will also be able to prescribe an enforcement standard for specific Section 1557 claims. Indeed, many courts have already weighed in, and the overwhelming majority align with HHS's interpretation. *See* 85 Fed. Reg. at 37,202 n.249 (collecting cases). In light of this, plaintiffs fail to explain how the 2020 Rule's elimination of 45 C.F.R. § 92.301 has injured them (or the patients they purport to represent).

### B. Plaintiffs Lack Standing to Advance the Claims of Others.

Although plaintiffs' suit primarily alleges harm to patients, plaintiffs do not count a single patient among them—indeed, with the exception of four medical doctors, plaintiffs are composed exclusively of organizations rather than individuals. Plaintiffs' attempts to assert the rights of others not before this Court should be rejected.

#### 1. Plaintiff healthcare providers lack third-party standing.

Even if plaintiffs could demonstrate that the harm alleged was non-speculative, redressable, and caused by the government, plaintiffs fail to explain how each challenged provision would injure the specific parties before the Court. As discussed in defendants' opposition, *see* Opp. at 12–13, the medical providers before this Court fail to satisfy the three factors outlined in *Powers v. Ohio* that would allow them to represent patients not before this Court, *see* 499 U.S. 400, 410–

11 (1991).

*First*, the financial harm they allege—which is itself premised on effects from purported injury to patients that is already far too speculative for the reasons discussed above—is fatally unspecific. *See Int'l. Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 265 (D.D.C. 2016) (assertion of "'financial failure'" of dental practice was "over-general, unexplained, and unsubstantiated speculation about the economics of mercury-free dentistry [that did] not demonstrate . . . requisite injury in fact"); *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180 (D.D.C. 2020) ("Plaintiff's bare assertions cannot establish injury in fact based on an alleged harm to the organization's finances."). Plaintiffs' amorphous claims that the 2020 Rule will "negatively affect the organizational activities of the health care provider plaintiffs" is insufficient to show that plaintiff healthcare providers have been injured. Reply at 6.

*Second*, plaintiffs attempt to assert the rights not of their own patients, but rather patients who may experience alleged discrimination as a result of visiting *other* healthcare providers. Plaintiffs fail to demonstrate a "close relation"—"indeed, they have no relationship at all"—with these hypothetical patients. *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (attorneys could not assert rights of potential future clients).

*Third*, plaintiffs identify no real hindrance to patients themselves filing challenges. That patients in another jurisdiction were willing to bring a suit undercuts plaintiffs' claim that their own patients are prevented from mounting challenges of their own. *See Walker v. Azar*, 1:20-cv-02834 (E.D.N.Y.).

### 2. "LGBTQ-services plaintiffs" lack organizational standing to assert claims on behalf of their members.

"LGBTQ-services plaintiffs" organizations—the TransLatin@ Coalition and Bradbury-Sullivan LGBT Community Center—attempt to assert broad claims based on alleged injury to their individual members. As courts have made clear time and again, however, "it is not enough to aver that unidentified members have been injured. Rather, the [plaintiff] must specifically identify members who have suffered the requisite harm." *U.S. Chamber of Commerce v. EPA*, 642 F.3d

192, 199–200 (D.C. Cir. 2011) (citation omitted); *see Coal. for Mercury–Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 9 n.7 (D.D.C. 2010), *aff'd*, 671 F.3d 1275 (D.C. Cir. 2010) ("[T]he plaintiffs are mistaken that standing can be based on the argument that an unnamed member of its organization is likely to be harmed."). In their opposition, defendants noted that plaintiffs had not identified individual members who might support standing. *See* Opp. at 14. Plaintiffs failed to contradict that conclusion in their Reply.

　　In response to defendants' argument that the Bradbury-Sullivan LGBT Community Center lacks organizational standing, plaintiffs cite a single declaration from Adrian Shanker, the organization's executive director. *See* Reply at 8–9. While Shanker's declaration contains accounts of the experiences of the organization's members, nowhere is a single member identified. Because Shanker himself does not purport to be a potential patient who will likely be injured as a result of the 2020 Rule, the Bradbury-Sullivan LGBT Community Center has failed to establish standing to represent its members.

　　Plaintiffs cite two declarations in support of organizational standing for TransLatin@ Coalition. *See* Reply at 8. But neither demonstrates that the organization has standing to advance claims on behalf of its members. The Bamby Salcedo declaration, authored by the organization's founder, president, and CEO, focuses mainly on the organization itself, and the limited sections discussing the potential personal impact of the 2020 Rule do nothing more than to discuss unspecific fears about potential discrimination by unidentified providers. *See, e.g.*, Salcedo Decl. ¶ 23 ("The Revised Rule's elimination of the clear regulatory protections in the 2016 Final Rule eliminates whatever amount of comfort I might have had, and heightens my fears, as it communicates to health care providers that such discrimination is acceptable."). The Lint declaration likewise focuses on the organization and attempts to identify personal injury in only the vaguest terms. Indeed, rather than providing unique accounts of imminent future injury, both the Salcedo and Lint declarations rely on nearly identical boilerplate legalese. *Compare id.* ¶ 26 ("I fear that, as a result of the Revised Rule, people like me will experience even more discrimination from health care providers and insurers because of our sex, gender identity,

transgender status, national origin, disability, LEP status, or some combination of these characteristics."), *with* Lint Decl. ¶ 35 ("I fear that, as a result of the Revised Rule, I will experience even more discrimination by health care providers and insurers because of my sex, transgender status, national origin, disability, LEP status or some combination of these characteristics.").[2]

