**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WHITMAN-WALKER CLINIC, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01630-JEB |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ....................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.  Plaintiffs Have Failed to Establish Subject Matter Jurisdiction As To Many of
    Their Claims and Those Claims Should be Dismissed Under Rule 12(b)(1) .................... 5

    A.  Plaintiffs Lack Standing ......................................................................................... 5

    B.  Plaintiffs' Challenges to HHS's Decision not to Define "On the Basis of Sex"
        and Several of HHS's Other Decisions are Not Ripe for Review ............................ 10

    C.  Plaintiffs' Eighth Claim for Relief Should be Dismissed as Moot. ......................... 15

II. Most of Plaintiffs' Claims Should be Dismissed under Rule 12(b)(6). ........................... 15

    A.  Plaintiffs' Claims that the 2020 Rule Violates the APA Fail as a Matter of
        Law. ....................................................................................................................... 16

        1.  HHS's Decision not to Include an Explicit Prohibition on Categorical
            Coverage Exclusions is Lawful ......................................................................... 16

        2.  HHS's Elimination of Notice Requirements is Lawful ....................................... 17

        3.  The 2020 Rule Does not Violate Section 1554 of the ACA ................................ 18

        4.  The 2020 Rule Reasonably Construes the Scope of Section 1557. ..................... 19

        5.  The Final Rule's Return to Enforcement Mechanisms Separately
            Available under the Civil Rights Statutes Incorporated into Section 1557
            Does Not Violate the APA. ................................................................................ 22

        6.  HHS Sufficiently Explained its Decision to Eliminate Regulatory
            Protections Against Discrimination on the Basis of Association. ...................... 25

        7.  HHS Sufficiently Explained its Decision to Make Conforming
            Modifications to Other Regulations. .................................................................. 26

    B.  Plaintiffs' Constitutional Claims Fail as a Matter of Law. ..................................... 26

i

1.   The Complaint Does Not State An Equal Protection Claim................................ 26

2.   The Complaint Does Not State A Substantive Due Process Claim. .................... 28

3.   The Complaint does not State a Claim that the 2020 Rule Violates
     Plaintiffs' Free Speech Rights ............................................................................ 29

4.   The Complaint Does Not State an Establishment Clause Claim ......................... 30

CONCLUSION ..................................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ................................................................................................ 11, 12

*Action All. of Senior Citizens of Greater Phila. v. Heckler*,
   789 F.2d 931 (D.C. Cir. 1986) ...................................................................................... 12

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................ 8, 25

*Allen v. Wright*,
   468 U.S. 737 (1984) ...................................................................................................... 6

*Am. Lib. Ass'n v. Barr*,
   956 F.2d 1178 (D.C. Cir. 1992) ................................................................................ 29, 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 15

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ................................................................................ 12, 14

*Aulenback, Inc. v. FHA*,
   103 F.3d 156 (D.C. Cir. 1997) ...................................................................................... 12

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*,
   512 U.S. 687 (1994) .................................................................................................... 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 15

*Bostock v. Clayton Cty.*,
   140 S. Ct. 1731 (2020) ............................................................................................ 14, 27

*Briscoe* v. *Health Care Serv. Corp.*,
   281 F. Supp. 3d 725 (N.D. Ill. 2017) ............................................................................ 23

*California v. Azar*,
   950 F.3d 1067 (9th Cir. 2020) ................................................................................ 18, 19

*Chamber of Commerce v. EPA*,
   642 F.3d 192 (D.C. Cir. 2011) .................................................................................... 6, 9

*Chamber of Commerce v. FEC*,
  69 F.3d 600 (D.C. Cir. 1995) ................................................................ 31

*Chamber of Commerce v. Reich*,
  57 F.3d 1099 (D.C. Cir. 1995) .............................................................. 12

*Chevron, U.S.A., Inc. v. NRDC*,
  467 U.S. 837 (1984) ............................................................ 16, 17, 20, 23

*Citizens for Responsibility & Ethics in Wash. v. Wheeler ("CREW")*,
  352 F. Supp. 3d 1 (D.D.C. 2019) ........................................................ 4, 15

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................... 6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................... 8, 29

*Clean Air Implementation Project v. EPA*,
  150 F.3d 1200 (D.C. Cir. 1998) ............................................................ 12

*Corp. of Presiding Bishop v. Amos*,
  483 U.S. 327 (1987) ............................................................................ 30

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) ............................................................................ 30

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................. 5

*Davis v. FEC*,
  554 U.S. 724 (2008) .............................................................................. 5

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
  489 U.S. 189 (1989) ........................................................................ 28, 29

*District of Columbia v. U.S. Dep't of Agric.*,
  444 F. Supp. 3d. 1 (D.D.C. 2020) ...................................................... 21, 25

*Doe v. BlueCross BlueShield of Tenn., Inc.*,
  No. 2:17-cv-02793-TLP-CGC, 2018 WL 3625012 (W.D. Tenn. July 30, 2018),
  *aff'd*, 926 F.3d 235 (6th Cir. 2019) ................................................... 23

*DHS v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ....................................................................... 27

*E.S. by and through R.S.* v. *Regence BlueShield*,
 No. C17-01609 RAJ, 2018 WL 4566053 (W.D. Wash. Sept. 24, 2018) ................................. 23

*Encino Motorcars, LLC v. Navarro*,
 136 S. Ct. 2117 (2016),
 *filing appeal*, No. 20-5136 (D.C. Cir. May 14, 2020)........................................................ 21, 25

*FCC v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009) ............................................................................................... 17, 22, 26

*Food & Water Watch, Inc. v. Vilsack*,
 808 F.3d 905 (D.C. Cir. 2015) ...................................................................................... 6

*Galuten on Behalf of Estate of Galuten v. Williamson Med. Ctr.*,
 No. 3:18-cv-00519, 2019 WL 1546940. (M.D. Tenn. Apr. 9, 2019)........................................ 23

*Gerber Prods. Co. v. Perdue*,
 254 F. Supp. 3d 74 (D.D.C. 2017) ................................................................................. 8

*Gillette v. United States*,
 401 U.S. 437 (1971) ............................................................................................... 30

*Grand Lodge of Fraternal Order of Police v. Ashcroft*,
 185 F. Supp. 2d 9 (D.D.C. 2001) ................................................................................. 5

*Greater Bos. Television Corp. v. FCC*,
 444 F.2d 841 (D.C. Cir. 1970) ....................................................................................... 22

*Hobbie v. Unemp't Appeals Comm'n of Fla.*,
 480 U.S. 136 (1987) ............................................................................................... 30

*In re African-Am. Slave Descendants Litig.*,
 304 F. Supp. 2d 1027 (N.D. Ill. 2004) ........................................................................... 8

*Jean v. Nelson*,
 472 U.S. 846 (1985) ............................................................................................... 31

*Laird v. Tatum*,
 408 U.S. 1 (1972) ................................................................................................... 29

*Lemon v. Geren*,
 514 F.3d 1312 (D.C. Cir. 2008) ................................................................................. 15

*Lewis v. Casey*,
 518 U.S. 343 (1996) ............................................................................................... 5

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................ 5, 8

*Marshall Cty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ............................................................................ 4, 16

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018) ............................................................................................. 27

*Mozilla Corp. v. FCC*,
    940 F.3d 1 (D.C. Cir. 2019) .................................................................................... 21

*N. Eng. Power Generators Ass'n v. FERC*,
    707 F.3d 364 (D.C. Cir. 2013) ................................................................................. 8

*Nat'l Mining Ass'n v. Kempthorne*,
    512 F.3d 702 (D.C. Cir. 2008) ............................................................................... 31

*Nat'l Park Hosp. Ass'n v. U.S. Dep't of Interior*,
    538 U.S. 803 (2003) ................................................................................................ 11

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ................................................................................................ 15

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974) ................................................................................................ 10

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) ........................................................................................... 11, 12

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987) .................................................................................. 27

*Public Citizen v. Trump*,
    297 F. Supp. 3d 6 (D.D.C. 2018) .............................................................................. 6

*Rumble v. Fairview Health Services*,
    No. 14-cv-2037 SRN/FLN, 2015 WL 1197415 (D. Minn. Mar. 16, 2015) ............................. 23

*S. C. Elec. & Gas Co. v. ICC*,
    734 F.2d 1541 (D.C. Cir. 1984) .............................................................................. 11

*Schweiker v. Wilson*,
    450 U.S. 221 (1981) ................................................................................................ 26

*Se. Pa. Transp. Auth. v. Gilead Scis. Inc.*,
    102 F. Supp. 3d 688 (E.D. Pa. 2015) ....................................... 23

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) .................................................................. 10

*Socialist Labor Party v. Gillian*,
    406 U.S. 583 (1972) .................................................................. 11

*South Carolina v. United States*,
    2017 WL 976298 (D.S.C. Mar. 14, 2017)............................... 31

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ................................................ 4

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................... 5, 6

*Steffan v. Perry*,
    41 F.3d 677 (D.C. Cir. 1994) .................................................. 27

*Texas v. United States*,
    523 U.S. 296 (1998) .................................................................. 14

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) .................................................................. 14

*Time Warner Entm't Co., L.P. v. FCC*,
    93 F.3d 957 (D.C. Cir. 1996) .................................................. 12

*Trans Union LLC v. FTC*,
    295 F.3d 42 (D.C. Cir. 2002) .................................................. 14

*Truckers United for Safety v. FHA*,
    139 F.3d 934 (D.C. Cir. 1998) ................................................ 12

*Twin Rivers Paper Co. v. SEC*,
    934 F.3d 607 (D.C. Cir. 2019) .............................................. 5, 6

