# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WHITMAN-WALKER CLINIC, INC., *et al.*,

       *Plaintiffs,*

       v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

       *Defendants.*

Case No. 1:20-cv-1630

**DECLARATION OF AMY NELSON, DIRECTOR OF LEGAL SERVICES, WHITMAN-WALKER HEALTH**

I, Amy Nelson, declare as follows:

1.     I am the Director of Legal Services at Whitman-Walker Clinic, Inc., d/b/a Whitman-Walker Health ("Whitman-Walker"). I received my J.D. degree with honors from the George Washington University Law School in 2001. I have worked at Whitman-Walker since 2008. Between 2008 and 2014, I was the Supervising Attorney for Whitman-Walker's Legal Services Department; and since 2015, I have served as the Director of Legal Services. Before joining Whitman-Walker's staff, I was first an Associate at McDermott, Will & Emery LLP in Washington, DC. I am a member of the Bars of the District of Columbia, Maryland and New York. My resume is attached as Exhibit A.

2.     Whitman-Walker's in-house Legal Services Program provides no-cost advice and representation to patients of our health center, and to others in the greater Washington, DC metropolitan area who identify as lesbian, gay, bisexual, transgender or queer ("LGBTQ"), and to persons living with HIV regardless of sexual orientation or gender identity, on a wide range of health-related legal issues. These issues include access to affordable and affirming healthcare,

including health insurance coverage, and discriminatory denials of healthcare based on sexual orientation, gender identity or HIV status.  Legal Services staff and volunteer attorneys have represented clients in cases raising issues of discrimination in federal and state courts; before the Equal Employment Opportunity Commission, the Office for Civil Rights in the U.S. Department of Health and Human Services ("HHS OCR"), and the Department of Labor's Office of Federal Contract Compliance; and the District of Columbia Office on Human Rights and Commission on Human Rights; and civil rights agencies of the State of Maryland, Montgomery and Prince George's Counties in Maryland, and Arlington and Fairfax County and the City of Alexandria in Virginia.  We also provide legal representation on issues related to workplace rights, immigration relief, access to public benefits, name and gender changes and identity document updates for transgender persons, elder law issues, estate planning, and more.

3.      I have advised many clients who encountered discrimination in healthcare settings, insurance, employment, housing, and educational settings, as to their rights and options for redress. In the twelve months from December 2, 2019 to November 30, 2020, the Legal Services staff represented 42 clients in 43 cases of healthcare discrimination, and all but one of those clients were transgender, and at least 20 of these 42 clients identified as a racial minority, as living with HIV, and/or as a non-U.S. citizen.

5.      In my experience, and in the experience of my colleagues at Whitman-Walker Legal Services, most individuals with meritorious healthcare discrimination cases benefit greatly from the availability of administrative agency relief.  This route provides benefits to claimants that are not available from the courts.  The administrative process often prioritizes access to justice for all claimants by being low cost, prompt, and user friendly. Many of our clients file a free, immediate, on-line complaint with an enforcement agency like HHS OCR before contacting our

office to move forward.  In this process, claimants are readily able to identify the multiple bases related to the alleged discrimination and identify witnesses and relevant evidence.  The administrative process usually leads next to a careful examination of the alleged discrimination by the respondent.  Litigation in federal or state trial courts, even when clients have substantial evidence and solid legal arguments to support their claims, is a daunting prospect for our clients. The time and energy required to work with counsel, in our cases, always pro bono counsel, is significant, exhausting, and lengthy.  Our clients are living at or near the federal poverty level, have marginalized and stigmatized identities, and/or suffer significant health challenges.  Such litigation is almost always prolonged and quite stressful for plaintiffs and their families and caregivers.

6.      Complaints filed with agencies such as HHS OCR are an important alternative to litigation in federal or state court – particularly when agency regulations have established a complaint process which is clear, expansive, and provides substantial relief from unlawful discrimination.  Such complaints can be pursued at lower cost and with considerably less stress on our clients.  In many situations, the administrative complaint process can be a valuable vehicle for obtaining a resolution that is satisfactory to Whitman-Walker's client and also acceptable to the respondent.  Moreover, most of Whitman-Walker's clients who seek redress from discrimination are interested not only in relief for themselves, but in changes in the respondents' policies and behavior that will make it less likely that others will experience discrimination.  Since agency mandates encompass the public interest as well as the interest of individual complainants, the broad relief many of our clients seek is often more readily obtainable in an administrative proceeding.

