IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
WHITMAN-WALKER                      )
CLINIC, INC., *et al.*,             )
                                    )
    Plaintiffs,                     )
                                    )
v.                                  )   Case No. 1:20-cv-01630-JEB
                                    )
U.S. DEPARTMENT OF HEALTH           )
AND HUMAN SERVICES, *et al.*,       )
                                    )
    Defendants.                     )
_____)

## JOINT STATUS REPORT

The parties, by and through undersigned counsel, respectfully submit this Joint Status Report pursuant to the Court's Minute Order dated May 17, 2021.

**Defendants' Status Report:**

As previously addressed, new leadership began arriving at the U.S. Department of Health and Human Services ("HHS") and the U.S. Department of Justice on January 20, 2021, and Defendant Secretary Becerra took office on March 19, 2021. Since January, Defendants have been reassessing and reconsidering the provisions promulgated in the rule challenged in this case. Defendants' ongoing efforts are consistent with the Biden Administration's stated commitment to equity and to expanding access to coverage and care for underserved communities.

As reported in the last status report, on May 10, 2021, HHS issued a "Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments Act of 1972." 86 Fed. Reg. 27,984, 27,984 (May 25, 2021). The Notice provided that "[c]onsistent with the Supreme Court's decision in *Bostock* and Title IX, beginning today, OCR will interpret and enforce Section 1557's prohibition on discrimination on the basis

1

of sex to include (1) Discrimination on the basis of sexual orientation, and (2) discrimination on the basis of gender identity." *Id*. at 27,985. In light of the Notice, there can be no plausible confusion on the part of health programs and activities receiving federal financial assistance, any program or activity administered by the Department under Title I of the ACA, or any program or activity administered by any entity established under such Title that gender identity and sexual orientation discrimination is prohibited under Section 1557 and that the HHS Office for Civil Rights will enforce Section 1557 as such. Accordingly, LGBTQ Americans need not fear discrimination in the hands of their health programs and activities receiving federal financial assistance, any program or activity administered by the Department under Title I of the Act, or any program or activity administered by any entity established under such Title in light of any uncertainty on those subjects arguably associated with any provision of the 2020 Rule.

Defendants report that, since the last status report, HHS has been working diligently and making further progress in its efforts to promulgate a new Section 1557 Rule. Pursuant to Executive Order 12250, the Civil Rights Division of the Department of Justice has been closely collaborating with the HHS Office for Civil Rights as part of those efforts. The HHS Office for Civil Rights has also held a listening session with stakeholders to consider specific recommendations for the new rule. For example, on June 17, 2021, the HHS Office for Civil rights held a listening session with the Leadership Conference on Civil and Human Rights. Plaintiff-affiliate Whitman-Walker Institute was among thirty organizations who submitted recommendations for the new rule that the HHS Office for Civil Rights is considering.

As this Court has recognized, addressing legal challenges to each and every one of the 2020 Rule's provisions usurps a considerable amount of judicial and party resources and is a "daunting" task. *See Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 10 (D.D.C. 2020). It should

therefore come as no surprise that HHS's administrative processes for proposing a new Section 1557 rule that robustly and thoroughly combats discrimination in health programs and activities in a well-reasoned, considered, and durable manner does not happen overnight. Nevertheless, HHS is moving diligently and anticipates issuing a Notice of Proposed Rulemaking in early 2022.

In light of HHS's ongoing Section 1557 rulemaking efforts, Defendants request that they file a status report in 90 days and every 90 days thereafter updating the Court on the status of these ongoing agency proceedings.

**Defendants' Request for a Full and Fair Opportunity to Respond to Plaintiffs' Request to Lift the Stay**

This case is stayed pending the conclusion of administrative proceedings reconsidering the provisions promulgated in the challenged rule. Minute Order (Feb. 16, 2021); Joint Motion to Stay Proceedings, ECF No. 70 ¶ 6 ("[T]he Court should stay further district court proceedings pending the new administration's review of this litigation and the rule being challenged.").

This joint status report is not the proper vehicle for submitting what is essentially a memorandum of law in support of a motion to lift the current stay of proceedings. Plaintiffs submit six pages of argument in support of a request to lift the stay but have not filed a motion requesting that relief. *See* Fed. R. Civ. P. 7 (b). More importantly, Plaintiffs did not provide Defendants with their six pages of argument until 2:56 P.M. today, the day this status report was due. Accordingly, Defendants respectfully request that the Court forgo consideration of Plaintiffs' arguments below regarding the propriety of a stay without giving Defendants a full and fair opportunity to respond.

Indeed, Plaintiffs cite with approval *BAGLY v. HHS*. But in that case, the court proceeded in the ordinary course. First, Defendants filed a motion to stay proceedings. Then, Plaintiffs filed an opposition. Finally, the *BAGLY* court held a hearing on the motion. Defendants request a similar meaningful opportunity to be heard here.

