**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WHITMAN-WALKER CLINIC, INC., *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

*Defendants*.

Case No. 1:20-cv-01630 (JEB)

**PLAINTIFFS' MOTION TO LIFT STAY OF PROCEEDINGS**

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 7, and this Court's July 19, 2021 Order, Plaintiffs Whitman-Walker Clinic, Inc. d/b/a Whitman-Walker Health; The TransLatin@ Coalition; Los Angeles LGBT Center; Bradbury-Sullivan LGBT Community Center; American Association of Physicians for Human Rights d/b/a GLMA: Health Professionals Advancing LGBTQ Equality; AGLP: The Association of LGBTQ Psychiatrists; Dr. Sarah Henn; Dr. Randy Pumphrey; Dr. Robert Bolan; and Dr. Ward Carpenter (collectively, "Plaintiffs") respectfully submit this motion to lift the stay of proceedings in this case.

**INTRODUCTION**

An indefinite stay of proceedings based on abstract promises from Defendants is neither appropriate nor warranted, particularly when such a stay means denying Plaintiffs their day in court and prolonging the very harms that forced Plaintiffs to bring this case. The health and wellbeing of countless people is at stake and Defendants' discomfort with having to defend the indefensible is not a reason to deny Plaintiffs the judicial review that the Administrative Procedure Act ("APA") guarantees.

Defendants have the burden to show why a stay of proceedings is warranted. But they never have moved for a stay or even attempted to show why a stay is needed. Instead, Defendants have sought to turn Plaintiffs' agreement to a brief stay of these proceedings to allow a new administration time to get its bearings and assess how to proceed into an indefinite and sweeping stay. Such a stay would amount to the denial of judicial review to Plaintiffs, their members, and patients who are LGBTQ or have Limited English Proficiency. This case has been delayed long enough.

Vague promises to engage in rulemaking of an undetermined scope at an unspecified time do not meet the requirements for a stay, particularly when Defendants cannot guarantee that the rulemaking will address all or even some of Plaintiffs' claims. Plaintiffs should not have to wait years for the adjudication of their claims when the administrative action they challenge is harming them now. A federal court in Massachusetts already found that an open-ended stay was not warranted in a case involving a similar challenge to the Revised Rule. *See* Order, *BAGLY v. HHS*, 1:20-cv-11297-PBS (D. Mass. May 10, 2021) (ECF No. 48). This Court should do the same.

Plaintiffs agreed to a limited stay to allow the new administration time to evaluate how to proceed with the litigation and the Revised Rule. That time has passed. Because a continued stay of proceedings risks harming Plaintiffs, their members, and their patients, as well as countless others being denied nondiscriminatory access to health care, and because Defendants cannot articulate a need for a stay, let alone how proceeding with this case will cause them hardship or inequity, the Court should lift the stay.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 19, 2020, the U.S. Department of Health and Human Services ("HHS") promulgated a rule entitled, "Nondiscrimination in Health and Health Education Programs or

Activities, Delegation of Authority," 85 Fed. Reg. 37,160 (June 19, 2020) (to be codified at 42 C.F.R. pts. 438, 440, & 460 and 45 C.F.R. pts. 86, 92, 147, 155, & 156) (the "Revised Rule"). Three days later, Plaintiffs filed their Complaint for Declaratory and Injunctive Relief alleging that the Revised Rule was arbitrary and capricious, in excess of statutory authority, and not in accordance with the law, in violation of the APA, 5 U.S.C. § 551 *et seq*., and it violates the Equal Protection Guarantee and Due Process Clause of the Fifth Amendment, and the Free Speech and Establishment Clauses of the First Amendment to the United States Constitution. (Dkt. 1.)

Among the aspects of the Revised Rule that Plaintiffs challenged are:

- The elimination of the definition of "on the basis of sex," which included gender identity and sex stereotyping.

- The elimination of provisions specifically requiring covered entities to treat individuals consistent with their gender identity and prohibiting covered entities from having or implementing "a categorical coverage exclusion or limitation for all health care services related to gender transition."