In all relevant respects, the Salcedo and Lint declarations are akin to the declaration rejected by the Supreme Court in *Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009). After deeming the declarant's assertions of past harm irrelevant, the Court likewise rejected his claims that he planned to visit national forests that would be affected by the operative regulation as insufficient to establish "concrete, particularized injury in fact." *Id.* at 496. The same reasoning applies here. The Salcedo and Lint declarations, while potentially instructive as to the operations of the TransLatin@ Coalition, provide nothing about an individual named member likely to be injured by the 2020 Rule.

## II.   PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM

Plaintiffs advance a number of arguments that they are entitled to a preliminary injunction because the 2020 Rule will inflict irreparable harm. But plaintiffs must establish a "real," "substantial," and "immediate" risk of irreparable harm. *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)—a mere "possibility" of such harm is insufficient, *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs' claims fail to satisfy this standard.

*First*, plaintiffs argue that they will suffer irreparable harm because of "the unconstitutional deprivation of equal protection and the infringement of other constitutional rights" the 2020 Rule will supposedly cause. Reply at 23. As the government explains in its opposition, Opp. at 34–41, plaintiffs do not demonstrate a constitutional violation.

*Second*, plaintiffs allege "the loss of access to health care" and "the invitation of well-documented discrimination[.]" Reply at 23. Assuming plaintiffs have standing to allege such

---

[2] Furthermore, most statements reference past—rather than future—harm. *See Summers v. Earth Island Institute*, 555 U.S. 488, 495 (2009) (declarant's assertion could not support standing "because it relates to past injury rather than imminent future injury that is sought to be enjoined").

claims (no patients are counted among plaintiffs), they have failed to demonstrate irreparable injury. Even if the harm plaintiffs allege were to occur under the 2020 Rule, patients would have many options for seeking medical care, as evidenced by the numerous healthcare providers represented before this Court. Furthermore, an allegation of "nothing more than speculation about how third parties might respond to" agency action is insufficient to establish irreparable harm. *John Doe Co. v. Consumer Fin. Protec. Bureau*, 849 F.3d 1129, 1134–35 (D.C. Cir. 2017).

*Third*, plaintiffs allege various emotional injuries, including that the 2020 Rule "imposes upon LGBTQ people stigma, causes distress, and negatively impacts their health directly," "actively calls into question LGBTQ people's identities[,]" and "disrespectfully fails to refer to transgender people by their correct gender and pronouns." Reply at 23. That plaintiffs feel passionately about the 2020 Rule is clear. But strong views—however sincere—do not constitute irreparable harm. *See Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 66 (D.D.C. 2017).[3]

*Finally*, plaintiffs have alleged irreparable harm to their organizations' finances. But, as defendants have explained, *see* Opp. at 42, a plaintiff must show that the "very existence" of its business is threatened, *Soundboard Ass'n v. U.S. Fed. Trade Comm'n.*, 254 F. Supp. 3d 7, 13 (D.D.C. 2017) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)), even if losses may never be recoverable through litigation, *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011).  Plaintiffs have not made that necessary showing.

## CONCLUSION

Because plaintiffs lack standing and have failed to demonstrate irreparable harm, their motion should be denied.

---

[3] Plaintiffs additionally make the wholly unsupported claim that "[t]he Revised Rule also suggests LGBTQ people are a threat to children[.]" Reply at 23 (citing 85 Fed. Reg. at 37,222). The Rule does no such thing.

Dated: August 10, 2020                    Respectfully submitted,


                                          ETHAN P. DAVIS
                                          Acting Assistant Attorney General

                                          DAVID M. MORRELL
                                          Deputy Assistant Attorney General

                                          MICHELLE R. BENNETT
                                          Assistant Director, Federal Programs Branch

                                          */s/ William K. Lane III*
                                          WILLIAM K. LANE III
                                          (D.C. Bar # 1034955)
                                          Counsel to the Assistant Attorney General
                                          Civil Division
                                          U.S. Department of Justice
                                          950 Pennsylvania Ave., N.W.
                                          Washington, D.C. 20530
                                          (202) 305-7920
                                          william.lane2@usdoj.gov


                                          JORDAN L. VON BOKERN
                                          LIAM C. HOLLAND
                                          Trial Attorneys, Federal Programs Branch


                                          *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August, 2020, I caused the foregoing document to be served on counsel for plaintiffs by filing with the Court's electronic case filing system.


*/s/ William K. Lane III*
William K. Lane III