*Walz v. Tax Comm'n of City of N.Y.*,
    397 U.S. 664 (1970) .................................................................. 30

*Washington v. Davis*,
    426 U.S. 229 (1976) .................................................................. 27

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ......................................................................................... 28

*Washington v. HHS*,
   No. C20-1105 JLR, 2020 WL 5095467 (W.D. Wash. Aug. 28, 2020) ................................ 8, 13

*Whitman v. Am. Trucking Ass'n*,
   531 U.S. 457 (2001) .................................................................................... 19, 20

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
   --- F. Supp. 3d ---, No. CV 20-1630 (JEB), 2020 WL 5232076 (D.D.C. Sept. 2, 2020) .............
   ................................................................................................ *passim*

*York v. Wellmark, Inc.*,
   No. 4:16-cv-00627 RGECFB, 2017 WL 11261026 (S.D. Iowa Sept. 6, 2017),
   *aff'd*, 965 F.3d 633 (8th Cir. 2020) ...................................................................... 23

## STATUTES

5 U.S.C. § 706 ............................................................................................. *passim*

7 U.S.C. § 706 ............................................................................................. 4, 32

42 U.S.C. § 18116 ......................................................................................... 19, 20, 22

42 U.S.C § 18114 .......................................................................................... 18

## REGULATIONS

45 C.F.R. § 92.2 .......................................................................................... 20

45 C.F.R. § 92.207 ........................................................................................ 16

45 C.F.R. § 92.2 .......................................................................................... 20

45 C.F.R. § 92.3 .......................................................................................... 20, 21

81 Fed. Reg. 31,375 (May 18, 2016) ...................................................................... 2

84 Fed. Reg. 27,846 (June 14, 2019) ...................................................................... 17, 22, 25

85 Fed. Reg. 37,160 (June 19, 2020) ...................................................................... *passim*

## RULES

Fed. R. Civ. P. 12 ........................................................................................ *passim*

# INTRODUCTION

In this Court's prior opinion granting in part and denying in part plaintiffs' Motion for Preliminary Injunction, *see Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 3d ---, No. CV 20-1630 (JEB), 2020 WL 5232076 (D.D.C. Sept. 2, 2020), this Court found that plaintiffs have standing to raise and are likely to succeed on two claims: that the 2020 Rule arbitrarily and capriciously (1) eliminated "sex stereotyping" from the prior Rule's definition of "discrimination on the basis of sex", and (2) incorporated Title IX's exemption of certain religious organizations from the statute's nondiscrimination mandate. But this Court also held that plaintiffs likely lack standing to raise or are not likely to succeed on the merits of several other claims. For similar reasons, defendants now argue these other claims should be dismissed under Rule 12(b)(1) and 12(b)(6).

Plaintiffs do not allege facts that sufficiently satisfy the close scrutiny demanded to establish standing to raise most of their claims. Indeed, the Complaint is devoid of any facts—let alone clearly alleged ones—supporting their standing to challenge several of the 2020 Rule's provisions. Because plaintiffs lack standing to contest the 2020 Rule, their claims should be rejected—and ultimately dismissed.

What is more, several of the actions challenged by plaintiffs, such as HHS's decision not to define "on the basis of sex" by rule, involve HHS's discretion to decline to proceed by rulemaking. To the extent they involve allegations that courts and HHS will ignore relevant Supreme Court jurisprudence in interpreting Section 1557 in the future, they are both unripe and implausible. The Court should dismiss plaintiffs' challenges to these claims because they are entirely contingent upon the outcome of future adjudication of Section 1557.

To the extent this Court has jurisdiction over ripe issues in this case, plaintiffs still fail to state a claim upon which relief may be granted. HHS's reasoned explanation for the policy changes contained in the 2020 Rule within its authority more than adhered to the standards for reasoned decisionmaking required by the Administrative Procedure Act.

Although defendants respectfully disagree with this Court's conclusions with respect to

plaintiffs' standing and likelihood of success in challenging HHS's decision to remove an explicit definition of "on the basis of sex" and HHS's explicit incorporation of Title IX's exemption of certain religious organizations into the 2020 Rule, defendants intend to address those claims, to the extent necessary, later in this litigation and potentially on appeal.

## BACKGROUND

Relevant statutory and regulatory background is set out in detail in this Court's prior opinion granting in part and denying in part plaintiffs' Motion for Preliminary Injunction, *see Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, --- F. Supp. 3d ---, No. CV 20-1630 (JEB) 2020 WL 5232076, at *2-*6 (D.D.C. Sept. 2, 2020), and in defendants' Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction, *see* ECF No. 42 at 2-8.  Given the posture of the case, defendants summarize only the relevant procedural history here; defendants will  summarize plaintiffs' allegations related to provisions of the 2020 Rule that have not previously been addressed by this Court in the relevant argument section below.

On June 19, 2020, HHS issued a Final Rule implementing Section 1557 of the ACA ("2020 Rule").  85 Fed. Reg, 37,160, 37,160 (June 19, 2020).  The non-enjoined provisions of the Rule went into effect on August 18, 2020.  *Id*. Plaintiffs filed a Complaint ("Complaint" or "Compl.") on June 22, 2020, challenging many of the Rule's provisions as violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(C). Compl. ECF No. 1.  On July 9, 2020, plaintiffs moved to preliminarily enjoin many of the provisions of the 2020 Rule they challenge in the Complaint. Pls.' Mot. Prelim. Inj., ECF No. 29. This Court granted their motion in part and denied it in part on September 2, 2020.  *See Whitman-Walker*, 2020 WL 5232076, at *45.  Specifically, this Court preliminarily enjoined HHS "from enforcing the repeal of the 2016 Rule's definition of discrimination 'on the basis of sex' insofar as it includes 'discrimination on the basis of . . . sex stereotyping.'"  *Id*. (quoting 81 Fed. Reg. at 31,375, 31,467 (May 18, 2016)).  And this Court enjoined HHS "from enforcing [the 2020 Rule's] incorporation of the religious exemption

contained in Title IX." *Id.* Defendants now move to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

Specifically, defendants move to dismiss, for lack of standing, plaintiffs' claims under 5 U.S.C. § 706(2)(A) and (C), Compl. ¶¶ 235-58, to the extent they apply to the 2020 Rule's provisions regarding (1) the legal standards for enforcement of Section 1557 violations, Compl. ¶¶ 230, 245, 254; (2) private rights of action and compensatory damages, *id.* ¶¶ 231, 245; (3) the scope of entities subject to Section 1557, Compl. ¶¶ 233, 247; and (4) discrimination on the basis of association and conforming modifications made to other HHS regulations, Compl. ¶¶ 234, 235, 243, 244, 255. Defendants move to dismiss, as unripe, plaintiffs' claims under 5 U.S.C. § 706(2)(A)-(C), Compl. ¶¶235-302, to the extent they apply to (1) HHS's decision not to define "on the basis of sex" or specific instances of discrimination, like categorical coverage exclusions, in the 2020 Rule, Compl. ¶¶ 228, 229, 242, 243, 253, 255; (2) the 2020 Rule's provisions regarding the legal standards applicable for enforcing Section 1557 claims, *id.* ¶¶ 230, 245, 254; (3) HHS's decision not to explicitly recognize a private right of action for Section 1557 claims in the 2020 Rule, *id.* ¶ 231; (4) HHS's decision not to explicitly recognize by rule that compensatory damages are available for violations of Section 1557, *id.* ¶ 231; and (5) HHS's decision not to explicitly recognize by rule Section 1557's coverage of discrimination on the basis of association, Compl. ¶¶ 235, 244. Defendants move to dismiss, as moot, plaintiffs' eighth claim for relief: "equitable relief to preserve remedy," *id.* ¶¶ 303-307. Defendants move to dismiss, for failure to state a claim, plaintiffs' claim under 5 U.S.C. § 706(2)(A) that the 2020 Rule violates Section 1554 of the ACA, Compl. ¶ 248; and plaintiffs' claims under 5 U.S.C. § 706(2)(A)-(C), Compl. ¶¶ 235-302, to the extent they apply to (1) HHS's decision not to explicitly prohibit by rule categorical coverage exclusions; (2) HHS's elimination of notice requirements, *id.* ¶¶ 236, 256; (3) the scope of entities subject to Section 1557, *id.* ¶¶ 233, 247, 254; (4) the 2020 Rule's legal standards for enforcement

---

[1] To the extent that the Court's preliminary injunction ruling is appealed and reversed or modified, defendants reserve the right to move to dismiss any claim that is reversed or modified at a later date.

of Section 1557, *id.* ¶¶ 230, 254; (5) HHS's decision not to explicitly recognize by rule that compensatory damages are available for violations of Section 1557, *id.* ¶¶ 231; (6) HHS's decision not to explicitly recognize by rule a private right of action for Section 1557 claims in the 2020 Rule, *id.*; (7) discrimination on the basis of association, *id.* ¶¶ 235, 244; and (8) HHS's conforming modifications to other regulations, *id.* ¶¶ 234, 243.  Defendants also move to dismiss plaintiffs claims' under 7 U.S.C. § 706(2)(B), that defendants violated the constitution, *id.* ¶¶ 259-302, in their entirety.[2]

## LEGAL STANDARDS

In evaluating a motion to dismiss "the Court must 'treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Citizens for Responsibility & Ethics in Wash. v. Wheeler ("CREW")*, 352 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint."  *Id.*  Whether HHS "adhered to the standards of decisionmaking required by the APA" is a legal question that may be answered on a Rule 12(b)(6) motion.  *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

"To survive a motion to dismiss under Rule 12(b)(1), a plaintiff generally bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims."  *CREW*, 352 F. Supp. 3d at 7.  "For this reason, 'the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a

---

[2] If this Court grants defendants' motion to dismiss in its entirety, only plaintiffs' claims under 5 U.S.C. § 706(2)(A) regarding the 2020 Rule's incorporation of Title IX's religious exemption, Compl. ¶¶ 232, 246, would remain.  Those claims should be dismissed for the reasons defendants explained in their Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for a Preliminary Injunction or Stay Pending Judicial Review, ECF No. 42.  Nevertheless, as explained in the introduction, in light of this Court's preliminary injunction ruling, defendants intend to address those claims, to the extent necessary, later in this litigation and potentially on appeal.

claim." *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001)).