7.      Whitman-Walker staff and volunteer attorneys, over the years, have used the availability of complaint proceedings before HHS OCR – under Section 1557 and under Section

504 of the Rehabilitation Act, which addresses disability (including HIV) discrimination by federal financial assistance recipients – to pursue relief for clients who have suffered discriminatory denials of healthcare, or discriminatory health insurance policies or practices, based on gender identity or HIV status.  Attorneys also have employed the complaint process to obtain significant reforms in insurance practices, particularly related to the coverage of gender-affirming care for transgender persons.  The final rule issued by HHS in 2020 restricts the administrative compliant process in ways that narrow its likelihood to address our clients' discrimination and harassment, requiring our staff to undertake additional educational efforts to provide our clients and WWH staff with information about the scope of protections, ways to seek relief, and remedies available to combat the discrimination they face.

8.      Whitman-Walker Legal Services depends on persons who have experienced discrimination, or others on their behalf, to contact our offices to report their experiences and seek legal advice or assistance.  These individuals learn of their rights, and potential avenues of redress, through various sources of information, including notices by HHS OCR, and information provided to persons who contact those offices.  In many situations, our attorneys are contacted by a potential client after that person has already filed an administrative complaint.  The 2020 final HHS rule makes it less likely that individuals who have encountered discrimination will understand their rights under Section 1557; and in fact, has already chilled clients' perceptions of their right to be free from healthcare discrimination based on gender identity.  We know that some clients are not reaching out to our lawyers in a timely fashion based on this misunderstanding; and we have been asked repeatedly to clarify the applicability of Section 1557 to transgender and gender expansive people for clients and for WWH staff.

9.    The limitations enumerated in the final rule may also make it less likely that an

individual who has experienced discrimination that is actionable under Section 1557 will submit or pursue a timely administrative complaint. The confusion created by the final rule has resulted in increased inquiries from WWH medical and behavioral health providers who treat patients with questions about their legal right to access safe and affirming medical care.  The legal team has already worked to increase our educational outreach to clients and to staff to clarify the protections that remain available under Section 1557, including the path forward for those clients who experience discrimination because of multiple aspects of their identities.  Specifically, the removal of a unitary standard for all healthcare discrimination claims will make these claims even more difficult to pursue and require still more time and resources from our legal team and from our clients, who do not have time and resources to spare. If our clients are unable to access and obtain relief from the administrative process at HHS OCR because of the final rule's disaggregated approach to intersectional discrimination and failure to recognize the availability of a private right of action and compensatory damages, they will more likely abandon their claims than go to court. Thus the Rule has reduced the likelihood that our clients will seek or receive any relief under Section 1557.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Dated this 18th day of December, 2020.

_/s/ Amy Nelson_
Amy Nelson, JD

# EXHIBIT A

# AMY E. NELSON

201 Q St NE #3137 ● Washington DC  20002 ● 703-585-6082 ● anelson@whitman-walker.org

## EMPLOYMENT HISTORY

**Whitman-Walker Health (WWH)**

Director of Legal Services                                                                                        2015 – Present

Supervising Attorney                                                                                                  2008 – 2014

- Manage all aspects of nation's oldest medical-legal partnership serving 3,000 clients annually from three sites in DC; legal services are provided free of charge and prioritize low-income and vulnerable populations to address health-harming legal needs in pursuit of improved health outcomes.
- Oversee and manage casework related to living with HIV, sexual orientation and gender identity (SOGI) protections, HIPAA, medical privacy, disability law, the Affordable Care Act, Medicare, Medicaid, Ryan White HIV/AIDS Program, Social Security programs, workplace rights, private health insurance, name and gender changes, estate planning, medical debt, and immigration relief.
- Evaluate and promote programmatic coordination with other health center programs, including research, population health, and medical departments.
- Oversee pro bono volunteer recruitment and training; community engagement, including outreach and programmatic partnerships; and staff recruitment and professional development.
- Administer 9 annual grants from local and national entities, including federal grants.
- Manage and promote 2 annual fundraising events raising in excess of $400k.
- Developed and co-taught 40-hour curriculum to certify DC's first in-person assisters under the Affordable Care Act on behalf of DC's Health Benefit Exchange Authority.
- Launched the region's first name and gender change clinic in 2012 which to date has served more than 1,600 clients and trained in excess of 300 volunteers.
- Frequent speaker on transgender legal and health matters, including SOGI data collection.

**Georgetown University Law Center**

Adjunct Faculty, Public Interest Lawyering: Access to Health Care                Fall 2016, Fall 2017

- Co-taught semester long practicum for law students at Georgetown University Law Center addressing issues related to Social Security disability programs, Medicare, and transgender health; supervised weekly student work at Whitman-Walker Health.