Under the Local Rules, Defendants believe they are entitled to fourteen days—not a handful of hours—to file a memorandum of points and authorities in opposition to Plaintiffs' request to lift the stay. *See* LCvR 7(b). But Defendants respectfully request that they be permitted until August 18, 2021 to file that memorandum. Good cause exists for this brief extension of time. Given the gravity of Section 1557 of the Affordable Care Act; the magnitude of Defendants' stated commitment to reconsider the challenged rule and engage in a new rulemaking to ensure that the Section 1557 regulations are consistent with the Biden Administration's commitment to equity and expanding access to coverage and care for underserved communities; the fact that the process for filing an accurate, comprehensive and adequately supported opposition will require coordination among officials of HHS and the U.S. Department of Justice; and taking into account the change in leadership, that time period is a reasonable one for Defendants to prepare their opposition. And given that this Court has already determined that these Plaintiffs lack a substantial likelihood of success on their remaining claims, permitting Defendants until August 18, 2021, to respond to Plaintiffs' request to lift the stay is unlikely to result in any undue hardship. *See Whitman-Walker v. HHS*, 485 F. Supp. 3d 1, 64-65 (D.D.C. 2020).

**Plaintiffs' Position:**

Without any real update on the scope or timeline for any future rulemaking, Defendants seek to transform a brief, agreed-to pause in the case schedule into an indefinite stay. Defendants have not met their burden to stay this case indefinitely, particularly in light of Plaintiffs' objections. An indefinite stay risks exacerbating and prolonging the very harms that Plaintiffs sought to remedy in bringing this suit and risks the health and well-being of countless people. In these circumstances, a stay of proceedings is unjustified and inappropriate.

Although "[a] federal district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket,'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)), "[t]he power to issue a stay is cabined." *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *4 (D.D.C. June 1, 2021). "In considering a stay, courts must 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012)). "The party seeking the stay bears the burden of establishing its need, and specifically of making out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work to damage someone else." *Asylumworks*, 2021 WL 2227335, at *4; *see also Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38 ("If there is even a fair possibility that a stay would adversely affect another party, the movant for the stay must demonstrate a clear case of hardship or inequity in being required to go forward." (quotations omitted)).

Defendants ask the Court to stay these proceedings because (1) they intend to engage in rulemaking in the future that may address some of the issues identified in Plaintiffs' Complaint, and (2) the administration has adopted a policy, consistent with the dictates of *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2021), that discrimination on the basis of sex includes discrimination on the basis of sexual orientation and gender identity. Neither provides a sufficient basis to stay these proceedings indefinitely.

Defendants first ask for an indefinite stay because they are working "to promulgate a new Section 1557 Rule." But the scope of such purported rulemaking is undefined and the timeline for

5

its promulgation is undetermined. Defendants therefore cannot provide any clarity as to whether or how the rulemaking will affect Plaintiffs' claims or ameliorate the ongoing harms to Plaintiffs or the public at large. Defendants' announced intention to engage in rulemaking also fails to address or remedy portions of the Revised Rule that Plaintiffs challenge and that remain in effect *today*, such as (1) the narrowing of the scope of entities required to comply with Section 1557, like excluding certain health insurers that receive federal financial assistance; (2) the elimination of language access protections (including notice and tag line requirements); and (3) the elimination of nondiscrimination regulatory protections contained in unrelated HHS regulations. These provisions continue to harm Plaintiffs and countless others, including Plaintiffs' members and patients who are LGBTQ or have Limited English Proficiency.

Allowing these provisions to remain in effect while this litigation is stayed indefinitely will negatively affect the lives of the very people whom Section 1557 is supposed to protect. For example, in litigation filed since the Revised Rule went into effect, health insurers have argued that "current HHS regulations explicitly permit categorical exclusion of gender-affirming treatments." Mot. to Dismiss, *C.P. v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145-RJB (W.D. Wash. filed Feb. 25, 2021) (ECF No. 17). In addition, the Revised Rule's elimination of language access protections continues to harm patients whose Limited English Proficiency may pose a meaningful barrier to accessing timely testing, vaccines, treatment, and contact-tracing services during the ongoing COVID-19 public health emergency. *See* Nat'l Health Law Program, Administrative Complaint regarding discriminatory provision of COVID-19 services to persons with limited English proficiency, Office of Civil Rights, U.S. Dep't of Health & Human Servs. (filed Apr. 30, 2021), available at https://healthlaw.org/wp-content/uploads/2021/04/OCR-LEP-Complaint-4-30-21-for-publication.pdf.