- The importation of broad and sweeping exemptions for discrimination based on personal religious or moral beliefs, including Title IX's religious exemption.

- The elimination of the notice and critical language-access requirements that the 2016 Rule implemented for patients with Limited English Proficiency.

- The limitation on the scope of Section 1557 by narrowing the entities subject to Section 1557, such as certain health insurers.

- The elimination of gender identity and sexual orientation protections in unrelated regulations.

- The elimination of protections related to discrimination on the basis of association.

- The elimination of a unitary legal standard and enforcement mechanism under Section 1557 and the explicit recognition of private rights of action and the availability of compensatory damages under Section 1557.

On July 9, 2020, Plaintiffs moved for a preliminary injunction based on the irreparable harm caused by the Revised Rule. (Dkt. 29.) On September 2, 2020, the Court issued a memorandum opinion preliminarily enjoining Defendants "from enforcing the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes "discrimination on the basis of ... sex stereotyping … [and] from enforcing its incorporation of the religious exemption contained in Title IX." *Whitman-Walker Clinic v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 64–65 (D.D.C. 2020) (Dkt. 56).

On September 29, 2020, Defendants moved to dismiss some, though not all, of Plaintiffs' claims. (Dkt. 57.) The briefing on Defendants' partial motion to dismiss was completed on January 19, 2021. (Dkt. 69.)

On January 20, 2021, President Joseph R. Biden was sworn in as the 46th President of the United States. That same day, President Biden issued an executive order setting forth the policy that consistent with *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020), "laws that prohibit sex discrimination — including Title IX of the Education Amendments of 1972, as amended (20 U.S.C. 1681 et seq.) … — prohibit discrimination on the basis of gender identity or sexual orientation."[1] President Biden ordered the head of each federal agency to "consider whether to revise, suspend, or rescind such agency actions, or promulgate new agency actions, as necessary

---

[1] Exec. Order 13988 on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation (Jan. 20, 2021), available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-preventing-and-combating-discrimination-on-basis-of-gender-identity-or-sexual-orientation/.

to fully implement statutes that prohibit sex discrimination," and to report a plan for doing so within 100 days. A few days later, President Biden issued an additional executive order setting forth the administration's policy supporting the Affordable Care Act ("ACA") and ordering agencies to examine policies that, among other things, undermine protections for people with preexisting conditions, undermine health insurance markets, or could present unnecessary barriers to access for ACA coverage.[2]

Accordingly, on February 16, 2021, Plaintiffs joined Defendants' request for a *limited* stay of proceedings "while new leadership at the U.S. Department of Health and Human Services ("HHS") evaluates the issues this case presents, especially in light of the President's Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation." (Dkt. 70 at 1.) The parties' joint motion asked the Court to "stay further district court proceedings ***pending the new administration's review of this litigation and the rule being challenged*** because that ***review*** may result in changes that render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow those issues significantly." (*Id.* at 3 (emphasis added).) The parties agreed that as part of the limited stay, they would file a status report no later than May 14, 2021, that would describe the status of the agencies' review and propose a plan for further proceedings. (Dkt. 70 at 3.) That same day, the Court issued the stay and directed the parties to file a joint status report by May 14, 2021.

On May 10, 2021, HHS announced a "Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments Act of 1972," 86 Fed. Reg. 27,984, 27,984 (May 25, 2021), which sets forth the policy that HHS will now

[2] Exec. Order 14009 on Strengthening Medicaid and the Affordable Care Act (Jan. 28, 2021), available at: https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/28/executive-order-on-strengthening-medicaid-and-the-affordable-care-act/.

interpret and enforce Section 1557 of the ACA to prohibit discrimination on the basis of sexual orientation and gender identity.