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO ESTABLISH SUBJECT MATTER JURISDICTION AS TO MANY OF THEIR CLAIMS AND THOSE CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(1)**

### A. Plaintiffs Lack Standing

Because "[s]tanding is not dispensed in gross," *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)), plaintiffs "must demonstrate standing for each claim [they] seek[] to press" and for "each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Specifically, plaintiffs must allege facts supporting an "injury in fact" that is "fairly . . . trace[able]" to each challenged provision of the 2020 Rule and that will "be redressed by a favorable decision," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "Where, as here, a case is at the pleading stage, [a] plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citation omitted). "[A] party cannot rest on 'abstract'" or "'conclusory' assertions of injury, . . . but must point to 'specific, concrete facts demonstrating harm.'" *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 612-13 (D.C. Cir. 2019) (citations omitted).

The Complaint is devoid of any facts—let alone clearly alleged ones—supporting Plaintiffs' standing to challenge the 2020 Rule's provisions relating to (1) the legal standards for enforcement of Section 1557 violations, (2) the explicit recognition of private rights of action and the availability of compensatory damages under Section 1557, (3) the scope of entities subject to Section 1557, and (4) the elimination of protections against discrimination on the basis of association and conforming modifications made to other HHS regulations. These claims thus must be dismissed.

**(1)** *Legal standards for enforcement of Section 1557 violations.* Where the 2016 rule blended the enforcement mechanisms available under the underlying civil rights statutes and

regulations, the 2020 Rule requires Section 1557 claims to be brought using the enforcement mechanisms available under each respective relevant incorporated civil rights statute(s).  The Complaint's only allegation of injury related to this provision is that the "elimination of the unitary standard [in the 2016 rule] harms the Translatin@ Coalition, its members, and individuals whom it serves by making it more difficult to bring claims of intersectional discrimination."  Compl. ¶ 210.  Far from "clearly alleg[ing] facts demonstrating each element" of standing, *Spokeo*, 136 S. Ct. at 1547, this allegation, as this Court previously determined, "is murky, to say the least." *Whitman-Walker*, 2020 WL 5232076, at *19.   "Nowhere do [plaintiffs] suggest that HHS's interpretation of the standard for Section 1557 claims causes LGBTQ individuals to fear discrimination," (even assuming fear of discrimination could establish standing, which it does not)[3] "or even that it exposes them to a heightened risk of discrimination."  *Id.*  The Complaint includes no facts clearly alleging how Translatin@ Coalition's "ability to provide services" has purportedly been impaired by this provision or how it has purportedly "used its resources to counteract that harm."  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905,  919 (D.C. Cir. 2015).   And because "an organization's use of resources for litigation . . . or advocacy is not sufficient to give rise to an Article III injury," *id.*, the Complaint's allegation that the Rule makes it "more difficult to bring claims of intersectional discrimination," Compl. ¶ 210, is insufficient.

To the extent Translatin@ Coalition is attempting to invoke associational standing, the Complaint is insufficient because it fails to "identify at least one *specific* member who has suffered, or is likely to suffer, an injury in fact."  *Public Citizen v. Trump*, 297 F. Supp. 3d 6, 18 (D.D.C. 2018) (emphasis in original).  The Court is being asked to assume not only that an unnamed Translatin@ Coalition member will come across a healthcare provider that will discriminate against him at some uncertain point in the future,[4] but also that the healthcare provider's

---

[3] *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *see also Allen v. Wright*, 468 U.S. 737, 755-56 (1984) ("abstract stigmatic injury [is] not cognizable").
[4] *See Twin Rivers Paper Company LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019) (quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) ("It is 'not enough to aver than unidentified members have been injured.'"))

discriminatory conduct will have occurred because of the Rule's return to the enforcement mechanisms provided for, and available under, longstanding civil rights statutes and the Department's implementing regulations.  This causal chain is far from predictable and, as this Court has explained, "[t]he proper context for quarrels surrounding the legal standard for Section 1557 claims would be an actual lawsuit bringing such a claim."  *Whitman-Walker*, 2020 WL 5232076, at *20.

(2) ***Private rights of action and compensatory damages***.  The Final Rule eliminated provisions in the 2016 Rule that explicitly stated that an individual or entity may bring a civil action in a United States District Court to challenge a violation of Section 1557.  85 Fed. Reg. at 37,203.  But HHS did not determine, in the 2020 Rule, that private rights of action are not available to plaintiffs.  Instead, HHS declined to take a position by rule.  HHS "no longer intends to take a position in its regulations on the issue of whether Section 1557 provides a private right of action." 85 Fed. Reg. at 37,203.  To the extent Section 1557 permits a private right of action, plaintiffs can assert claims under the statute itself, meaning they have suffered no injury from the Final Rule.

The Final Rule also eliminated § 92.301(b) of the 2016 Rule, which provided that "[c]ompensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule."  85 Fed. Reg. at 37,202.  But HHS did not replace this provision with a rule indicating that compensatory damages are never available in any Section 1557 action.  In the preamble, HHS stated that it intends the change to be consistent with "applicable Federal case law," holding that "compensatory damages are generally unavailable for claims based solely on a Federal agency's disparate impact regulations."  *Id*.  Instead, like the legal standard applicable in Section 1557 claims, whether compensatory damages are available depends on whether they are available under the statutes and regulations applicable to Title VI, Title IX, the Age Act, or Section 504 claims, respectively.  *Id*. at 37,202-37,203.

Plaintiffs claim that the 2020 Rule's "elimination of the explicit recognition of private rights of action and the availability of compensatory damages under Section 1557 . . . will confuse the public and mislead individuals into not asserting their legal rights."  Compl. ¶ 16; *see also id*.

¶ 231 (same).   But abstract injuries, like public confusion and public deception, which are "common to all members of the public," *Lujan*, 504 U.S. at 575, fall short of what Article III requires.   Plaintiffs make *no* further allegations in the Complaint shedding any light on how the alleged state of uncertainty and confusion actually harms them in a concrete way.   *See N. Eng. Power Generators Ass'n v. FERC*, 707 F.3d 364, 369 (D.C. Cir. 2013) ("It would be a strange thing indeed if uncertainty were a sufficiently certain harm to constitute an injury in fact."); *see also Gerber Prods. Co. v. Perdue*, 254 F. Supp. 3d 74, 81 (D.D.C. 2017) ("[U]ncertainties that arise from regulatory decisions are not the kind of concrete and particularized injuries to establish an injury in fact."); *In re African-Am. Slave Descendants Litig.*, 304 F. Supp. 2d 1027, 1050 (N.D. Ill. 2004) ("[A]lleging a general state of confusion . . . fail[s] to allege any injury-in-fact" without specific facts clearly demonstrating some injury "that has come about as a result of that confusion.").

What is more, plaintiffs cannot plausibly establish a concrete injury-in-fact caused by a regulation that takes no position one way or the other on whether its authorizing statute includes an implied private right of action.   Private rights of action are created by Congress, not agencies. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).   And HHS explained that the 2020 Rule does not (and cannot) eliminate any private right of action created by Congress.   To the contrary, "[t]o the extent that Section 1557 permits private rights of action, plaintiffs can assert claims under Section 1557 itself rather than under the Department's Section 1557 regulation."   85 Fed. Reg. at 37,203.   Plaintiffs cannot plausibly make any "effort to explain why providers or insurers would be willing to risk revising their practices or policies" in some way *because of* the lack of a private right of action *in the rule*, in light of the continued plausibility that the statute itself includes such an implied right of action.   *See Washington v. HHS*, No. C20-1105 JLR, 2020 WL 5095467, at *8 (W.D. Wash. Aug. 28, 2020); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (no standing where plaintiffs "can only speculate as to whether [a] court will" make a certain conclusion).   And no different than the legal standard applicable to Section 1557 claims, "[t]he proper context for quarrels surrounding the [availability of compensatory damages] for Section

1557 claims would be an actual lawsuit bringing such a claim."  *See Whitman-Walker*, 2020 WL 5232076, at *20.

**(3) *Scope of entities subject to Section 1557.*** The 2020 Rule "modifies the 2016 Rule's definition of entities covered by Section 1557," 85 Fed. Reg. at 37,162, which will now extend to "(1) [a]ny health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by [HHS]; (2) any program or activity administered by [HHS] under Title I of the ACA; or (3) any program or activity administered by any entity established under such Title." *Id.* at 37,169, 37,244 (codified at § 92.3(a)).  HHS changed this definition "in order to align it more closely with the statutory text." *Id.* at 37,162.