**McDermott, Will & Emery LLP**

Associate, Trial Department                                                              April 2007 – September 2008

- Practice included criminal representation, complex civil litigation, and antitrust matters before federal and state courts, arbitrators, the U.S. Department of Justice and the Securities and Exchange Commission; entire White Collar practice group moved to McDermott from Chadbourne & Parke.
- Pro bono matters included volunteering with the Washington Legal Clinic for the Homeless to represent individuals appealing denials of Social Security benefits, individuals complaining of housing violations, and individuals working to secure DC public benefits; prepared petition to Board of Corrections for Naval Records to change client's discharge status from "other than honorable" to "honorable" in case referred by Servicemembers Legal Defense Network; and advised complaining witness in a DC hate crime/assault case; coordinated with U.S. Attorney's Office.

*Amy E. Nelson*
*Page 2*

**Chadbourne & Parke LLP**
Associate, White Collar Litigation                                      September 2004 – April 2007
Associate, Project Finance                                       September 2001 – September 2004

- Litigation practice focused on special investigations, criminal matters, and complex civil litigation before federal and state courts, DOJ, SEC, and the Federal Election Commission. Sample experience included presenting clients' interests to government attorneys and federal agents; fielding press inquiries and working with public relations firms to develop strategies for cases of national interest; and working with outside IT consultants to manage data transfer and production.
- Pro bono matters included drafting appellate brief and related pleadings on behalf of Florida death row inmate before the U.S. Court of Appeals for the Eleventh Circuit; victory resulted in remand to district court for evidentiary hearing; through Washington Legal Clinic for the Homeless, represented individuals in public benefits, housing, and employment discrimination matters; and establishing and advising 501(c)(3) corporation advocating public health disaster relief and veterinary assistance following 2004 tsunami.
- Project Finance practice included representation of project developers, commercial lenders, and multilateral agencies in connection with international and domestic financings, restructurings, acquisitions, and political risk insurance placement and litigation.

**Neighborhood Legal Services Program**
Legal Intern                                                                        Summer 1999

- Conducted initial client interviews, met with DC Housing Authority and Department of Consumer and Regulatory Affairs representatives, and assisted with Social Security claims and consumer debt issues.

**Coastal Corporation**
Analyst, Coastal Power Company                                          June 1995 – August 1997

- Participated in all aspects of project development in Latin America including energy sector research, responding to government requests for proposals, and negotiating project agreements; managed ongoing business needs of newly acquired power project in Dominican Republic and newly constructed power project in El Salvador; resident in Dominican Republic office for three months to implement operating procedures at project site.

**EDUCATION**

**George Washington University Law School**                          Washington, DC
J.D. with honors                                                                        May 2001
    Member, *The George Washington International Law Review*
    Dean's Fellow (instructor for first year law student writing and research program)
    President, Lambda Law (LGBT law students' association)

**Texas A&M University**                                               College Station, Texas
B.S., Economics                                                                          May 1995
    Recipient, Lechner Honors Fellowship

## PUBLICATIONS

**Transgender Surgery—Not the Benchmark for Gender Marker Determination**
*JAMA Surgery*, Dec. 2017; Vol. 152, No. 12; Co-authored with Justin D. Arnold, MMSc and Erin M. Loubier, JD; https://jamanetwork.com/journals/jamasurgery/article-abstract/2653995

**Trends in Insurance Coverage for Gender-Affirming Surgeries**
*JAMA Surgery*, published online July 18, 2018; Co-authored with Justin D. Arnold, MMSc and Erin M. Loubier, JD; http://jamanetwork.com/journals/jamasurgery/article-abstract/2688233

## VOLUNTEER ACTIVITIES / HONORS

**DC Mayor's Advisory Committee on Street Harassment**    December 2018 – Present
   LGBTQ/Immigration Representative
**DC Bar Board of Governors**    July 2018 – Present
   Treasurer
**We the People**    January 2018 – Present
   Founding Member "May Is All About Trans"
**GW Lambda Law Alumni Association**    March 2017 – Present
   Board Member
**Rainbow Response Coalition, Steering Committee**    April 2014 – August 2015
   2014 Mayor's Office of Victim Services Grant
**Recipient of Capital TransPride's Engendered Spirit Award**    May 2014
**Recipient of DC Mayor's Office of LGBTQ Affairs 2014 Shero of the Movement Award** March 2014
**N Street Village**    October 2011 – December 2013
   Member, HIV/AIDS Programmatic Planning Committee
**Obama For America – Virginia**    Fall 2008; Fall 2012
   Outside Poll Observer / Voter Advocate in Stephens City and Norfolk, VA
**Lawyers' Committee for Civil Rights Under Law**    Fall 2004; Fall 2012
   Election Protection Voter Hotline Volunteer
**Miriam's House**    July 2006 – October 2011
   Board of Directors, served as President, Vice President, and Secretary
**Washington Legal Clinic for the Homeless**    December 2003 – September 2008
   Volunteer Attorney, intake sessions located at Miriam's Kitchen

## BAR ADMISSIONS

Admitted to practice in District of Columbia, Maryland, and New York (inactive)