Defendants' second justification for the indefinite stay – the May 2021 "Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments Act of 1972," 86 Fed. Reg. 27,984, 27,984 – addresses, at best, only *one* of the multiple aspects of the Revised Rule that Plaintiffs have challenged—*i.e.*, the removal of the definition of "on the basis of sex" from the Rule. It does not address other provisions Plaintiffs have challenged. And it is not completely accurate to say that "LGBTQ Americans need not fear discrimination in the hands of their health programs and activities receiving federal financial assistance," when Defendants cannot enforce Section 1557 against some health insurers that discriminate against LGBTQ people due to the Revised Rule's unlawful narrowing of covered entities.

In the interests of cooperation, judicial economy, and to accommodate the new administration's desire to come up-to-speed, Plaintiffs previously agreed to Defendants' request for a stay for a *limited* period of time to evaluate how they would proceed with this case and the Revised Rule. But the new administration has been in place for six months, and Plaintiffs should not have to wait *years* for the resolution of their claims. This Administrative Procedures Act case is more than a year old, and Defendants have yet to produce the administrative record in this matter.

Plaintiffs respectfully urge this Court to deny Defendants' tacit request for an indefinite stay of proceedings as other courts in this district routinely have done in similar circumstances. Most recently, a court in this district denied a proposed stay of proceedings because it was "premised on speculative administrative changes … that may fall far short of providing any relief sought by plaintiffs." *Asylumworks*, 2021 WL 2227335, at *5. There, the *Asylumworks* court noted that "neither DHS' tentative plan nor defendants' filings in th[e] case provide any indication that DHS plans to alter or repeal either of these rules and thus exposes defendants' argument that

the rulemaking 'may moot or reshape the claims in this case' as entirely theoretical." *Id.* The same is true here. The *Asylumworks* court also observed that DHS "did not anticipate a final rule until June 2022, a year from now barring potential delays," while "plaintiffs would continue to be subject to the challenged rules, without any resolution of their claims that these rules are unlawful." *Id.* The *Asylumworks* court thus cited to *United States v. Philip Morris USA Inc.*, 841 F. Supp. 2d 139 (D.D.C. 2012), for the proposition that stay of a year or more "would be both lengthy and indefinite." *Id.* at 141.

      Other courts, including this Court, similarly have denied stays based solely on the prospect of proposed rulemaking. For example, in *García v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019), the court denied a stay, finding that "[i]n light of the uncertainties regarding the contemplated NPRM … , and the risk that the existing policy and practice … will cause Plaintiffs concrete harm in the near future, the balance of equities tips decidedly against staying the litigation." *Id.* at 110. The *García* court further noted that "the interests of judicial economy," by themselves, are "not enough, especially where it is not certain that the proposed rulemaking will moot the case." *Id.* (cleaned up). And in *Consumers Union of U. S., Inc. v. Miller*, 84 F.R.D. 240 (D.D.C. 1979), the court denied a stay after concluding that "[t]he possibility of rescission or modification is not enough to preclude judicial review." *Id.* at 243. The court observed that "[w]hile the amendment remains in effect, it presents the legal issues of whether it was properly promulgated." *Id.*

      This Court was presented with a similar situation in *Center for Biological Diversity v. Ross*, 419 F. Supp. 3d 16 (D.D.C. 2019) (Boasberg, J.), and denied a stay of proceedings even though administrative proceedings that could potentially moot the case were underway—in a much more concrete sense than here. The Court observed that the possibility of the issuance of a proposed new rule prior to the final adjudication of the case "is ultimately unavailing" because "it is not

clear how issuing a new [proposed rule] at least nine months from now will alleviate the interim harm." *Id*. at 21. The Court further noted that the mere expenditure of resources to defend a lawsuit as a factor counseling in favor of a stay is a position that "holds no water." *Id*.; *see also id*. ("But NMFS does not explain how defense of this suit, which falls largely to lawyers at the Department of Justice, will divert substantial NMFS resources."). Finally, in terms of judicial economy, the Court noted that the defendant agency "would have to fully remedy each of Plaintiffs' claims … in order to render them moot," and that, "of course, the Service cannot now commit to the conclusion it will reach." *Id*. at 23. The same holds true here, where Plaintiffs have challenged multiple aspects of the Revised Rule.

      An indefinite stay of proceedings is not warranted in this case. To the contrary, such a stay would adversely Plaintiffs and their patients. Plaintiffs respectfully request that the Court deny Defendants' request for an indefinite stay, just as the district court in *BAGLY v. HHS* has done in a case involving a similar challenge to the Revised Rule. *See* Order, *BAGLY v. HHS*, 1:20-cv-11297-PBS (D. Mass. May 10, 2021) (ECF No. 48).