On May 11 and 13, 2021, counsel for Plaintiffs and Defendants met and conferred regarding the status of the litigation and the status report due on May 14, 2021. Defendants advised that HHS intended to engage in rulemaking under Section 1557. Plaintiffs noted that although HHS's intent to engage in rulemaking was a welcome development, the 2020 Revised Rule would continue to cause harm as long as it remained in place. Plaintiffs suggested that Defendants consider taking steps that could ameliorate at least some of the harms from the Revised Rule's provisions while the rulemaking ran its course. Counsel for Defendants at the U.S. Department of Justice stated that HHS would need time to consider the proposal. The parties agreed it made sense to set a deadline for another status report, but disagreed about what that deadline should be.

On May 14, 2021, the parties filed their status report. (Dkt. 71). Defendants reported that "new leadership began arriving at the U.S. Department of Health and Human Services ('HHS') and the U.S. Department of Justice on January 20, 2021 and have been reassessing the issues that this case presents." (*Id.* at 1.) According to Defendants, "HHS's reassessment remain[ed] ongoing" as of May 14, 2021. (*Id.* at 1.) Defendants cited the steps the Biden administration had taken and reported that HHS intended to engage in rulemaking under Section 1557. But they made no promises as to the timing of any future rulemaking. (*Id.* at 2.) Defendants requested that the Court order the parties to file another status report 90 days later "[i]n light of Defendants' ongoing reassessment of the challenged rule and the developments discussed above." (*Id.*)

Plaintiffs explained that although they appreciated the steps that the administration had taken to date and its intent to engage in rulemaking under Section 1557, Plaintiffs opposed a continued and prolonged stay of proceedings given the uncertain timeline of the rulemaking and

its undefined scope. (*Id.* at 3-5.) Plaintiffs also explained they had asked Defendants to consider taking measures that could ameliorate at least some of the ongoing harm while HHS engaged in rulemaking. (*Id.* at 6.) Plaintiffs "agree[d] that this case should remain stayed for a limited period of 30 days to permit Defendants to explore [such] alternatives and provide details of their intended rulemaking." (*Id.*)

On May 17, 2021, the Court ordered the stay to remain in place and directed the parties to file a new status report by July 16, 2021. (Dkt. 72.)

On July 16, 2021, the parties filed a second status report. (Dkt. 73.) In the second status report, Defendants once again requested a continued and indefinite stay of proceedings based on their intention to engage in rulemaking under Section 1557 (which they now anticipate will lead to a Notice of Proposed Rulemaking in early 2022) and the limited remedial actions the administration has taken to date. (*Id.*) Plaintiffs opposed Defendants' request, noting that Defendants were attempting to convert the agreed-upon time for "reassessment" into an indefinite stay and they had not carried their burden for requesting such a stay. (*Id.*)

On July 19, 2021, the Court directed Plaintiffs to file a motion to lift the stay and set forth a briefing schedule. (Dkt. 74.)

**STANDARD OF REVIEW**

A "federal district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket,'" *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). However, "[t]he power to issue a stay is cabined." *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2021 WL 2227335, at *4 (D.D.C. June 1, 2021). "In considering a stay, courts must 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible

hardship to the parties." *Nat'l Indus. for Blind v. Dep't of Veterans Affs.*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017) (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012)). The "proponent of a stay bears the burden of establishing its need," *Clinton*, 520 U.S. at 708, and a "court's stay order must be supported by a balanced finding that such need overrides the injury to the party being stayed." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20. "If there is even a fair possibility that a stay would adversely affect another party, the movant for the stay must demonstrate a clear case of hardship or inequity in being required to go forward." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137–38 (quotations omitted).

The same court that imposes a stay also has the "inherent power and discretion" to lift its own stay order. *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003); *see also Liff v. Off. of Inspector Gen., U.S. Dep't of Labor*, No. 14-1162 (JEB), 2016 WL 4506970, at *2 (D.D.C. Aug. 26, 2016). When "circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay *sua sponte* or upon motion." *Marsh*, 263 F. Supp. 2d at 52; *see also Liff*, 2016 WL 4506970, at *2.