The Complaint's only allegation of injury stemming from this change is that it purportedly "will cause drastic reductions in protections for LGBQ people."  Compl. ¶ 21.  This Court previously held that plaintiffs lack standing to assert the claim, and for good reason.  As an initial matter, this allegation is insufficient to establish injury particularized to any of the named plaintiffs—either organizational or associational.  And even if it were particularized, "[s]imply asserting, without any elaboration, that individuals will experience discrimination at the hands of Title I programs and health insurers does not 'suffice to demonstrate the substantial probability' that discrimination will actually occur as required to establish standing."  *Whitman-Walker*, 2020 WL 5232076, at *18 (quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011)).  And "[e]qually glaring is the absence of any explanation as to how Plaintiffs' alleged injury"—to the extent they have alleged any injury in the Complaint at all—"is *caused* by these regulatory actions."  *Id.*

**(4) *Elimination of protections against discrimination on the basis of association and HHS's decision to make conforming modifications to other HHS regulations.*** The Complaint includes a claim that the 2020 Rule violates the APA because HHS "failed to provide a sufficient explanation for the decision to eliminate protections against discrimination on the basis of association."  Compl. ¶ 235; *see also id.* ¶ 244.  And the Complaint claims that conforming

9

amendments the agency made to related regulations are contrary to law and arbitrary and capricious. *Id.* ¶¶ 234, 243. But the Complaint is utterly devoid of any allegations—let alone clear ones—explaining how any plaintiff has been injured by and otherwise has standing to challenge these aspects of the 2020 Rule.

### B. Plaintiffs' Challenges to HHS's Decision not to Define "On the Basis of Sex" and Several of HHS's Other Decisions are Not Ripe for Review

Section 1557 prohibits covered entities from discriminating, among other things, on the basis of sex. Although the 2016 Rule provided a non-exhaustive definition of what that term means, HHS declined to include a definition of "on the basis of sex" in the 2020 Rule. *See* 85 Fed. Reg. at 37,244 (to be codified at § 92.2). The Rule instead "relies upon[] the plain meaning of the term in the statute," 85 Fed Reg. at 37,178, consistent with Section 1557(c)[5] and black letter law permitting agencies discretion to decline to proceed by rulemaking, *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."); *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."). Because the 2020 Rule merely replaces the 2016 Rule's explicit definition of "on the basis of sex" by hewing to the text of Section 1557, in the preamble to the 2020 Rule, HHS recognized that, "to the extent a Supreme Court decision is applicable in interpreting the meaning of a statutory term, the elimination of a regulatory definition of such term would not preclude application of the Court's construction." 85 Fed. Reg. at 37,168.

With that context in mind, plaintiffs' challenge to HHS's decision to decline to include a definition of "on the basis of sex" in the 2020 Rule—premised on plaintiffs' speculation that the 2020 Rule does not cover sexual orientation or gender identity discrimination—is not ripe.

---

[5] Section 1557(c) provides that HHS "*may*"—not shall—"promulgate regulations to implement this section."

> [T]he ripeness requirement is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties."

*Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  "Determining whether administrative action is ripe for judicial review requires [courts] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship of the parties of withholding court consideration."  *Nat'l Park Hosp. Ass'n v. U.S. Dep't of Interior*, 538 U.S. 803, 808 (2003).  Both hardship *and* fitness of the issues for decision must exist for pre-enforcement review to be ripe.  *See Socialist Labor Party v. Gillian*, 406 U.S. 583, 588 (1972) (admitting the existence of standing (and thus of injury) but deeming the matter unripe because issue was unfit for judicial decision); *S. C. Elec. & Gas Co. v. ICC*, 734 F.2d 1541, 1545 (D.C. Cir. 1984) (determining agency policy not ripe for review where one "portion of the test is not met").

    ***Hardship***.  Defendants recognize that this Court has preliminarily found plaintiffs have standing based on purportedly concrete injuries stemming from the subjective fears of third parties reacting to the Rule's lack of an explicit definition of "on the basis of sex."  *See Whitman-Walker*, 2020 WL 5232076, at *12.  Defendants respectfully dispute that this injury is both sufficiently supported in the record and fairly traceable to defendants, but as noted in the introduction *supra*, defendants intend to address standing for this claim, if necessary, at summary judgment.

    But plaintiffs' injuries are insufficient to establish hardship from awaiting litigation of their claim until after some concrete instance of actual discrimination.  That is because "mere uncertainty as to the validity of a legal rule"—the bedrock of the subjective fear that this Court has premised standing upon in this case—does not "constitute[] a hardship for purposes of the ripeness analysis."  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 811.  To be sure, it is "easier, and certainly cheaper, to mount one legal challenge against the [2020 Rule] now, than to pursue many challenges to each" plausible instance of hypothetical future discrimination by a health program or activity to establish the meaning of "on the basis of sex" though adjudication or litigation under Section 1557. *Ohio*

*Forestry Ass'n*, 523 U.S. at 734-35. But courts have "not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe." *Id.*

   ***Fitness of the Issues for Decision***.   Whether or not the hardship criterion is satisfied is ultimately irrelevant because the nature of the issue on which plaintiffs seek review—HHS's decision *not* to define the meaning of a statutory term by rule, but to permit its meaning to develop through case-by-case adjudication—is precisely "the kind of 'abstract disagreement over administrative policies,' . . . that the ripeness doctrine seeks to avoid." *Ohio Forestry Ass'n*, 523 U.S. at 736 (quoting *Abbott Labs.*, 387 U.S. at 148); *see also Time Warner Entm't Co., L.P. v. FCC*, 93 F.3d 957, 974 (D.C. Cir. 1996) (quoting *Chamber of Commerce v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir. 1995)) (pre-enforcement review unripe where claim is *not* "sufficiently fleshed out for the court to see the concrete effects and implications of its decision").

   "Among other things, the fitness of an issue for judicial decision depends on whether it is 'purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (quoting *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998)).  To be sure, the questions in this case are purely legal, "[b]ut even purely legal issues may be unfit for review." *Id.*  Here, the issues are not fit for judicial review because of the latter two factors.

   In this case, plaintiffs' challenge to HHS's decision not to define "on the basis of sex" by rule is not ripe for review because "further administrative action is needed to clarify the agency's position." *Aulenback, Inc. v. FHA*, 103 F.3d 156, 167 (D.C. Cir. 1997) (quoting *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).  As in *Aulenback*, HHS denies promulgating the policy plaintiffs purport that it has promulgated.  *See id.*; *see also Truckers United for Safety v. FHA*, 139 F.3d 934, 937-38 (D.C. Cir. 1998) (challenge to agency guidance particularly unripe where petitioners claim agency guidance clearly establishes a certain policy but government disagrees and the guidance "do[es] not [establish purported policy]

with the clarity necessary for the court to intercede without first giving the agency a chance to apply its regulations in a concrete factual situation").

Plaintiffs allege that "HHS takes the position that . . . discrimination on the basis of sex under Title IX does not encompass discrimination on the basis of gender identity or sex stereotyping."  Compl. ¶ 88 (citing 85 Fed. Reg. at 37,183-86).  With respect to gender identity, the 2020 Rule's "position" from the regulation's preamble that plaintiffs cite was qualified: "to the extent that a Supreme Court decision is applicable in interpreting the meaning of a statutory term, the elimination of a regulatory definition of such term would not preclude application of the Court's construction."  85 Fed. Reg. at 37,168.  And if any such decision "means that Title IX and Section 1557 must incorporate protection for gender identity and sexual orientation discrimination, then that means that the 2020 Rule does, in fact, extend protection against discrimination to LGBTQ individuals via the Rule's incorporation of Title IX by reference."  *Washington*, 2020 WL 5095467, at *8.

With respect to sex stereotyping, plaintiffs' claim that "HHS takes the position that . . . discrimination on the basis of sex under Title IX does not encompass discrimination on the basis of . . .  sex stereotyping" is implausible.  *See* Compl. ¶ 88 (citing 85 Fed. Reg. at 37,183-86).  Nowhere in the cited pages of the preamble did HHS purport to claim that discrimination on the basis of sex under Title IX dos not encompass sex stereotyping.  To the contrary, HHS explained that, "[t]o the extent that sex stereotyping is a recognized category of sex discrimination under longstanding Supreme Court precedent, this final rule commits [HHS] to continuing to vigorously enforce Title IX through Section 1557, and therefore the Department estimates that this final rule will not have any material effect on the scope of sex stereotyping claims as authorized by Title IX and Section 1557."  85 Fed Reg. at 37,239.  There is no reason to believe that HHS or courts will construe Section 1557 to exclude sex stereotyping claims in light of HHS's decision to decline to explicitly define "on the basis of sex" by rule to include sex stereotyping.  Considering the implausibility of HHS determining in a concrete case that Section 1557's prohibition on sex discrimination excludes "sex stereotyping," principles of judicial restraint demand that this Court,

at a minimum, await any such concrete determination and not undertake the abstract exploration plaintiffs presently request.

If adjudication of concrete cases establishes that the 2020 Rule covers the very type of discrimination plaintiffs fear it does not cover, this case may be entirely advisory. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"); *see also Trans Union LLC v. FTC*, 295 F.3d 42, 51 (D.C. Cir. 2002) ("Unless and until [agency] determines [meaning of regulatory term], and at what level, the issue is not fit for the court to consider"). Plaintiffs' claims that HHS failed to engage in reasoned decision-making by failing to consider *Bostock* are entirely irrelevant if adjudication or litigation establishes that the plain meaning of Section 1557 covers sex stereotyping, sexual orientation, and gender identity discrimination. Compl. ¶ 89; *see Texas*, 523 U.S. at 301 ("The operation of the statute is better grasped when viewed in light of a particular application."). For these reasons, resolution of the meaning of Section 1557 should await a concrete dispute about a particular instance of discrimination.