      Plaintiffs also request that the Court deny Defendants' request that they be permitted until August 18, 2021 to file a response to Plaintiffs' position and opposition to Defendants' request for an indefinite stay. Defendants have been well aware since February 2021 that Plaintiffs were willing to agree to a *limited* stay of the proceedings to allow the new administration time to evaluate how they would proceed with this case and the Revised Rule. At no time did Plaintiffs agree to or the court order an indefinite stay pending completion of a future and undetermined rulemaking. Plaintiffs made their position clear in the parties' May 14, 2021 Joint Status Report: "Plaintiffs agree that this case should remain stayed for the limited period of 30 days to permit

Defendants to explore alternatives and provide details of their intended rulemaking." Joint Status Report, ECF No. 71 at 6.

Plaintiffs reached out to Defendants on July 9, 2021 to meet and confer about the status of the administration's review and evaluation of options concerning the Revised Rule. Counsel for Defendants responded on July 12, 2021 that they were conferring with HHS and did not think a discussion with Plaintiffs was necessary. Defendants sent a draft of the joint status report to Plaintiffs close to noon on July 14, 2021, requesting an indefinite stay and purporting to represent that Plaintiffs had agreed to an indefinite stay despite the May 14, 2021 status report stating to the contrary. Now, without any reasonable basis, Defendants want another month of delay to respond to Plaintiffs, even though they were aware of Plaintiffs' position months ago and Plaintiffs would have confirmed their position if Defendants had been willing to confer prior to the submission of this status report. Defendants' request should be denied.

Defendants simply have not met their burden for an indefinite stay. Indeed, Defendants have not made any effort to make any showing that would support a stay. Defendants are not entitled to delay this proceeding further based only on a mere statement of intent to engage in a rulemaking of undefined scope at some point in the future.

Dated: July 16, 2021          Respectfully submitted,

                              BRIAN M. BOYNTON
                              Acting Assistant Attorney General

                              MICHELLE R. BENNETT
                              Assistant Director, Federal Programs Branch

                              /s/ Liam C. Holland
                              LIAM C. HOLLAND
                              Trial Attorney
                              United States Department of Justice
                              Civil Division, Federal Programs Branch
                              1100 L Street, N.W.

Washington, D.C. 20530
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: Liam.C.Holland@usdoj.gov

*Attorneys for Defendants*

| | |
|---|---|
| LAMBDA LEGAL DEFENSE<br>AND EDUCATION FUND, INC.<br><br>By:   /s/ *Omar Gonzalez-Pagan*<br>OMAR GONZALEZ-PAGAN*<br>*ogonzalez-pagan@lambdalegal.org*<br>LAMBDA LEGAL DEFENSE<br>AND EDUCATION FUND, INC.<br>120 Wall Street, 19th Floor<br>New York, NY  10005<br>Phone: (212) 809-8585<br>Fax:    (212) 809-0055<br><br>KAREN LOEWY**<br>*kloewy@lambdalegal.org*<br>LAMBDA LEGAL DEFENSE<br>AND EDUCATION FUND, INC.<br>1776 K Street, N.W., 8th Floor<br>Washington, DC  20006-2304<br>Phone: (202) 804-6245<br><br>CARL S. CHARLES*<br>*ccharles@lambdalegal.org*<br>LAMBDA LEGAL DEFENSE<br>AND EDUCATION FUND, INC.<br>730 Peachtree Street, N.E., Suite 640<br>Atlanta, GA  30308-1210<br>Phone: (404) 897-1880<br>Fax:    (404) 897-1884<br><br>* Admitted *pro hac vice.*<br><br>** Admitted *pro hac vice. DC Bar admission pending.*<br><br>*** *Application for admission to U.S. District Court for the District of Columbia forthcoming* | JENNER & BLOCK LLP<br><br>By:   /s/ *Laurie Edelstein*<br>LAURA (LAURIE) J. EDELSTEIN*<br>*LEdelstein@jenner.com*<br>JENNER & BLOCK LLP<br>455 Market Street, Suite 2100<br>San Francisco, CA  94105<br>Phone: (628) 267-6800<br>Fax:    (628) 267-6859<br><br>STEPTOE & JOHNSON LLP<br><br>By:   /s/ *Johanna Dennehy*<br>JOHANNA DENNEHY<br>(D.C. Bar No. 1008090)<br>*jdennehy@steptoe.com*<br>LAURA LANE-STEELE***<br>*llanesteele@steptoe.com*<br>STEPTOE & JOHNSON LLP<br>1330 Connecticut Avenue NW<br>Washington, DC  20036<br>Phone: (202) 429-3000<br>Fax:    (202) 429-3902<br><br>MICHAEL VATIS<br>(D.C. Bar No. 422141)<br>*mvatis@steptoe.com*<br>KHRISTOPH A. BECKER*<br>*kbecker@steptoe.com*<br>STEPTOE & JOHNSON LLP<br>1114 Avenue of the Americas<br>New York, NY  10036<br>Phone: (212) 506-3900<br>Fax:    (212) 506-3950 |

*Attorneys for Plaintiffs*