## ARGUMENT

### I. THE LIMITED STAY OF PROCEEDINGS SHOULD BE LIFTED AND DEFENDANTS' REQUEST FOR AN INDEFINITE STAY SHOULD BE DENIED.

The parties agreed to a limited stay to allow the new administration time to evaluate the litigation and the Revised Rule. That reassessment period has passed. The new administration has had six months to evaluate how to proceed. The limited stay no longer is appropriate or warranted and should be lifted.

In addition, Defendants have failed to support their new request for an indefinite stay of this proceeding. As the party seeking a stay, they "bear[] the burden of establishing [the] need [for a stay], and specifically of making out a clear case of hardship or inequity in being required to go

forward, if there is even a fair possibility that the stay for which [they] pray[] will work to damage someone else." *Asylumworks*, 2021 WL 2227335, at *4. Defendants have not met their burden.

Defendants ask the Court to indefinitely stay these proceedings because (1) they intend to engage in a rulemaking in the future that may address some, all, or none of the issues identified in Plaintiffs' Complaint, and (2) the administration has adopted a policy, consistent with the dictates of *Bostock*, 140 S. Ct. 1731, that discrimination on the basis of sex includes discrimination on the basis of sexual orientation and gender identity. Neither reason provides a sufficient basis to stay this case indefinitely.

### A. Defendants' Intent to Engage in Rulemaking in the Future Does Not Warrant an Indefinite Stay.

Defendants' request for an indefinite stay because they are working "to promulgate a new Section 1557 Rule" is not sufficient to justify staying this case indefinitely. (Dkt. 73 at 2.)

As an initial matter, Defendants have not guaranteed (and cannot guarantee) that a rulemaking will proceed on any particular timeline. They reported to the Court on July 16, 2021 that HHS "anticipates issuing a Notice of Proposed Rulemaking in early 2022"— at least a year into the new administration. (Dkt. 73 at 3.) After issuing the notice, HHS will need to provide the public adequate time to comment, consider the comments it receives, and prepare a final rule. In the two previous rulemakings under Section 1557, HHS issued final rules between eight months and a year after issuing the NPRM.[3]

In addition, Defendants have not yet defined the scope of any future rulemaking. Defendants therefore cannot provide any clarity as to whether or how the rulemaking will affect

[3] *See* Notice of Proposed Rulemaking, *Nondiscrimination in Health Programs and Activities*, 80 Fed. Reg. 54,172 (Sept. 8, 2015); Final Rule, *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,376 (May 18, 2016); Notice of Proposed Rulemaking, *Nondiscrimination in Health Programs and Activities*, 84 Fed. Reg. 27,846 (June 14, 2019); Final Rule, *Nondiscrimination in Health Programs and Activities*, 85 Fed. Reg. 37,160 (June 19, 2020).

Plaintiffs' claims or ameliorate the ongoing harms to Plaintiffs or the public at large. Defendants' announced intention to engage in a rulemaking also fails to address or remedy portions of the Revised Rule that Plaintiffs challenge and that remain in effect *today*, such as (1) the narrowing of the scope of entities required to comply with Section 1557 such that certain health insurers that receive federal financial assistance no longer are required to comply with Section 1557's anti-discrimination mandate under the regulations; (2) the elimination of language access protections (including notice and tag line requirements); and (3) the elimination of nondiscrimination regulatory protections contained in unrelated HHS regulations, among others outlined above. These provisions continue to harm Plaintiffs and countless others, including Plaintiffs' members and patients who are LGBTQ or have Limited English Proficiency. Indeed, except for some limited provisions pertaining to the Revised Rule's elimination of the definition of "on the basis of sex" and its incorporation of Title IX's religious exemption, the rest of the Revised Rule is in effect today. *See Walker v. Azar*, No. 20CV2834FBSMG, 2020 WL 6363970, at *4 (E.D.N.Y. Oct. 29, 2020) (clarifying that scope of court's preliminary injunction covers "the repeal of the 2016 Rule's definition of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' set forth in 45 C.F.R. § 92.4" and "the repeal of 45 C.F.R. § 92.206," which requires health providers to treat individuals consistent with their gender identity.); *Whitman-Walker Clinic v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 64–65 (D.D.C. 2020) ("HHS will be preliminarily enjoined from enforcing the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes "discrimination on the basis of ... sex stereotyping. . . . [and] from enforcing its incorporation of the religious exemption contained in Title IX.").