Moreover, "consideration of the issue would benefit from a more concrete setting." *Atl. States*, 325 F.3d at 284 (citation omitted). Indeed, the Supreme Court had the benefit of concrete cases to determine that sexual orientation and transgender discrimination is encompassed in sex discrimination under Title VII—and it declined to go further, emphasizing "the benefit of adversarial testing" in other specific contexts *before* drawing further conclusions. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1753 (2020). So too here.

The same principles bar pre-enforcement judicial review of several of plaintiffs' other claims, specifically: HHS's decision not to explicitly prohibit categorical coverage exclusions by rule; HHS's decision not to take a position on implied private rights of action by rule; HHS's decision on the legal standards applicable for enforcing Section 1557 claims; HHS's decision as to whether compensatory damages are available for Section 1557 claims; and HHS's decision not to include provisions barring associational discrimination by rule are not ripe. Adjudication or

litigation may establish that Section 1557's prohibition on sex discrimination renders categorical coverage exclusion of gender-affirming care illegal.  And litigation over concrete claims of discrimination may establish whether a private right of action exists for enforcing Section 1557 regardless of the 2020 Rule's silence on that issue.  Finally, the "proper context for quarrels surrounding the legal standard for Section 1557 claims [and, in equal measure, the extent to which compensatory damages are available,] would be an actual lawsuit bringing such a claim."  *See Whitman-Walker*, 2020 WL 5232076, at *20.

### C.  Plaintiffs' Eighth Claim for Relief Should be Dismissed as Moot.

Plaintiffs' Eighth Claim for Relief—"Equitable Relief to Preserve Remedy," Compl. ¶¶ 303-307—to the extent it states a claim at all—should be dismissed as moot.  Plaintiffs claim that the 2020 Rule "will become effective on August 18, 2020 unless it is enjoined," and that they "are entitled to a . . . process to adjudicate the lawfulness of the [2020 Rule] before being required to implement its . . . requirements."  Compl. ¶ 304.  Because August 18, 2020, has passed, and the challenged provisions of the 2020 Rule are either in effect or preliminarily enjoined, plaintiffs' Eighth Claim for Relief is moot and should be dismissed.  *See CREW*, 352 F. Supp. 3d at 8 (quoting *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008)) ("If 'intervening events make it impossible to grant the prevailing party effective relief,' no live controversy remains.").

## II.   MOST OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6).

In addition to its jurisdictional defects, the Complaint fails to state claims upon which relief may be granted.  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  And "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Most of plaintiffs' claims under 5 U.S.C. § 706(2)(A)-(C) should be dismissed on the basis of dispositive issues of law.  And plaintiffs' equal protection claim under § 706(2)(B) is also unsupported by sufficient factual matter to state a plausible claim for relief.

**D.  Plaintiffs' Claims that the 2020 Rule Violates the APA Fail as a Matter of Law.**

Whether HHS "adhered to the standards of decisionmaking required by the APA" is a legal question that may be answered on a Rule 12(b)(6) motion.  *See Marshall Cty. Health Care Auth.*, 988 F.2d at 1226.  Because plaintiffs have failed to plausibly state a claim that HHS violated the APA in promulgating the 2020 Rule, their Complaint should be dismissed.  In its preliminary injunction ruling, this Court held that plaintiffs are not likely to succeed on the merits of their claims that HHS erroneously eliminated the 2016 Rule's prohibition on categorical coverage exclusions for gender-affirming care, improperly repealed the 206 Rule's notice requirements, and violated Section 1554.  For similar reasons, those claims should be dismissed under Rule 12(b)(6).  The Court did not address in the preliminary injunction ruling the merits of other claims addressed in this motion, either because the Court determined plaintiffs lack standing to raise them or because plaintiffs did not seek to preliminarily enjoin the regulatory requirements cited in those claims.  In either case, even if plaintiffs have standing to raise these other claims, they too fail on the merits.

**1.  HHS's Decision not to Include an Explicit Prohibition on Categorical Coverage Exclusions is Lawful**

HHS did not exceed its statutory authority in declining to include an explicit prohibition on categorical coverage exclusions in the 2020 Rule.  Although HHS's 2016 Rule included a provision prohibiting covered entities from "[h]av[ing] or implement[ing] a categorical coverage exclusion or limitation for all health services related to gender transition," 45 C.F.R. § 92.207(b)(4), that mandate was not required by Section 1557.  As HHS explained in issuing the 2020 Rule, "[t]here is no statutory authority to require the provision or coverage of such procedures under Title IX protections from discrimination on the basis of sex." 85 Fed. Reg. at 37,198.  HHS's determination was, at the very least, a reasonable one entitled to deference.  *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984).

Additionally, as this Court previously held, HHS's decision satisfies the "'narrow' scope of arbitrary-and-capricious review."  *Whitman-Walker*, 2020 WL 5232076, at *29.  "When an agency changes a policy position, 'it need not demonstrate to a court's satisfaction that the reasons

16

for the new policy are *better* than the reasons for the old one.'"  *Id*. at *30 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).  "Instead, 'it suffices that the new policy is permissible under the statute,' and 'that there are good reasons for it.'"  *Id*. (quoting *Fox*, 556 U.S. at 515).  Because "HHS confronted its prior policy regarding prohibitions on categorical coverage exclusions and delivered a sufficiently reasoned explanation for its new position," its policy change was not arbitrary or capricious.  *Id*.  Specifically, HHS "consulted scientific studies, government reviews, and comments from a host of medical professionals regarding treatment for gender dysphoria."  *Id*. (citing 85 Fed. Reg. at 37,187, 37,196-98).  HHS reasonably determined that "'the medical community is divided on many issues related to gender identity, including the value of various gender-affirming treatments for gender dysphoria (especially for minors),'" which "counseled against a blanket prohibition on categorical coverage exclusions of gender-affirming care."  *Id*. (quoting 85 Fed. Reg. at 37,187).  That is all the APA requires, and thus, the Court should dismiss this claim.

### 2.  HHS's Elimination of Notice Requirements is Lawful

HHS did not exceed its statutory authority in modifying notice requirements and access to language protections in the 2020 Rule.  *See* Compl. ¶ 256.  Nothing in Section 1557 mandated those requirements, and the agency's new construction is a reasonable one entitled to deference. *See Chevron*, 467 U.S. at 844.  Nor was HHS's decision to modify the notice of nondiscrimination requirements and access to language protections "arbitrary and capricious" for lack of an "adequate justification."  Compl. ¶ 236.  To the contrary, as this Court previously held, HHS displayed awareness that it changed positions and showed good reasons for the new policy.  *See Whitman-Walker*, 2020 WL 5232076, at *32.  "It plainly acknowledged its shift in course from the 2016 Rule."  *Id*. (citing 84 Fed. Reg. 27,846, 27,868 (June 14, 2019); 85 Fed. Reg. at 37,204).  And it "provided an array of reasons for its change in position."  *Id*.  "For instance, HHS determined that the costs and burdens imposed by the notice and tagline requirements were 'substantially larger than originally anticipated.'"  *Id*. (quoting 84 Fed. Reg. at 27,857).  And HHS determined that "eliminating the requirements would save approximately $2.9 billion over a five-year period."  *Id*.

(citing 85 Fed. Reg. at 37,163, 37,224).

What is more, HHS "cited reports from covered entities of implementation difficulties, largely resulting from the many different and overlapping notice and language-access requirements imposed by federal and state governments." *Id*. at *33 (citing 85 Fed. Reg. at 37,211 & n.281). And HHS determined that "high costs often yielded minimal benefit, both because the 'vast majority of recipients of taglines do not require translation services' and because providers were often required to print taglines in languages that very few individuals spoke." *Id*. (citing 85 Fed. Reg. at 37,233). HHS considered the evidence of the benefits of the 2016 Rule's requirements before changing policy, but "determined that the evidence, viewed in its entirety, was consistent with the conclusion that the 2016 Rule's notice and tagline requirements 'did not appreciably increase the use of translation services.'" *Id*. (quoting 85 Fed. Reg. at 37,233). In sum, Plaintiffs have failed to state a claim that HHS's elimination of the notice and language access requirements violated the APA.

### 3. The 2020 Rule Does not Violate Section 1554 of the ACA

Contrary to plaintiffs' claim, Compl. ¶ 248, the 2020 Rule does not violate Section 1554 of the ACA. Section 1554 prohibits HHS from promulgating a regulation that "creates any unreasonable barriers to the ability of individuals to obtain appropriate medical care," "impedes timely access to health care services," or "interferes with communications regarding a full range of treatment options between the patient and the provider." 42 U.S.C § 18114(1)–(3). Plaintiffs claim that the 2020 Rule violates Section 1554 by "reversing protections against discrimination of historically marginalized communities and eliminating access to language provisions." Compl. ¶ 248. But "§ 1554 is meant to prevent direct government interference with health care," *California v. Azar*, 950 F.3d 1067, 1094 (9th Cir. 2020) (en banc), and plaintiffs fail to identify any direct interference here. Indeed, if "the most natural reading of § 1554 is that Congress intended to ensure that HHS . . . does not improperly impose regulatory burdens on doctors and patients," the 2020 Rule's elimination of regulatory mandates and return to broad incorporation of the specified civil rights statutes goes far toward achieving this end. *See* 85 Fed. Reg. at 37,166.

Because plaintiffs "cannot show that the Rule places a 'substantive barrier on individuals' ability to obtain appropriate medical care,'" *Whitman-Walker*, 2020 WL 5232076, at *35 (quoting *California*, 950 F.3d at 1095), their Section 1554 claim should be dismissed.