Defendants have not said and indeed cannot say if the proposed rulemaking they intend to engage in at some point in the future will address the various aspects of the Revised Rule Plaintiffs

have challenged. That alone is a sufficient reason to deny the open-ended stay Defendants request. A court in this district recently denied a proposed stay of proceedings under similar circumstances because it was "premised on speculative administrative changes … that may fall far short of providing any relief sought by plaintiffs." *Asylumworks*, 2021 WL 2227335, at *5. The *Asylumworks* court noted that "neither DHS' tentative plan nor defendants' filings in th[e] case provide any indication that DHS plans to alter or repeal either of these rules and thus exposes defendants' argument that the rulemaking 'may moot or reshape the claims in this case' as entirely theoretical." *Id.* The same is true here.

Other courts in this district similarly have denied requests to stay proceedings in APA cases that are based solely on the prospect of proposed rulemaking. For example, in *García v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019), the court denied a stay, finding that "[i]n light of the uncertainties regarding the contemplated NPRM … , and the risk that the existing policy and practice … will cause Plaintiffs concrete harm in the near future, the balance of equities tips decidedly against staying the litigation." *Id.* at 110. The *García* court further noted that "the interests of judicial economy," by themselves, are "not enough, especially where it is not certain that the proposed rulemaking will moot the case." *Id.* (cleaned up). And in *Consumers Union of U.S., Inc. v. Miller*, 84 F.R.D. 240 (D.D.C. 1979), the court denied a stay after concluding that "[t]he possibility of rescission or modification is not enough to preclude judicial review." *Id.* at 243. The court observed that "[w]hile the amendment remains in effect, it presents the legal issues of whether it was properly promulgated." *Id.*

This Court was presented with a similar situation in *Center for Biological Diversity v. Ross*, 419 F. Supp. 3d 16 (D.D.C. 2019), and denied a stay of proceedings even though administrative proceedings that could potentially moot the case were already underway. The Court observed that

the possibility of the issuance of a proposed new rule prior to the final adjudication of the case "is ultimately unavailing" because "it is not clear how issuing a new [proposed rule] at least nine months from now will alleviate the interim harm." *Id.* at 21. In terms of judicial economy, the Court noted that the defendant agency "would have to fully remedy each of Plaintiffs' claims … in order to render them moot," and that, "of course, the Service cannot now commit to the conclusion it will reach." *Id.* at 23. The same holds true here, where Plaintiffs have challenged multiple aspects of the Revised Rule.

There is a "strong presumption in favor of judicial review of agency actions." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967). "The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). Defendants' abstract promises about rulemaking of an unspecified scope at an undetermined time are insufficient to stay this case and deny Plaintiffs their day in court.

**B. The Limited Administrative Actions the Administration Has Taken Do Not Justify an Indefinite Stay.**

Defendants' second justification for the indefinite stay—the May 2021 "Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments Act of 1972," 86 Fed. Reg. 27,984, 27,984—relates, at best, to only *one* of the multiple aspects of the Revised Rule that Plaintiffs have challenged—*i.e.*, the removal of the definition of "on the basis of sex" from the Rule. It does not address other provisions Plaintiffs have challenged. And it does not eliminate the reasons why LGBTQ Americans currently "fear discrimination in the hands of their health programs and activities receiving federal financial assistance" (Dkt. 73 at 2), because Defendants cannot enforce Section 1557 against some health

insurers that discriminate against LGBTQ people due to the Revised Rule's unlawful narrowing of covered entities.