### 4.   The 2020 Rule Reasonably Construes the Scope of Section 1557.

Plaintiffs claim that the 2020 Rule's construction of the scope of Section 1557 is contrary to law and arbitrary and capricious.  *See* Compl. ¶¶ 138-47, 233, 247, 254.  Even if the Court determines, contrary to its preliminary injunction ruling, that plaintiffs have standing to assert this claim, the claim should nonetheless be dismissed for failure to state a claim.

*First*, plaintiffs complain that the 2020 Rule impermissibly "attempts to limit . . . Section 1557's nondiscrimination protections only to health programs or activities of HHS that are *administered under Title I of the ACA*."  Compl. ¶ 140 (emphasis added).  Contrary to plaintiffs' contention, the language HHS selected represents the most reasonable construction of Section 1557, which provides that nondiscrimination protections apply to "any health program or activity, any part of which is receiving Federal financial assistance . . . [and] any program or activity that is administered by an Executive Agency or any entity established under this title [*sc.*, Title I]."  42 U.S.C. § 18116(a).  If the second category were read piecemeal, Section 1557 would apply to "any program or activity that is administered by an Executive Agency"—i.e., *all federal action*, regardless of its connection to healthcare or HHS (as well as to any program or activity that is administered by any entity established under Title I).  Clearly, Congress did not intend to have HHS regulate non-healthcare-related discrimination in programs administered by other agencies. If Congress had wanted to subject *all* federal activity to Section 1557's restrictions, it would have said so clearly rather than burying such an expansive provision within the ACA, which everywhere else deals exclusively with healthcare; it also, presumably, would not have given HHS express authority to adopt implementing regulations if the statute was meant to govern other agencies.  *See* 42 U.S.C. § 18116.  "Congress . . . does not alter the fundamental details of a regulatory scheme," let alone the sum total of federal activity, "in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468

(2001). Thus, Section 1557 necessarily must be read in context.

To avoid an improperly expansive reading of the provision, HHS construed Section 1557 to mean "any health program or activity, any part of which is receiving Federal financial assistance . . . provided by the Department," "[a]ny program or activity administered *by the Department under Title I of the Patient Protection and Affordable Care Act*," and "[a]ny program or activity administered by any entity established under such Title." 85 Fed. Reg. at 37,244 (codified at 45 C.F.R. § 92.3) (emphasis added). Plaintiffs complain that such a construction represents a departure from "the plain language of Section 1557." Compl. ¶ 141. But even the 2016 Rule—which plaintiffs defend—"acknowledged implicitly what the Department now states more clearly: The grammar of the relevant sentence in the Section 1557 statutory text concerning limits to its scope is less clear than it could have been." 85 Fed. Reg. at 37,170. To address that ambiguity, the prior rule applied Section 1557 to "every *health* program or activity administered *by the Department*; and every *health* program or activity administered by a Title I entity.'' 45 C.F.R. § 92.2(a) (emphasis added). While such a construction avoided applying Section 1557 to *all* federal programs and activities, which plaintiffs seemingly agree would be impermissible, it required injecting the word "health" into the relevant portion of the text, even though Congress had not included the word in the clause. *See* 85 Fed. Reg. at 37,170. In the 2020 Rule, HHS instead chose to rely upon the limitation already in the text—that is, Title I programs and activities. *See id.* That approach is, if not the only permissible construction, at least a reasonable construction of the statute that warrants deference. *See Chevron*, 467 U.S. at 844.

*Second*, plaintiffs argue that the 2020 Rule's exclusion of health insurers was unreasonable. *See* Compl. ¶¶ 142-47. That argument fails too. As noted above, Section 1557 protections extend, in relevant part, to "any health program or activity" receiving federal financial assistance. 42 U.S.C. § 18116(a). The 2020 Rule construes the phrase as "encompass[ing] all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance." 85 Fed. Reg. at 37,244 (to be codified at 45 C.F.R. § 92.3(b)). The Rule goes on to explain that "an entity principally or otherwise engaged in the business of providing health

insurance shall not, by virtue of such provision, be considered to be principally engaged in the business of providing healthcare." *Id.* at 37,244–45.[6]

Plaintiffs note that "Section 1557 covers 'health programs and activities,' not just direct health care." Compl. ¶ 146.  But in light of the statute's silence as to the precise reach of the term "health program or activity," HHS reasonably defined it by reference to the definition of that exact term in the civil rights context.  Specifically, HHS noted that the Civil Rights Restoration Act defined "'program or activity' in the underlying statutes to apply to all of an entities' operations when it is principally engaged in the business of providing 'healthcare.'" 85 Fed. Reg. at 37,172. *See Mozilla Corp. v. FCC*, 940 F.3d 1, 25 (D.C. Cir. 2019) (agency interpretation reasonable where consistent with another regulatory regime interpreting "nearly verbatim" statutory text rationally related to the statute at issue).  As plaintiffs themselves acknowledge, health insurance is, at most, "a health-*related* program or activity."  Compl. ¶ 146. (emphasis added).  To be sure, health insurance is an important tool in ensuring patients receive health services.  But just as one would not say that one's homeowner's insurance provides a lodging program or activity, health insurance does not provide healthcare.

HHS reasonably relied on a preexisting statutory definition of "program or activity" as a term of art from the civil rights context instead of concluding that health insurance is a "health program or activity" within the meaning of Section 1557.  If Congress intended for Section 1557 to cover all health insurers, it simply would have said so.

*Finally*, HHS's construction of Section 1557's scope was not arbitrary or capricious.  "An explanation of why one 'policy is more consistent with statutory language than alternative policies' is a good reason for a policy change." *District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d. 1, 20 (D.D.C. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016)), *filing appeal*, No. 20-5136 (D.C. Cir. May 14, 2020).  And that is exactly what HHS did.

---

[6] Certain health insurance products would remain subject to Section 1557. For example, a Qualified Health Plan "would be covered by the rule because it is a program or activity administered by an entity established under Title I (*i.e.,* an Exchange), pursuant to § 92.3(a)(3)." 85 Fed. Reg. at 37,174.

As explained, the 2020 Rule provides the most reasonable interpretation of Section 1557's scope in light of the unchallenged principle that Congress did not intend it "to apply to every program or activity administered by every Executive agency whether or not it had any relation to health." 84 Fed. Reg. at 27,862. Far from "casually ignor[ing]" the 2016 Rule's construction of Section 1557's scope, *see Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970), or departing from it "sub silentio," *Fox*, 556 U.S. at 515, HHS explained that it chose to rely upon a limitation already in the statutory language—that is, Title I programs and activities—instead of injecting the word "health" into the statute. *See* 85 Fed. Reg. at 37,170.

### 5. The Final Rule's Return to Enforcement Mechanisms Separately Available under the Civil Rights Statutes Incorporated into Section 1557 Does Not Violate the APA.

Plaintiffs complain that the 2020 Rule is contrary to statutory authority, and arbitrary and capricious, because it does not create a unitary enforcement mechanism for Section 1557 discrimination claims, *see* Compl. ¶¶ 102-112, 117, 230, 254, does not explicitly recognize that compensatory damages are available for violations of Section 1557, *see id.* ¶¶ 115-117, 231, and does not explicitly recognize a private right of action under Section 1557, *see id.* ¶¶ 113-14, 117, 231. Even if plaintiffs had established standing to assert these claims (and they have not), they would fail as a matter of law.

First, plaintiffs misread the statute, which states that "[t]he enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of [Section 1557]." 42 U.S.C. § 18116(a). The most straightforward construction of the provision suggests that individuals may employ the enforcement mechanism available under each statute, depending on what cause of action the individual intends to bring. Reading the statute to require a unitary standard, as plaintiffs advocate and the prior rule provided for, would have required courts to apply Title VI mechanisms to, for example, Title IX claims. *See* 85 Fed. Reg. at 37,202. As HHS has explained, the statute cannot be read as "blend[ing] new standards and preexisting standards from underlying civil rights regulations, and impos[ing] those standards alongside the underlying regulations . . . left in place."

*Id.*

Accordingly, a majority of the courts that have interpreted Section 1557 agree with HHS's approach. *See Briscoe* v. *Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) ("Taken together, the first two sentences of § 1557 unambiguously demonstrate Congress's intent 'to import the various different standards and burdens of proof into a Section 1557 claim, depending upon the protected class at issue.'" (quoting *Se. Pa. Transp. Auth. v. Gilead Scis. Inc.*, 102 F. Supp. 3d 688, 698–99 (E.D. Pa. 2015)); *York v. Wellmark, Inc.*, No. 4:16-cv-00627 RGECFB, 2017 WL 11261026, at *18 (S.D. Iowa Sept. 6, 2017) ("Congress clearly intended to incorporate the statutes' specific enforcement mechanisms rather than create a general catch-all standard applicable to all discrimination claims.''), *aff'd*, 965 F.3d 633 (8th Cir. 2020); *see also Galuten on Behalf of Estate of Galuten v. Williamson Med. Ctr.*, No. 3:18-cv-00519, 2019 WL 1546940, at *5. (M.D. Tenn. Apr. 9, 2019) (same); *E.S. by and through R.S.* v. *Regence BlueShield*, No. C17-01609 RAJ, 2018 WL 4566053, at *4 (W.D. Wash. Sept. 24, 2018); *Doe v. BlueCross BlueShield of Tenn., Inc.*, No. 2:17-cv-02793-TLP-CGC, 2018 WL 3625012, at *6 (W.D. Tenn. July 30, 2018), *aff'd*, 926 F.3d 235 (6th Cir. 2019). Although one unpublished decision from the District of Minnesota, *Rumble v. Fairview Health Services*, favored plaintiffs' interpretation, it concluded that "the language of Section 1557 is ambiguous, insofar as each of the four statutes utilize different standards for determining liability, causation, and a plaintiff's burden of proof." No. 14-cv-2037 SRN/FLN, 2015 WL 1197415, at *10 (D. Minn. Mar. 16, 2015). Because the 2020 Rule's interpretation of that language—an interpretation that avoids blending standards between the various statutes that Section 1557 incorporates—is, at the very least, a reasonable one, it is entitled to deference. *See Chevron*, 467 U.S. at 844.