## II. DEFENDANTS HAVE FAILED TO SHOW HOW MOVING FORWARD WILL CAUSE THEM HARDSHIP OR INEQUITY.

To date, Defendants also have made no attempt to articulate how moving forward with this case will cause them hardship or inequity, let alone made out a clear case as they are required to do. That Defendants will be required to expend resources on litigation does not suffice. Agencies and officials who seek to stay APA proceedings cannot demonstrate the required harm simply because they will be required to expend resources they would not have to expend if the matter were stayed. *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (describing this position as "hold[ing] no water"). As this Court has noted, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Id.* (cleaned up); *see also Asylumworks*, 2021 WL 2227335, at *6 ("[D]efendants fail to show that, absent a stay, the agency would suffer any hardship, save for the expenditure of resources in proceeding with the litigation … That burden of litigation is wholly insufficient to warrant a stay."). "This is 'particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before the Court.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (alterations omitted)).[4]

[4] Defendants also cannot rely on the fact that lifting the stay could ultimately lead to an order that requires them to produce the administrative record for the Revised Rule. *See generally* Dkt. 58, 60, & 62 (briefing on Plaintiff's motion to compel production of the administrative record); Dkt. 65 (order declining to compel Defendants to produce the administrative record while their motion to dismiss is pending). Defendants would not face any hardship if they were to be ordered to produce the record because they have already compiled it and produced it to the plaintiffs in *New York v. U.S. Department of Health & Human Services*, No. 1:20-cv-05583 (S.D.N.Y.).

Defendants understandably may be uncomfortable with defending the Revised Rule and the positions they may have to take. Indeed, the current Secretary of Health and Human Services Xavier Becerra filed a multi-state lawsuit against the Defendants challenging the Revised Rule when he was California's Attorney General and raised similar claims to the ones Plaintiffs make here. *See* Compl., *New York v. U.S. Dep't of Health & Human Servs.*, No. 1:20-cv-05583 (S.D.N.Y. filed July 20, 2020). But such discomfort is not enough to justify a stay under the circumstances here, where the Plaintiffs continue suffer harm. *Cf. Ctr. for Biological Diversity*, 419 F. Supp. 3d at 22.

## III. A STAY RISKS HARMING PLAINTIFFS, THEIR MEMBERS, AND THEIR PATIENTS.

In deciding whether to impose a stay, a court is required to consider any possible hardship to the parties and should deny a stay "[i]f there is even a fair possibility that a stay would adversely affect another party." *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137 (cleaned up). Here, a continued stay would prolong the harms that the Revised Rule has and continues to impose upon Plaintiffs, their patients, and their members every day it remains in effect.

For example, Plaintiffs' complaint specifically alleges the economic injuries the health care provider plaintiffs will suffer as a result of the Revised Rule's narrowing of covered entities under Section 1557. The May 2021 Notice of Interpretation does not address that injury. Plaintiffs also allege the Revised Rule will "result in a reduction in coverage and access to medically necessary health care for transgender and gender nonconforming patients" and this "[i]ncreased discrimination by health insurance plans will harm plaintiffs and the patients and individuals whom they serve." (Compl. ¶¶ 215, 216.) Specifically, "Plaintiffs that provide health care services will face increased costs because many private and public plans will refuse to cover medically necessary procedures" and "Plaintiffs, in turn, will be forced to either cover the costs of these

medically necessary procedures, or turn away LGBTQ patients who need these services but cannot afford to pay for them out of pocket." (*Id.* ¶ 216.)

The record evidence documents these injuries. For example, plaintiff Whitman-Walker "has large numbers of patients who require gender affirming care, including hormone therapy and affirming, supportive mental health services." (ECF No. 29-3 (Shafi Decl.) ¶ 35.) Its CEO Naseema Shafi has explained that the "narrowing of covered entities under Section 1557 will result in discrimination against LGBTQ patients, who already face disproportionate barriers to accessing appropriate care" (*id.* ¶ 28), and to "the extent that the Revised Rule results in insurance plans and insurance companies reducing their coverage of such therapies, Whitman-Walker itself—as well as [its] patients—will be directly harmed by reduced reimbursements." (*Id.* ¶¶ 28, 35.) The Court has recognized this type of economic injury as sufficient to confer standing. *See Whitman-Walker*, 2020 WL 5232076, at *16.