Similarly, HHS eliminated § 92.301(b) of the 2016 Rule, which stated that "[c]ompensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule," 85 Fed. Reg. at 37,202, for consistency with HHS's approach to the legal standards applicable to Section 1557 violations. HHS explained that under "applicable Federal case law, . . . compensatory damages are generally unavailable for

23

claims based solely on a Federal agency's disparate impact regulations." *Id*. Accordingly, and consistent with HHS's position on the appropriate legal standards under Section 1557, HHS instead provided that whether compensatory damages are available depends on whether they are available under statutes and regulations applicable to Title VI, Title IX, the Age Act, or Section 504 claims, respectively. *Id*. at 37,202-37,203. "To the extent compensatory damages are, or are not, available under those regulations, the regulations will provide for enforcement of Section 1557 in applicable circumstances in the same way." *Id*. at 37,202-37,203. HHS reasonably explained that its "approach is consistent with both the best interpretation of the text and the court decisions . . . indicating that Section 1557 does not impose a single standard but instead incorporates the distinct enforcement mechanisms of each of the four civil rights statutes described in Section 1557." *Id*. at 37,203.

Plaintiffs claim that HHS violated the APA in eliminating § 92.301(b) from the 2016 Rule because "HHS ignores entirely its own statement in the preamble to the 2016 Final Rule that its interpretation of Section 1557 as authorizing compensatory damages was consistent with HHS's 'interpretations of Title VI, Section 504, and Title IX.'" Compl. ¶ 116. But plaintiffs demand more than the APA requires. Because "HHS expressly confronted its prior policy . . . and delivered a sufficiently reasoned explanation for its new position," HHS's decision not to explicitly recognize that compensatory damages are available for violations of Section 1557 in the 2020 Rule is not arbitrary or capricious. *See Whitman-Walker*, 2020 WL 5232076, at *30. And although plaintiffs claim that this provision is "contrary to the plain language of the statute and law," Compl. ¶ 117, as just explained with respect to the applicable legal standards, the most straightforward construction of Section 1557 suggests that individuals may employ the enforcement mechanism— include the type of remedies—available under each statute, depending on what cause of action the individual intends to bring.

Finally, HHS's decision to not explicitly recognize a private right of action in the 2020 Rule cannot plausibly violate the APA. For one thing, as noted above in Part I.A.2, it is not contrary to law because nothing in Section 1557 compels HHS to promulgate a regulation taking

a position on the issue.  And "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress." *Sandoval*, 532 U.S. at 291.  Either the statute provides a private cause of action or it does not.  HHS purporting to recognize one cannot change what the statute does.  *See id*.  Second, HHS explained that "[m]ultiple [f]ederal courts have held that Section 1557, or the statutes underlying it, do not permit private rights of action for disparate impact claims of discrimination on the basis of race or sex, and there is a split on the question with respect to disability."  84 Fed. Reg. at 27,851 (footnotes omitted).  In light of these cases, uncertainty as to whether or not the 2016 Rule's prior statement on Section 1557's private cause of action is true, combined with HHS's concerns regarding the "increased compliance costs" associated with "the ability for private parties to sue," 84 Fed. Reg. at 27,883, provides sufficient explanation for why HHS "no longer intends to take a position in its regulations on the issue of whether Section 1557 provides a private right of action," 85 Fed. Reg. at 37,203.

### 6.   HHS Sufficiently Explained its Decision to Eliminate Regulatory Protections Against Discrimination on the Basis of Association.

Plaintiffs challenge HHS's decision to repeal § 92.209 of the 2016 Rule, which addressed discrimination faced by an individual or an entity on the basis of the race, color, national origin, age, disability, or sex of an individual with whom the individual or entity is known to or is believed to have a relationship or association.  *See* 85 Fed. Reg. at 37,199; Compl. ¶¶ 235, 244.  But HHS explained that the 2020 Rule "neither abrogates nor withdraws any protections available under the incorporated civil rights statutes or their implementing regulations."  85 Fed. Reg. at 37,199.  "It simply declines to use the Section 1557 regulation to identify protections beyond those specifically identified in the text of the relevant statutes and regulations."  *Id*.  And explaining "why one 'policy is more consistent with statutory language than alternative policies' is a good reason for a policy change."  *District of Columbia* 444 F. Supp. 3d. at 20 (quoting *Encino Motorcars, LLC*, 136 S. Ct. at 2127).  Accordingly, plaintiffs' challenge should be dismissed.

### 7.   HHS Sufficiently Explained its Decision to Make Conforming Modifications to Other Regulations.

Plaintiffs challenge HHS's conforming modifications to other regulations.  *See* Compl. ¶¶ 148-158, 234, 243.  But, as HHS explained, each of these changes was within its statutory authority.  *See* 85 Fed. Reg. at 37,219-37,221.  And HHS explained that it "deem[ed] it appropriate to pursue a more uniform practice concerning nondiscrimination categories across programs and activities to which Section 1557 applies, and to do so consistent with the government's position concerning discrimination on the basis of sex."  *Id.* at 37,219.  Because HHS displayed "awareness that it is changing position" and showed "that there are good reasons for the new policy," *Whitman-Walker*, 2020 WL 5232076, at *32 (quoting *Fox*, 556 U.S. at 515), and because these conforming modifications were within HHS's statutory authority, plaintiffs' challenge should be dismissed.

### B.  Plaintiffs' Constitutional Claims Fail as a Matter of Law.

#### 1.   The Complaint Does Not State An Equal Protection Claim.

Plaintiffs' equal protection claim, Compl. ¶¶ 259-73, falls short.  Equal protection prohibits *government* from discriminating against a class of persons without adequate justification.  But plaintiffs' equal protection claim appears to be based on speculation about what *other*, *nongovernmental* actors might do.  *See* Compl. ¶ 271 (alleging "encouragement" of discrimination by modifying antidiscrimination regulations).  And that speculation seems to ignore that both Section 1557 and its implementing rule expressly prohibit discrimination on the basis of race, color, national origin, sex, age, and disability.

Plaintiffs do not argue that Section 1557 violates the Constitution, and because the 2020 Rule does nothing more than repeat the text of the statute, the Rule likewise does not violate the Constitution.  Plaintiffs claim that the Rule involves "discrimination against LGBTQ people," *id.*, but neither Section 1557 nor the 2020 Rule "isolate[s LGBTQ people] or subject[s] them, as a discrete group, to special or subordinate treatment."  *See Schweiker v. Wilson*, 450 U.S. 221, 231 (1981).[7]  Rather, LGBTQ "individuals remain protected by the same civil rights laws as any other

---

[7] Because neither Section 1557 nor the Final Rule includes a classification on the basis of sexual orientation or transgender status, it is unnecessary to determine the level of scrutiny that might

individual, and [HHS] will vigorously enforce their statutory and regulatory civil rights."  85 Fed. Reg. at 37,192.

The Complaint also fails to plausibly allege that the 2020 Rule was motivated by discriminatory animus because none of the facts alleged in support of that claim, Compl. ¶¶ 167-77, "either singly or in concert, establishes a plausible equal protection claim."  *See DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).  The statements by defendant Severino on which plaintiffs rely are mere legal and policy disagreements, and there is nothing in the Constitution prohibiting persons with different policy views from holding government positions.   These statements—"remote in time and made in [the] unrelated context[]" of defendant Severino's life as a private citizen, *see id.*—reflect reasonable criticisms about the prior rule (and other policies) in a complex area of social policy, including the effect of the rule on "sincerely held religious beliefs," *see Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018); nothing about Severino's prior public statements indicates that the Final Rule reflects animus toward the LGBTQ community.  Indeed, the *Bostock* majority itself cautioned that it was "deeply concerned with preserving the promise of the free exercise of religion," which "lies at the heart of our pluralistic society," and acknowledged fears surrounding the intersection of its construction of Title VII with the "religious convictions" of employers, acknowledging the interaction of Title VII with express statutory exemptions for religious organizations, the First Amendment, and the Religious Freedom Restoration Act as issues for future cases.  140 S. Ct. at 1754; *see also id.* at 1782 (Alito, J., dissenting) (explaining that Section 1557 challenges based on

---

apply to one.  But nothing in *Bostock* altered the rule in this circuit that classifications on the basis of sexual orientation or transgender status are subject to rational basis scrutiny.  *See Steffan v. Perry*, 41 F.3d 677, 684-85 (D.C. Cir. 1994) (en banc); *Padula v. Webster*, 822 F.2d 97, 103-14 (D.C. Cir. 1987).  Nothing in *Bostock*'s analysis of the text of Title VII has any bearing on the reach of the Constitution.  *See Bostock*, 140 S. Ct. at 1753 ("[t]he only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex'" as that phrase is used in a particular provision of Title VII); *see also Washington v. Davis*, 426 U.S. 229, 238 (1976) (reversing Court of Appeals because it "erroneously applied the legal standards applicable to Title VII cases in resolving the constitutional issue before it").

sex reassignment procedures "present difficult religious liberty issues because some employers and healthcare providers have strong religious objections to sex reassignment procedures"). Presumably, plaintiffs do not contend that these statements by Justices of the Supreme Court amount to discriminatory animus.