The Revised Rule's narrowing of covered entities, particularly when it comes to health insurers, already is leading to an expansion of categorical exclusions of coverage and denials of care for LGBTQ patients. For example, insurers are relying on the Revised Rule's narrowing of covered entities to justify their deviation from Section 1557's nondiscrimination requirements. *See, e.g.*, Mem. in Support of Def.'s Mot. to Dismiss, *Fain v. Crouch*, No. 3:20-cv-00740 (S.D. W. Va. Filed Jan. 11, 2021) (ECF No. 21), at 6-7 (relying on the Revised Rule to argue The Health Plan of West Virginia is not a covered entity under Section 1557 of the ACA); Br. in Support of Defs.' Mot. for J. on the Pleadings on Count III, *T.S. v. Heart of Cardon, LLC*, No. 1:20-cv-01699-TWP-TAB (S.D. Ind. filed Oct. 20, 2020) (ECF No. 37), at 6; Br. of Appellant, *Kadel v. N. C. State Health Plan*, No. 20-1409 (4th Cir. filed July 30, 2020) (Doc. No. 27), at 21 (arguing the

"restrictions of § 1557 do not, as of the latest interpretation from HHS, apply to the State Health Plan at all").

Plaintiffs have asserted similar harms from the Revised Rule's elimination of the prohibition on categorical exclusions—namely, they "will obtain reduced reimbursements from insurers that scale back their coverage of such treatment." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 29 (D.D.C. 2020). This Court already has recognized that "[a]n order restoring the 2016 Rule's prohibition on categorical coverage exclusions … would redress Plaintiffs' injury." *Id.* at 30. These harms are occurring right now. A review of health insurance plans for the year 2021 shows that for the first time since the ACA was enacted, "a significant increase relative to prior years" of plans containing categorical exclusions for coverage of gender affirming health care. *See* Out2Enroll, *Summary of Findings: 2021 Marketplace Plan Compliance with Section 1557* (Nov. 2020), at 1, https://perma.cc/6W53-9YGH. And, in litigation filed since the Revised Rule went into effect, health insurers have argued that "current HHS regulations explicitly permit categorical exclusion of gender-affirming treatments." Mot. to Dismiss, *C.P. v. Blue Cross Blue Shield of Ill.*, No. 3:20-cv-06145-RJB (W.D. Wash. filed Feb. 25, 2021) (ECF No. 17).

The harms from the Revised Rule's elimination of language access protections, such as the notice and tagline requirements, also continue while the Revised Rule is in effect. This Court already has recognized that "an order restoring the 2016 Rule's notice and tagline requirement would redress Plaintiffs' injury because covered entities would once again be required to provide them." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 31. That is because the Revised Rule results in Plaintiffs having to provide "costlier and more difficult treatment," since "inadequate care elsewhere leads to increased patient demand, as well as a patient pool with conditions that are

increasingly advanced at diagnosis and less responsive to treatment." *Id.* at 30. "The elimination of notice and tagline provisions once again perpetuates these concrete harms." *Id.* In addition, the Revised Rule's elimination of language-access protections continues to harm patients whose Limited English Proficiency may pose a meaningful barrier to accessing timely testing, vaccines, treatment, and contact-tracing services during the ongoing COVID-19 public health emergency. *See* Nat'l Health Law Program, Administrative Complaint regarding discriminatory provision of COVID-19 services to persons with limited English proficiency, Office of Civil Rights, U.S. Dep't of Health & Human Servs. (filed Apr. 30, 2021), available at https://healthlaw.org/wp-content/uploads/2021/04/OCR-LEP-Complaint-4-30-21-for-publication.pdf.