### 2. The Complaint Does Not State A Substantive Due Process Claim.

Plaintiffs' due process claim, Compl. ¶¶ 274-81, is likewise meritless. As an initial matter, although plaintiffs assert that the 2020 Rule "encourag[es] health care providers and insurers to interfere with and unduly burden patients' access to medically necessary health care," Compl. ¶ 277, they fail to clearly identify which provision of the Rule purportedly leads to that alleged result. This lack of specificity alone warrants dismissal of plaintiffs' claim.

In any event, there is no substantive due process right to the specific medical care described in the Complaint, *see* Compl. ¶¶ 276, 278. *See Washington v. Glucksberg*, 521 U.S. 702, 727-28 (1997) ("That many of the rights and liberties protected by the Due Process Clause sound in personal autonomy does not warrant the sweeping conclusion that any and all important, intimate, and personal decisions are so protected."). And even assuming that substantive due process could be defined as expansively as plaintiffs' claim suggests, plaintiffs would still fail to state a claim because any purported denial of or interference with medical care occurs at the hands of non-state actors. *See* Compl. ¶ 277 (Rule "*encourage[es]* health care providers and insurers to interfere . . .). Even if the 2020 Rule lessened protections against discrimination by third parties under Section 1557,

> [t]he Due Process Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). "Consistent with these principles, . . . the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the

government itself may not deprive the individual." *Id*. at 196.  Accordingly, plaintiffs' substantive due process claims must be dismissed.

### 3. The Complaint does not State a Claim that the 2020 Rule Violates Plaintiffs' Free Speech Rights

The 2020 Rule does not direct healthcare providers to use particular language with patients, let alone require that patients use particular language in describing their sex, gender identity, sexual orientation, or any other characteristic.  Those determinations have been left to the patient and his or her doctor.  Yet plaintiffs argue that the 2020 Rule "chill[s]" patient speech.  Compl. ¶ 286.  Plaintiffs point to no language in the Rule that might lead to such a result.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  While the Supreme Court has held that certain government conduct may impermissibly "chill" free speech, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).  Instead, to advance a cognizable free speech claim, plaintiffs must identify "a governmental policy that . . . regulate[s], constrain[s], or compel[s] . . . action on their part." *Amnesty Int'l*, 568 U.S. at 419.  Plaintiffs come nowhere close to doing so here.

Plaintiffs fail to identify which provision of the 2020 Rule threatens government action against those who engage in particular speech.  Presumably plaintiffs take issue with HHS's decision not to include a definition of "on the basis of sex."  85 Fed. Reg. at 37,162–63.  But that aspect of the 2020 Rule does not prohibit—or even suggest—that particular language be used when interacting with patients, or that patients face consequences from the government if they engage in certain speech.  Nor does any other provision of the Rule, for that matter.  Instead, healthcare providers and patients alike are free to use the speech of their choosing.  Plaintiffs' "subjective chill, fear, is not sufficient" to support their First Amendment claim, whatever the unidentified fear on which it may be based. *Am. Lib. Ass'n v. Barr*, 956 F.2d 1178, 1196 (D.C.

Cir. 1992).  Finally, were there any concern, HHS went out of its way to ensure that First Amendment rights would be protected by including language in the Rule making clear that relevant provisions "shall be construed consistently with, as applicable, the First Amendment to the Constitution."  85 Fed. Reg. at 37,243.  Simply put, nothing in the 2020 Rule does anything to restrict plaintiffs' First Amendment rights, and thus, the Court should dismiss this claim.

### 4.  The Complaint Does Not State an Establishment Clause Claim

The Complaint alleges that the 2020 Rule "violates the Establishment Clause by creating expansive religious exemptions for health care providers, plans and employees."  Compl. ¶ 296; *see also id.* ¶¶ 291-302.  But it is well settled that the federal government may provide religious exemptions without offending the Establishment Clause.  The Supreme Court's cases "leave no doubt that in commanding neutrality the Religion Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice."  *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994); *see also Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 334 (1987) ("'This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.'" (quoting *Hobbie v. Unemp't Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987))).

Here, the 2020 Rule merely makes clear that existing statutory protections for religious objectors apply to the 2020 Rule, so plaintiffs must show that those existing statutory provisions violate the Establishment Clause.  And their Complaint makes out nothing to distinguish the exemptions here from the many that have been upheld against Establishment Clause challenges. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (RLUIPA); *Amos*, 483 U.S. at 339 (Title VII's religious exemption); *Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 672–80 (1970) (state property tax exemption for religious organizations); *Gillette v. United States*, 401 U.S. 437, 460 (1971) (exemption from military draft for religious conscientious objectors).

What is more, there is no situation in which the court would grant relief on plaintiffs' Establishment Clause claim.  If plaintiffs succeed on their statutory claims, then the relief afforded

under the APA would remedy any injury to plaintiffs and make the resolution of the constitutional claim both unnecessary and imprudent under the doctrine of constitutional avoidance.  If, on the other hand, plaintiffs do not succeed in their statutory claim, meaning HHS demonstrates that its construction of Section 1557 incorporating Title IX's religious exemption is permissible, then plaintiffs' Establishment Clause claim necessarily fails because plaintiffs bring no challenge against Section 1557 itself as violating the Constitution.  *See South Carolina v. United States*, 2017 WL 976298, at *28-*29 (D.S.C. Mar. 14, 2017); *see also Jean v. Nelson*, 472 U.S. 846, 857 (1985) (declining to reach constitutional question where agency had statutory discretion and the "fact that protection results from the terms of a regulation or statute rather than from a constitutional holding, is a necessary consequence of the obligation of all federal courts to avoid constitutional adjudication except where necessary"); *Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 711 (D.C. Cir. 2008) (quoting *Chamber of Commerce v. FEC*, 69 F.3d 600, 605 (D.C. Cir. 1995)) (courts "will not submit to an agency's interpretation of a statute if it 'presents serious constitutional difficulties'").

## CONCLUSION

For the foregoing reasons, this Court should dismiss, for lack of standing, plaintiffs' claims under 5 U.S.C. § 706(2)(A) and (C), Compl. ¶¶ 235-58, to the extent they apply to the 2020 Rule's provisions regarding (1) the legal standards for enforcement of Section 1557 violations, Compl. ¶¶ 230, 245, 254; (2) private rights of action and compensatory damages, *id*. ¶¶ 231, 245; (3) the scope of entities subject to Section 1557, Compl. ¶¶ 233, 247; and (4) discrimination on the basis of association and conforming modifications made to other HHS regulations, Compl. ¶¶ 234, 235, 243, 244, 255.  This Court should dismiss, as unripe, plaintiffs' claims under 5 U.S.C. § 706(2)(A)-(C), Compl. ¶¶235-302, to the extent they apply to (1) HHS's decision not to define "on the basis of sex" or specific instances of discrimination, like categorical coverage exclusions, in the 2020 Rule, Compl. ¶¶ 228, 229, 242, 243, 253, 255; (2) the 2020 Rule's provisions regarding the legal standards applicable for enforcing Section 1557 claims, *id*. ¶¶ 230, 245, 254; (3) HHS's decision not to explicitly recognize a private right of action for Section 1557 claims in the 2020 Rule, *id*.

¶ 231; (4) HHS's decision not to explicitly recognize by rule that compensatory damages are available for violations of Section 1557, *id*. ¶ 231; and (5) HHS's decision not to explicitly recognize by rule Section 1557's coverage of discrimination on the basis of association, Compl. ¶¶ 235, 244.  This Court should dismiss, as moot, plaintiffs' eighth claim for relief: "equitable relief to preserve remedy," *id*. ¶¶ 303-307.  This Court should dismiss, for failure to state a claim, plaintiffs' claim under 5 U.S.C. § 706(2)(A) that the 2020 Rule violates Section 1554 of the ACA, Compl. ¶ 248; and plaintiffs' claims under 5 U.S.C. § 706(2)(A)-(C), Compl. ¶¶ 235-302, to the extent they apply to (1) HHS's decision not to explicitly prohibit by rule categorical coverage exclusions; (2) HHS's elimination of notice requirements, *id*. ¶¶ 236, 256; (3) the scope of entities subject to Section 1557, *id*. ¶¶ 233, 247, 254; (4) the 2020 Rule's legal standards for enforcement of Section 1557, *id*. ¶¶ 230, 254; (5) HHS's decision not to explicitly recognize by rule that compensatory damages are available for violations of Section 1557, *id*. ¶¶ 231; (6) HHS's decision not to explicitly recognize by rule a private right of action for Section 1557 claims in the 2020 Rule, *id*.; (7) discrimination on the basis of association, *id*. ¶¶ 235, 244; and HHS's conforming modifications to other regulations, *id*. ¶¶ 234, 243.  And this Court should dismiss plaintiffs claims' under 7 U.S.C. § 706(2)(B), that defendants violated the constitution, *id*. ¶¶ 259-302, in their entirety.

Dated: September 29, 2020       Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

WILLIAM K. LANE III
Counsel to the Assistant Attorney General

*/s/ Liam C. Holland*
LIAM C. HOLLAND
(*Admitted in New York*)
STEPHEN EHRLICH
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, D.C. 20044
(202) 514-4964
Liam.C.Holland@usdoj.gov

*Attorneys for Defendant*