The promise of abstract rulemaking at some point in the future does nothing to address these harms, among others, which are happening now. A rulemaking can take years. Indeed, the 2016 Rule pertaining to Section 1557 was first proposed on September 8, 2015, following a Request for Information published in the Federal Register to solicit information on issues arising under Section 1557 on August 1, 2013. *See* 81 Fed. Reg. 31,376, 31,376 (2016). The 2016 Rule was then finalized on May 18, 2016. *Id.* Similarly, the Revised Rule was first proposed on June 14, 2019, and was not finalized until June 19, 2020. *See* 85 Fed. Reg. 37,160, 37,160- 37,161 (2020).

Although HHS has indicated it anticipates issuing a notice of proposed rulemaking in "early 2022" (Dkt. 73 at 3), it has not offered any guarantees and this timeline may be unrealistic. (Among other things, the new administration has been in place for more than six months, but a permanent director of HHS's Office of Civil Rights has yet to be named.) And even if HHS were to meet its target date for issuing a notice of proposed rulemaking, it could take a year or more to issue a final rule. A stay is inappropriate in such circumstances. *See Asylumworks*, 2021 WL

2227335, at *5 (denying a similar request to stay litigation where the agency "did not anticipate a final rule until June 2022, a year from now barring potential delays" and where "plaintiffs would continue to be subject to the challenged rules" during that period "without any resolution of their claims that these rules are unlawful"); *cf. United States v. Philip Morris USA Inc.*, 841 F. Supp. 2d 139, 141 (D.D.C. 2012) (observing that a stay of a year or more "would be both lengthy and indefinite"). Plaintiffs should not have to stand by and wait while HHS engages in years of administrative debate, consideration, and processes. Plaintiffs filed this action to obtain relief for the very real harms they are suffering now as a result of the Revised Rule.

In sum, there exists more than "a fair possibility" Plaintiffs will be affected adversely if the stay remains in place. *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137. Defendants therefore bear the burden to demonstrate "a clear case of hardship or inequity in being required to go forward." *Asylumworks*, 2021 WL 2227335, at *4. They have not met this burden.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court lift the stay of proceedings in this case and deny Defendants' request for an open-ended, indefinite stay.[5]

Dated this 26th day of July, 2021.

[5] Pursuant to Local Rule 7(m), counsel for plaintiffs consulted with counsel for Defendants in advance of filing this motion. Defendants oppose the relief requested herein.

Respectfully submitted,

LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.

By: /s/ *Omar Gonzalez-Pagan*
OMAR GONZALEZ-PAGAN*
*ogonzalez-pagan@lambdalegal.org*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: (212) 809-8585
Fax: (212) 809-0055

KAREN LOEWY**
*kloewy@lambdalegal.org*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
Phone: (202) 804-6245

CARL S. CHARLES*
*ccharles@lambdalegal.org*
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
730 Peachtree Street, N.E., Suite 640
Atlanta, GA 30308-1210
Phone: (404) 897-1880
Fax: (404) 897-1884

* Admitted *pro hac vice.*

** Admitted *pro hac vice. DC Bar admission pending.*

**** Application for admission to U.S. District Court for the District of Columbia forthcoming.*

JENNER & BLOCK LLP

By: /s/ *Laurie Edelstein*
LAURA (LAURIE) J. EDELSTEIN*
*LEdelstein@jenner.com*
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, CA 94105
Phone: (628) 267-6800
Fax: (628) 267-6859

STEPTOE & JOHNSON LLP

By: /s/ *Johanna Dennehy*
JOHANNA DENNEHY
(D.C. Bar No. 1008090)
*jdennehy@steptoe.com*
LAURA LANE-STEELE***
*llanesteele@steptoe.com*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Phone: (202) 429-3000
Fax: (202) 429-3902

MICHAEL VATIS
(D.C. Bar No. 422141)
*mvatis@steptoe.com*
KHRISTOPH A. BECKER*
*kbecker@steptoe.com*
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 506-3900
Fax: (212) 506-3950

*Attorneys for Plaintiffs*