**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| WHITMAN-WALKER | ) | |
| CLINIC, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01630-JEB |
| | ) | |
| U.S. DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFFS' MOTION TO LIFT THE STAY</u>**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................... 1

BACKGROUND...................................................................................................................... 2

LEGAL STANDARDS ............................................................................................................ 6

ARGUMENT ........................................................................................................................... 7

I.       PLAINTIFFS BEAR THE BURDEN OF SHOWING THE STAY SHOULD BE
         LIFTED ........................................................................................................................ 7

II.      PLAINTIFFS HAVE FAILED TO SHOW THAT THE STAY SHOULD BE
         LIFTED ........................................................................................................................ 9

         A.       Plaintiffs Have Not Shown that the Court's Reasons for Imposing the Stay
                  No Longer Exist.................................................................................................. 9

         B.       Plaintiffs Have Not Shown that the Court's Reasons for Imposing the Stay
                  Are Inappropriate. ...........................................................................................10

                  (1)      Courts Routinely Stay Proceedings Pending Agency
                           Reconsideration Because Doing So Serves Important Principles.............10

                  (2)      A Stay of Proceedings Need Not Terminate at a Date Certain.................13

                  (3)      Plaintiffs Will Not Suffer Undue Prejudice from Delay..........................14

                  (4)      Absent the Stay, the Government and Regulated Entities Would Be
                           Harmed .................................................................................................17

         C.       Plaintiffs' Cited Cases Do Not Support Lifting the Stay.....................................18

III.     IN THE ALTERNATIVE, THE COURT SHOULD MAINTAIN THE STAY AT
         LEAST PENDING ISSUANCE OF THE NPRM.........................................................20

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)......................................................................................12, 20

*Am. Forest Res. Council v. Ashe*,
   946 F Supp. 2d 1 (D.D.C. 2013), *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015)..............................17

*Am. Life Ins. Co. v. Stewart*,
   300 U.S. 203 (1937).......................................................................................8, 20

*\*Am Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ..................................................................11, 12

*\*Anchor Line Ltd. v. Fed. Mar. Comm'n*,
   299 F.2d 124 (D.C. Cir. 1962) ................................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................17, 18

*Asylumworks v. Mayorkas*
   Civ. A. No. 20-cv-3715 (BAH), 2021 WL 2227335 (D.D.C. June 1, 2021) ............................19

*B.J. Alan Co. v. ICC*,
   897 F.2d 561 (D.C. Cir. 1990) ....................................................................15

*Belmont Abbey Coll. v. Sebelius*,
   878 F. Supp. 2d 25 (D.D.C. 2012) ..............................................................12

*Bostock v. Clayton Cnty*,
   723 F. App'x 964 (11th Cir. 2018), *rev'd*, 140 S. Ct. 1731 (2020) .........................................2

*Center for Biological Diversity v. Ross*,
   419 F. Supp. 3d 16  (D.D.C. 2019) ..............................................................17

*Cherokee Nation of Okla. v. United States*,
   124 F.3d 1413 (Fed. Cir. 1997) ...................................................................13

*City of Arlington v. FCC*,
   569 U.S. 290 (2013)......................................................................................6

*Consumers Union of U.S. v. Miller*,
   84 F.R.D. 240 (D.D.C. 1979) .....................................................................19

*Ethyl Corp. v. Browner*,
   989 F.2d 522 (D.C. Cir. 1993) .................................................................6, 10

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 503 (2009) ........................................................................................... 6

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) .......................................................................................15

*Garcia v. Acosta*,
  393 F. Supp. 3d 93 (D.D.C. 2019) .....................................................................19

*Hulley Enters. Ltd v. Russian Fed'n*,
  211 F. Supp. 3d 269 (D.D.C. 2016) .................................................7, 13, 14, 16

*ICC v. Bhd. Of Locomotive Eng'rs*,
  482 U.S. 270 (1987)............................................................................................12

*Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*,
  920 F.2d 960 (D.C. Cir. 1990) ...........................................................................18

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ............................................................................................. 8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)............................................................................................12

*Liff v. Office of the Inspector General for the U.S. Dep't of Labor*,
  Civ. A. No. 1:14-cv-1162 (JEB), 2016 WL 4506970 (D.D.C. Aug. 26, 2016) ........... 6, 7, 9, 10

*Marsh v. Johnson*,
  263 F. Supp. 2d 49 (D.D.C. 2013) .................................................................6, 9, 10

*Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*,
  397 F. Supp. 3d 34 (D.D.C. 2019) ........................................................... 14, 15, 17

*McCarthy v. Madigan*,
  503 U.S. 140 (1992), *superseded by statute on other grounds as recognized in*,
  *Poreter v. Nussle*, 534 U.S. 516 (2002) .................................................. 11, 12, 14

*Mexichem Specialty Resins, Inc. v. EPA*,
  787 F.3d 544 (D.C. Cir. 2015) ..........................................................10, 13, 14, 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983)............................................................................................4, 6

*Naegele v. Albers*,
  355 F. Supp. 2d 129 (D.D.C. 2005) ...................................................................15

*Nat'l Ass'n of Home Builders v. EPA*,
  682 F.3d 1032 (D.C. Cir. 2012) ...............................................................4, 6, 11

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ............................................................................. 6

*Obaydullah v. Obama*,
    609 F.3d 444 (D.C. Cir. 2010) ...................................................... 9, 13

*Occidental Chemical Corp. v. FERC*,
    869 F.2d 127 (2d Cir. 1989) ........................................................ 12, 17

*Pennsylvania v. ICC*,
    590 F.2d 1187 (D.C. Cir. 1978) ......................................................... 15

*Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*,
    740 F.2d 21 (D.C. Cir. 1984) ............................................................. 12

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
    795 F.2d 90 (D.C. Cir. 1986) ............................................................. 15

*Schaffer ex rel. Schaffer v. Weast*,
    546 U.S. 49 (2005) ................................................................... 6, 7, 8

*SKF USA Inc. v. United States*,
    254 F.3d 1022 (Fed. Cir. 2001) .................................................... 10, 19

*Smith v. Pollin*,
    194 F.2d 349 (D.C. Cir. 1952) ........................................................... 11

*Stone v. INS*,
    514 U.S. 386 (1995) ......................................................................... 12

*Toilet Goods Ass'n v. Gardner*,
    387 U.S. 158 (1967) ......................................................................... 12

*United States v. Morgan*,
    313 U.S. 409 (1941) .................................................................... 10, 11

*Util. Air Regul. Grp. v. EPA*,
    320 F.3d 272 (D.C. Cir. 2003) ...................................................... 11, 12

*Va. Petroleum Jobbers Ass'n v. FPC*,
    259 F.2d 921 (D.C. Cir. 1958) ........................................................... 16

*Walker v. S. Ry. Co.*,
    385 U.S. 196 (1966) ......................................................................... 14

*Whitman-Walker Clinic, Inc v. HHS*,
    485 F. Supp. 3d 1 (D.D.C. 2020), *appeal filed*,
    No. 20-5331 (D.C. Cir. Nov. 9, 2020) .................................... 3, 16, 17, 19

*Wyo Outdoor Council v. U.S. Forest Serv.*,
   165 F.3d 43 (D.C. Cir. 1999) ..................................................................................12

*Wyoming v. Zinke*,
   871 F.3d 1133 (10th Cir. 2017) ..............................................................................11

**STATUTES**

5 U.S.C. § 706 .........................................................................................................2, 3

**RULES**

D.C. Cir. Rule 41 .........................................................................................................5

**REGULATIONS**

45 C.F.R. § 92.4 ........................................................................................................16

45 C.FR. § 92.6 .........................................................................................................16

45 C.F.R. § 92.207 ......................................................................................................2

Exec. Order No. 13,985,
   86 Fed. Reg. 7009 (Jan. 25, 2021) ............................................................................4

Exec. Order No. 13,988,
   86 Fed. Reg. 7023 (Jan. 25, 2021) .......................................................................3, 4

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of
   Authority,
   85 Fed. Reg. 37,160 (June 19, 2020) .........................................................................2

Nondiscrimination in Health and Health Education Programs or Activities, Proposed Rule,
   84 Fed. Reg. 27,846 (June 14, 2019) .........................................................................2

Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act
   and Title IX of the Education Amendments Act of 1972,
   86 Fed. Reg. 27,984 (May 25, 2021) .........................................................................5

v

## INTRODUCTION

"[W]hen an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency." *Anchor Line Ltd. v. Fed. Mar. Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962). Accordingly, on February 16, 2021, the parties jointly moved this Court to stay proceedings in this case "pending the new administration's review of this litigation and the rule being challenged because that review may result in changes that render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow this issues significantly." ECF No. 70 ¶ 6 ("Joint Mot. to Stay Proceedings"). The parties sought that stay after this Court had already issued a decision on Plaintiffs' motion to preliminarily enjoin all of the provisions of the challenged action pending judicial review. In other words, with the issue of preliminary relief resolved, the parties asked this Court to pause this case while the new administration considered steps that might moot the case, or at least substantially alter the claims that the parties would otherwise continue to litigate to final judgment.

Plaintiffs now seek to have litigation in this Court proceed on a parallel track to the agency's ongoing reconsideration of the rule they challenge. That approach would not be an efficient use of the parties' or this Court's resources. Plaintiffs have not shown that circumstances have changed since the Court granted the joint stay motion such that the reasons for imposing the stay no longer exist or are inappropriate. The agency is exploring its substantial and legitimate concerns with the 2020 Rule—its need to ensure that the 2020 Rule's provisions adequately advance the Administration's polices—and working to promulgate a new rule as soon as possible while still ensuring that it complies with the Administrative Procedure Act ("APA")'s procedural and substantive requirements for reasoned decision making. Important principles of judicial and party economy, judicial restraint, and respect for the integrity of the administrative process, outweigh any prejudice to Plaintiffs. In short, Plaintiffs have not met their burden to show that the stay should be lifted.

1

# BACKGROUND

On June 12, 2020, the United States Department of Health and Human Services ("HHS") issued a Final Rule modifying regulations implementing Section 1557 of the Affordable Care Act ("ACA") ("Section 1557").  Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160, 37,248 (June 19, 2020) ("2020 Rule"). These modifications largely became effective on August 18, 2020.  *Id.* at 37,160.

Many of HHS's changes reflect its decision not to proceed by rulemaking.  For example, the agency declined to include a definition of "on the basis of sex" by rule "[b]ecause of the likelihood that the Supreme Court will be addressing the issue" of whether sex discrimination encompasses gender identity discrimination "in the near future." Nondiscrimination in Health and Health Education Programs or Activities, Proposed Rule, 84 Fed. Reg. 27,846, 27,857 & n.75 (June 14, 2019) (citing *Bostock v. Clayton Cnty*, 723 F. App'x 964 (11th Cir. 2018), *rev'd*, 140 S. Ct. 1731 (2020)).  HHS also repealed former 45 C.F.R. § 92.207's explicit examples of discriminatory practices in the provision and administration of health related insurance and replaced them with a general prohibition on discrimination, repealed certain notice and tagline requirements and replaced them with a requirement that all covered entities take reasonable steps to ensure meaningful access to their programs and activities by limited English proficient individuals, and determined not to take a position by rule regarding whether Section 1557 encompasses discrimination on the basis of association or includes a private right of action.

On June 22, 2020, Plaintiffs filed a complaint challenging all of the 2020 Rule's modifications to HHS's Section 1557 regulations.  *See* Complaint, ECF No. 1.  All of Plaintiffs' claims are brought under the Administrative Procedure Act ("APA").  *See id.* ¶¶ 225-302. [1] Specifically, Plaintiffs claim that each of the changes were either arbitrary and capricious or otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A), *id.* ¶¶ 225-50, in excess of statutory authority in violation of 5 U.S.C. § 706(2)(C), *id.* ¶¶ 251-58, or contrary to

---

[1] Plaintiffs also brought a claim titled "[e]quitable [r]elief to [p]reserve [r]emedy." Compl. ¶¶ 303-07.

constitutional right, power, privilege, or immunity in violation of 5 U.S.C. § 706(2)(B), *id.* ¶¶ 259-302.

On July 9, 2020, Plaintiffs filed a motion for a preliminary injunction, seeking to preliminarily enjoin all of the 2020 Rule's modifications to HHS's Section 1557 regulations from taking effect. ECF No. 29. This Court decided the motion on September 2, 2020, and issued a thorough opinion. *Whitman-Walker Clinic, Inc v. HHS*, 485 F. Supp. 3d 1, 10 (D.D.C. 2020), *appeal filed*, No. 20-5331 (D.C. Cir. Nov. 9, 2020). The Court diligently worked through "the multiple issues [Plaintiffs] raise" in this case "and their ability to do so" which "pose myriad thorny questions that require extensive analysis." *Id.* The Court found that "Plaintiffs have standing to level challenges . . . and that they are likely to succeed (and [to] suffer irreparable harm) on [only] two . . . claims: first, that the 2020 Rule arbitrarily and capriciously eliminated 'sex stereotyping' from the prior Rule's definition of discrimination 'on the basis of sex'; and second, that it improperly incorporated Title IX's exemption of certain religious organizations from the statute's nondiscrimination mandate." *Id.* The Court found that Plaintiffs either lacked standing or were not likely to succeed in their challenges to the remaining regulatory changes in the 2020 Rule. *Id.*

After the parties completed briefing on Defendants' motion to dismiss, on January 20, 2021, Joseph R. Biden, Jr. took office as President of the United States. That same day, the President issued Executive Order 13988: Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation. 86 Fed. Reg. 7,023, 7,023 (Jan. 25, 2021) ("EO 13988"). In section 1, EO 13988 explained that "[u]nder *Bostock*'s reasoning, laws that prohibit sex discrimination—including Title IX of the Education Amendments of 1972, as amended . . . along with their respective implementing regulations—prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the contrary." *Id.* Section 1 further explained that "[i]t is the policy of [the Biden] Administration to prevent and combat discrimination on the basis of gender identity or sexual orientation, and to fully enforce Title VII and other laws that prohibit discrimination on the basis of gender identity or sexual orientation." *Id.* Section 2 of EO 13988 required "[t]he head of each agency" to

3

"consider whether to . . . promulgate new agency actions, as necessary to fully implement statutes that prohibit sex discrimination and the policy set forth in section 1 of th[e] order." *Id.* at 7,023-24.

On January 20, 2021, President Biden also issued Executive Order 13985: Advancing Racial Equity and Support for Underserved Communities Through the Federal Government. 86 Fed. Reg. 7,009, 7,009 (Jan. 25, 2021) ("EO 13985"). In section 1, EO 13985 explained that it is "the policy of [the Biden] Administration that the Federal Government should pursue a comprehensive approach to advancing equity for all, including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality." *Id.* Section 1 further provided that "each agency must assess whether, and to what extent, its programs and policies perpetuate systemic barriers to opportunities and benefits for people of color and other underserved groups." *Id.*

On and after January 20, 2021, new leadership also began arriving at HHS. Recognizing that "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1043 (D.C. Cir. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part)), new HHS leadership began to reconsider the challenged rule on its own initiative, Joint Mot. to Stay Proceedings, ¶¶ 4, 6. Because of the need to respect the integrity of the administrative process, the D.C. Circuit has directed that "when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency." *Anchor Line Ltd.*, 299 F.2d at 125. On February 16, 2021, the parties jointly did just that, moving the Court to "stay further district court proceedings pending the new administration's review of this litigation and the rule being challenged because that review may result in changes that render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow those issues significantly." Joint Mot. to Stay Proceedings, ¶ 6. The parties' motion recognized the

4

benefits of staying proceedings over voluntary remand, as "Defendants will continue to adhere to this Court's [preliminary injunction] order," which "will remain in effect" pending agency reconsideration proceedings. *Id*. ¶ 5.[2]

As reported in the first Joint Status Report, agency proceedings had substantially progressed by May 14, 2021. ECF No. 71. First, HHS reported that its ongoing reassessment had raised substantial and legitimate policy concerns with the challenged Rule that HHS intends to address in a Section 1557 rulemaking proceeding. *Id*. at 2. Second, HHS reported that it had issued a Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments Act of 1972. *Id*. at 2; 86 Fed. Reg. 27,984, 27,984 (May 25, 2021). The Notification provided that "[c]onsistent with the Supreme Court's decision in *Bostock* and Title IX, beginning [May 10 2021], OCR will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) Discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity." *Id*. at 27,985.

In the second Joint Status Report, HHS explained that the Civil Rights Division of the Department of Justice had been closely collaborating with the HHS Office for Civil Rights as part of the agency's efforts to reconsider the 2020 Rule and promulgate a new Section 1557 rule. ECF No. 73 at 2. HHS also described how it has held a listening session with stakeholders, to consider specific recommendations for the new rule, including recommendations from Plaintiff-affiliate Whitman-Walker Institute. *Id*. Finally, HHS reported that, as a result of diligent efforts, it anticipates issuing a Notice of Proposed Rulemaking ("NPRM") in about six months—early 2022. *Id*.

Plaintiffs now move to lift the stay, even though the agency's reconsideration of the challenged rule remains ongoing. ECF No. 74 ("Mot. to Lift Stay").

---

[2] The functional distinction between a stay and remand is that the Court does not retain jurisdiction when a matter is remanded to the agency. *Cf*. D.C. Cir. Rule 41(b) ("If the case is remanded, this court does *not* retain jurisdiction, and a new . . . petition for review will be necessary if a party seeks review of the proceedings conducted on remand." (emphasis added)).

## LEGAL STANDARDS

Agencies have inherent authority to reconsider past decisions and to revise, replace, or repeal a decision to the extent permitted by law and supported by a reasoned explanation, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 503, 515 (2009); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42, including the authority to correct or modify a prior rule by selecting a new policy in the range of those that lie "within the bounds of reasonable interpretation," *see City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). Further, an agency's regulations implementing a statute it administers are not "carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . . a change in administrations." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) (citations omitted). "A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations. . . . [I]t is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration." *Nat'l Ass'n of Home Builders*, 682 F.3d at 1043 (citation omitted).

"[W]hen an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency[.]" *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 n.3 (D.C. Cir. 1993) (quoting *Anchor Line Ltd.*, 989 F.2d at 125). "Once a stay is imposed, the Court may lift it '[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate.'" *Liff v. Office of the Inspector General for the U.S. Dep't of Labor*, Civ. A. No. 1:14-cv-1162 (JEB), 2016 WL 4506970, at *2 (D.D.C. Aug. 26, 2016) (Boasberg, J.) (quoting *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2013)). "[T]he burden of persuasion [for lifting a stay] lies where it usually falls, upon the party seeking [the] relief." *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005) (discussing burdens of persuasion generally).

## ARGUMENT

### I.   PLAINTIFFS BEAR THE BURDEN OF SHOWING THE STAY SHOULD BE LIFTED

The Court already stayed the case in February when it issued a Minute Order stating that "[t]he case is STAYED[.]" Minute Order (Feb. 16, 2017); *see also* Minute Order (May. 17, 2021) ("The Stay shall *remain in effect.*") (emphasis added). Plaintiffs, accordingly, bear the burden of demonstrating that the stay should be lifted. *See Schaffer*, 546 U.S. at 57-58; *Liff*, 2016 WL 4506970, at *2. Yet throughout their motion, Plaintiffs erroneously suggest that there is a motion to stay proceedings pending before the Court and that *Defendants* have failed to carry their burden to stay proceedings. For example, Plaintiffs cite Defendants' section of a joint status report and say that Defendants' statements there were made as part of a "request for an indefinite stay." Mot. to Lift Stay at 9 (citing ECF No. 73 at 2). But the quoted language is not argument in support of a stay of proceedings. The Court requested that the parties file a status report by May 14, 2021, *see* Minute Order (Feb. 16, 2021), and then file another one by July 16, 2021, *see* Minute Order (May 17, 2021). Status reports are for "advising the Court of the status of [the parallel p]roceedings" to ensure that they are moving along while the case remains stayed. *See Hulley Enters. Ltd v. Russian Fed'n*, 211 F. Supp. 3d 269, 288 (D.D.C. 2016). Defendants' report as to the status of the agency's reconsideration is not a new "request" by Defendants to stay the litigation, which would make little sense given that the case has already been stayed.

Elsewhere in their brief, Plaintiffs acknowledge that the parties agreed that the Court should "stay further district court proceedings pending the new administration's review of this litigation and the rule being challenged because that review may result in changes that render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow those issues significantly." Mot. to Lift Stay, at 5 (quoting ECF No. 70 at 3) (emphasis omitted). Having agreed that proceedings should be stayed pending the agency's reconsideration, Plaintiffs cannot now claim that Defendants failed to carry the burden to obtain a stay. Plaintiffs "gave that possibility away" in jointly moving to stay the case. *See Am. Life Ins.*

7

*Co. v. Stewart*, 300 U.S. 203, 216 (1937); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.").

Nor can Plaintiffs reasonably contend that they moved jointly with Defendants for something other than a stay pending "the new administration's review of . . . the rule being challenged because that review may result in changes that render it unnecessary . . . to resolve the jurisdictional and merits issued presented . . . ." Joint Mot. to Stay Proceedings, ¶ 6. Plaintiffs' reference to the Massachusetts district court's denial of a stay in another pending challenge to the 2020 Rule, *see* Mot. to Lift Stay at 2 (citing Order, *BAGLY v. HHS*, 1:20-cv-11297-PBS (D. Mass. May 10, 2021) (ECF No. 48)), is odd given that the *opposed* motion to stay proceedings that Defendants filed in that case is nearly identical to the *joint* request to stay that Plaintiffs and Defendants filed here, *compare* ECF No. 70, *with*, Motion for a Stay of Proceedings, *BAGLY v. HHS*, 1:20-cv-11297 (D. Mass. Mar. 3, 2021) (ECF No. 41), and Opposition to Defendants' Motion for a Stay of Proceedings, *BAGLY v. HHS*, 1:20-cv-11297 (D. Mass. Mar. 17, 2021) (ECF No. 42). And in another case challenging provisions of the 2020 Rule, *Chinatown Service Center et. al. v. HHS*, the parties agreed to stay for a definite time period—something Plaintiffs did not seek here. *See* Joint Motion to Stay Proceedings, 1-21-cv-331 (D.D.C. May 26, 2021) (ECF No. 18) (jointly moving the Court to "stay proceedings in this case until July 16, 2021, and suspend Defendants' time to respond to the Complaint until further order of the Court"). The Court's order in that case, accordingly, set a date for the stay to expire. *Compare* Minute Order, *Chinatown Serv. Ctr. v. HHS*, 1-21-cv-331 (D.D.C. May 27, 2021) ("The Court ORDERS that . . . [t]he case is STAYED until July 16, 2021"), *with* Minute Order (Feb. 16, 2021).

The Court should reject Plaintiffs' effort to recast the parties' joint motion to stay this case "pending the new administration's review of this litigation and the rule being challenged," Joint Mot. to Stay Proceedings, ¶ 6, into a request for a more limited stay. Correspondingly, the Court should place the burden for demonstrating that the extant stay should be lifted on Plaintiffs. *See Schaffer ex rel. Schaffer*, 546 U.S. at 57-58 (discussing burdens of persuasion generally).

## II.   PLAINTIFFS HAVE FAILED TO SHOW THAT THE STAY SHOULD BE LIFTED

The Court may lift the agreed-upon stay "'[w]hen circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate.'" *Liff*, 2016 WL 4506970, at *2 (quoting *Marsh*, 263 F. Supp. 2d at 52). Because Plaintiffs have failed to make either of these showings, the Court should deny their motion.

### A. Plaintiffs Have Not Shown that the Court's Reasons for Imposing the Stay No Longer Exist

Plaintiffs acknowledge that the parties jointly "asked the Court to 'stay further district court proceedings pending the new administration's review of this litigation and the rule being challenged because that review may result in changes that render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow those issues significantly." Mot. to Lift Stay at 5 (emphasis and citation omitted). Plaintiffs have failed to demonstrate that this reason is no longer valid.[3] They simply assert that the "reassessment period has passed." *Id*. at 8. It has not. *See* Declaration of Robinsue Frohboese ("Frohboese Decl.") ¶¶ 6-13 (attached as Exhibit 1). In fact, Plaintiff-affiliate Whitman-Walker Institute has been participating in the agency's reconsideration proceedings, advocating for a number of policies it believes should replace the 2020 Rule. *See* Memorandum Re: Section 1557 of the Affordable Care Act, The Leadership Conference on Civil and Human Rights (June 8, 2021) (attached as Exhibit 2).

Plaintiffs say that "[t]he new administration has had six months to evaluate how to proceed." Mot. to Lift Stay at 8. But Plaintiffs provide no analysis as to why agency reconsideration of each of the challenged policies in the 2020 Rule—in such a manner that may "render it unnecessary for the court to resolve the jurisdictional and merits issues presented in this case or, at the very least, narrow those issues significantly," *id*. at 5—should be completed in six months. In fact, HHS's anticipated time frame for issuing the NPRM is fast-paced in proportion

---

[3] When a Court gives no reasons for an order, it is proper to look to "the reasons advanced at that time by the" movants. *See Obaydullah v. Obama*, 609 F.3d 444, 447-48 (D.C. Cir. 2010).

"to the gravity and complexity of the rulemaking." *Cf. Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). In *Mexichem*, the D.C. Circuit found that EPA's reconsideration of a less complex rule that set emissions limits for PVC production would reasonably "take about four years, a duration commensurate with that of EPA's prior efforts to set emissions limits for PVC production." *Id*. Here, Plaintiffs express concern that HHS's anticipated rulemaking may take the same period of time as prior Section 1557 rulemakings. *See* Mot. to Lift Stay at 17. For example, the 2020 Rule "was first proposed on June 14, 2019, and was not finalized until June 19, 2020." *Id*. Plaintiffs have provided no indication that the agency's reconsideration is unreasonably prolonged or delayed in such a manner that the Court's reasons for imposing the stay no longer exist.

## B. Plaintiffs Have Not Shown that the Court's Reasons for Imposing the Stay Are Inappropriate.

Plaintiffs also fail to show that the "'reasons for imposing the stay . . . are inappropriate.'" *Liff*, 2016 WL 4506970, at *2 (quoting *Marsh*, 263 F. Supp. 2d at 52). The parties' joint motion to "hold the case in abeyance pending reconsideration by the agency" of the challenged rule is an established alternative "to remand." *See Ethyl Corp.*, 989 F.2d at 524 n.3 (quoting *Anchor Line Ltd.*, 299 F.2d at 125). And "if the agency's concern" with the challenged action being reconsidered "is substantial and legitimate, a remand [or stay] is usually appropriate." *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001); *Ethyl Corp.*, 989 F.2d at 524 n.3; *Anchor Line Ltd*, 299 F.2d at 125. Because Plaintiffs have not shown that the parties' joint motion was "frivolous or in bad faith," *see SKF USA Inc.*, 254 F.3d at 1029, they have not established that the stay is inappropriate.

### (1) Courts Routinely Stay Proceedings Pending Agency Reconsideration Because Doing So Serves Important Principles

Staying proceedings when an agency is reconsidering the challenged action is prudent and appropriate because "the integrity of the administrative process must be [as] equally respected" as the integrity of the judicial process. *United States v. Morgan*, 313 U.S. 409, 422 (1941). Agencies and reviewing courts "are to be deemed collaborative instrumentalities of justice and the

appropriate independence of each should be respected by the other." *Id.*; *see Anchor Line Ltd.*, 299 F.2d at 125 n.2 (citing *Smith v. Pollin*, 194 F.2d 349, 350 (D.C. Cir. 1952)) (comparing a stay of proceedings pending agency reconsideration of a challenged decision to a stay of appellate proceedings while a district court considers a motion for a new trial while the appeal is still pending). This Court's stay "recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) *superseded by statute on other grounds as recognized in Porter v. Nussle*, 534 U.S. 516 (2002). It also "acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers[.]" *Id*. Indeed, the principle that courts should defer to an agency requesting an opportunity to reconsider its action administratively is strongest when the reconsideration is "brought about by the people casting their votes[.]" *See Nat'l Ass'n of Home Builders*, 682 F.3d at 1043 (citation omitted).

Contrary to Plaintiffs' suggestion, courts often defer judicial review of a final rule while an agency undertakes reconsideration proceedings. *See, e.g.*, Per Curiam Order, *West Virginia v. EPA*, No. 15-1363 (and consolidated cases) (D.C. Cir. Apr. 27, 2017) Document #1673071 (granting EPA's motion to hold challenges to Clean Power Plan in abeyance pending reconsideration); Judge Order, *Arkansas v. EPA*, No. 16-4270 (and consolidated cases) (8th Cir. Jan. 4, 2018) Document #4616817 (granting EPA's motion to hold challenges to the agency's action pending reconsideration and settlement discussions); Order, *Dalton Trucking, Inc. v. EPA*, No. 13-74019 (9th Cir. Jan. 9, 2018), Document #10717799 (granting motion to stay proceedings pending reconsideration proceedings); *cf. Wyoming v. Zinke*, 871 F.3d 1133, 1141-46 (10th Cir. 2017) (dismissing appeal, vacating district court's opinion, and dismissing underlying challenge to regulation as prudentially unripe in light of ongoing administrative reconsideration); *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386-87 (D.C. Cir. 2012); *Util. Air. Regul. Grp. v. EPA*, 320

F.3d 272, 279 (D.C. Cir. 2003); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 38-39 (D.D.C. 2012) (Boasberg, J.).

Plaintiffs suggest that the agreed-upon stay "den[ies] [them] the judicial review that the Administrative Procedure Act . . . guarantees." Mot. to Lift Stay at 1. But Plaintiffs are not entitled to immediate judicial review of an agency action when there is good reason for delay. *See McCarthy*, 503 U.S. at 144 (describing doctrines "that govern the timing of federal-court decisionmaking"); *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 165-66 (1967); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Indeed, permitting Plaintiffs' concerns to be addressed in the context of HHS's new rulemaking process promotes important jurisprudential interests as well. "In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process." *Am. Petroleum Inst.*, 683 F.3d at 386-87 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)); *see also Occidental Chemical Corp. v. FERC*, 869 F.2d 127, 129 (2d Cir. 1989) ("Were the Court to intervene at this stage," despite a pending rulemaking process, "we would deny the agency an opportunity to correct its own mistakes if any and to apply its expertise.") (quotation omitted); *Belmont Abbey Coll.*, 878 F. Supp. 2d at 38-39 (Boasberg, J.) (concluding rulemaking challenge not ripe for review where "the Court has before it a challenge to final regulations that Defendants have promised to amend"). Allowing the administrative process to run its course here will let HHS "crystalliz[e] its policy before that policy is subjected to judicial review," *Wyo Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and perhaps "unnecessary" "piecemeal review," *Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation omitted).[4]

---

[4] Although the APA "relieve[s] parties from the *requirement* of petitioning for rehearing before seeking judicial review" it does not prevent reconsideration "from rendering the [agency action] under reconsideration nonfinal." *Stone v. INS*, 514 U.S. 386, 391 (1995) (quoting *ICC v. Bhd. Of Locomotive Eng'rs*, 482 U.S. 270, 284-85 (1987)).

### (2) A Stay of Proceedings Need Not Terminate at a Date Certain

Plaintiffs claim that the stay's termination upon completion of the agency's reconsideration—instead of upon a date certain—renders it inappropriate. Mot. to Lift Stay. But "[t]he power of a federal [] court to stay its proceedings, even for an indefinite period of time, is beyond question." *See Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). The D.C. Circuit has provided no indication that an agency must provide a date certain by which it will complete agency reconsideration when it moves a court to hold a case in abeyance pending reconsideration.

Moreover, Plaintiffs have failed to show that HHS is engaged in unreasonable delay. Contrast this case with, for example, *Obaydullah v. Obama,* 609 F.3d 444, 448 (D.C. Cir. 2010). There, a district court granted a stay of a habeas proceeding in June 2008 pending a military commission proceeding, but by June 2010 "a trial before a military commission [was still] only a possibility and only at some unspecified time in the future," and the plaintiff's liberty interests were at stake. *Id.* Here, HHS is revising the regulations implementing Section 1557, which is reflected in the 2021 Spring Unified Agenda of Federal Regulatory and Deregulatory Actions with an anticipated NPRM to be issued no later than April 2022. Frohboese Decl. ¶ 7. Plaintiffs have provided no reason to believe that the rulemaking process will take longer than prior Section 1557 Rulemakings. *See Mexichem Specialty Resins, Inc.*, 787 F.3d at 555.

Courts in this district have stayed proceedings for longer periods of time, and in cases that lacked the important considerations—like deference to Congress's delegation of authority to an agency or the principle that an agency should have an opportunity to revisit its action before judicial review—that are present here. For example, in *Hulley Enterprises Ltd. v. Russian Federation*, 211 F. Supp. 3d 269 (D.D.C. 2016), the court issued a stay "pending the resolution of [certain] proceedings . . . in the Court of Appeal of The Hague" based on a "representation that those proceedings will conclude within two and a half years." *Id.* at 288. As the *Hulley Enterprises* court explained, the length of the stay justified the filing of status reports advising the Court of the status of the parallel proceeding every six months "lest the stay become 'immoderate' in the face

13

of protracted proceedings in The Hague." *Id.*; *see* ECF Nos. 71, 73.  And in *Mexichem Specialty Resins*, when the integrity of the administrative process was at stake, the D.C. Circuit deferred judicial review for "about four years" pending agency reconsideration of a rule.  787 F.3d at 555; *see also McCarthy*, 503 U.S. at 145 (describing several important "notion[s]" at issue).  Here, however, Plaintiffs do not face anything approaching a "possible delay of 10 years in administrative proceedings[.]"  *See id.* at 147 (citing *Walker v. S. Ry. Co.*, 385 U.S. 196, 198 (1966) (per curiam)).

### (3) Plaintiffs Will Not Suffer Undue Prejudice from Delay

"In deciding whether to grant a stay, courts generally 'weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties."  *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of* Spain, 397 F. Supp. 3d 34, 39 (D.D.C. 2019) (Boasberg, J.) (citation omitted).  Here, the Court issued the current stay in February upon joint motion from the parties.  Plaintiffs now argue that the stay will cause them harm.  Mot. to Lift Stay at 14-18.  Even assuming that the Court should consider this factor six months after Plaintiffs requested the stay, *but see supra* at 7-8, Plaintiffs will not suffer undue prejudice or harm from delay for several reasons: (1) HHS is considering the issues Plaintiffs raise in its reconsideration of the 2020 Rule, and there is no reason to believe that they are more likely to obtain the relief they seek at all—let alone obtain it more quickly—in this litigation than by proceeding before the agency; (2) this Court has already enjoined all provisions of the 2020 Rule other than those that Plaintiffs lack standing to challenge or are unlikely to succeed in challenging, and (3) the Court's stay does not deprive Plaintiffs of numerous avenues for seeking relief directly against the participants in the health system that might cause them harm.

First, Plaintiffs cannot show prejudice from delay because HHS may revise or replace the 2020 Rule in a way that resolves Plaintiffs' claims.  For example, Plaintiffs claim that "HHS failed to give [sufficient] weight [to] . . . medical consensus . . . that gender-affirming care for dysphoria is safe, effective, and medically necessary in appropriate circumstances.'"  Pls.' Opp'n to Defs.' Mot. to Dismiss, at 22-23, ECF No. 66 (citation omitted).  Because this Court "may not substitute

its own policy judgment for that of the agency," *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), these issues and others are best addressed as part of HHS's reconsideration of the 2020 Rule. That reconsideration is based its substantial and legitimate interest in ensuing that the 2020 Rule's provisions adequately advance the Administration's policy as articulated in EO 13988 that "people should be able to access healthcare . . . without being subjected to sex discrimination," including discrimination against individuals because of their sexual orientation or gender identity. Frohboese Decl. ¶¶7-9, 11-12. Addressing "essentially the same issues in two separate forums is not in . . . the parties' best interests." *Masdar Solar & Wind Cooperatief U.A.*, 397 F. Supp. 3d at 40 (quoting *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005)).

Plaintiffs note that "Defendants . . . cannot provide [total] clarity as to whether or how the rulemaking will affect Plaintiffs' claims," Mot. to Lift Stay at 9-10, but that is not surprising given Defendants' obligation under the APA to take and consider comment on a proposed rule before finalizing it. In any event, it is Plaintiffs that must "demonstrat[e] that the agency will certainly, or even probably, deny relief." *See Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 106-07 (D.C. Cir. 1986) (cited in *Mexichem*, 787 F.3d at 555). Given the recent Executive Orders explaining that it is the policy of the Biden Administration to prevent and combat discrimination on the basis of gender identity and to pursue a comprehensive approach to advancing equity for all, including people who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality, *see supra* at 4, Frohboese Decl. ¶¶ 8-9, 12-13, Plaintiffs' speculation that the rulemaking will not resolve or substantially narrow their claims is no basis for addressing these matters on parallel tracks. Plaintiffs also assert that "Defendants . . . cannot guarantee[] that a rulemaking will proceed on any particular timeline," Mot. to Lift Stay at 9, but that also is not surprising given the many complex issues to be addressed and the need to consider public comment. In any event, the D.C. Circuit has repeatedly recognized that "[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts." *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Pennsylvania v. ICC*, 590 F. Supp. 1187, 1194 (D.C. Cir.

1978)).  The Court could continue to order the agency to provide status reports during the period of the stay to ensure that the rulemaking is progressing.  *See Hulley Enters. Ltd.*, 211 F. Supp. 3d at 288.

Second, Plaintiffs cannot show undue prejudice because this Court already resolved their motion for preliminary injunction, which addressed all of the provisions of the 2020 Rule that Plaintiffs challenge.  The Court granted the motion in part and denied it in part.  *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020).  Plaintiffs cannot show harm from the provisions of the 2020 Rule that this Court has enjoined, because that injunction will stay in place during the stay of litigation.  *See* Joint Mot. to Stay Proceedings ¶ 5 (agreeing that "[t]he preliminary injunction in this case enjoining the repeal of the definition of discrimination 'on the basis of sex' insofar as it includes 'discrimination on the basis of sex stereotyping,' as previously set forth in 45 C.F.R. § 92.4, and the incorporation of the religious exemption in Title IX, *see* 45 C.FR. § 92.6(b), contained in the 2020 Rule will remain in effect and Defendants will continue to adhere to this Court's order dated September 2, 2020, ECF No. 55").

Nor can Plaintiffs show prejudice from the stay of litigation because of the provisions of the 2020 Rule that are in effect, given this Court's decision not to enjoin them.  This Court determined that Plaintiffs either lack standing to press claims challenging those provisions[5] or else that Plaintiffs are not likely to succeed on the merits of those claims.  *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 31-34, 46-53.  "Without . . . a substantial indication of probable success, there would be no justification for the court's intrusion into the ordinary processes of administration" advanced by a stay pending agency reconsideration.  *Cf. Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958); *see Anchor Line Ltd.*, 299 F.2d at 125.

---

[5] The only evidence Plaintiffs cite regarding alleged personal hardship is a witness declaration they submitted in support of their motion for preliminary injunction predating the effective date of the 2020 Rule.  Mot. to Lift Stay at 15.  The Court already addressed that evidence.  *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 31-32 (citing Shafi Decl.).

> **(4) Absent the Stay, the Government and Regulated Entities Would Be Harmed**

Plaintiffs attempt to minimize the hardship to the government of managing five challenges to the 2020 Rule at the same time that the agency is promulgating a new rule. Mot. to Lift Stay at 13. But HHS's resources are limited, and the same agency counsel that are working with the Department of Justice on the 2020 Rule litigation are also advising the agency on the new rulemaking. Thus, ongoing litigation would likely interfere with HHS's rulemaking, as HHS would have to prioritize pending litigation deadlines. Frohboese Decl. ¶ 14. As one court in this district has recognized, "forcing [the agency] to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies." *Am. Forest Res. Council v. Ashe*, 946 F Supp. 2d 1, 43 (D.D.C. 2013), *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (explaining that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government."); *Occidental Chemical Corp.*, 869 F.2d at 129 (noting that "a judicial decision at this time would merely impede the agency's efforts to complete its rulemaking proceedings . . ."). Defendants "will undeniably be burdened by having to" address the 2020 Rule "in two forums." *Masdar Solar & Wind Cooperatief U.A.*, 397 F. Supp. 3d at 40.

Plaintiffs cite this Court's decision in *Center for Biological Diversity v. Ross*, 419 F. Supp. 3d 16 (D.D.C. 2019), *see* Mot. to Lift Stay at 13, in which the Court found that an agency could not "explain how defense of this suit, which falls largely to lawyers at the Department of Justice, will divert substantial [agency] resources." 419 F. Supp. 3d at 21-22. But Defendants respectfully submit that HHS has provided extensive assistance to DOJ in litigating this case and would be required to continue doing so if the stay were lifted. As this Court previously noted, the issues in this case are "daunting" and "pose myriad thorny questions that require extensive analysis." *Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 10. It also stands to reason that, if DOJ is required to litigate the merits of a rule that HHS is simultaneously reconsidering, HHS will need to be

17

involved.  These litigation duties would represent a "substantial diversion" of HHS resources from preparing the NPRM.  *See Iqbal*, 556 U.S. at 685; *see also* Frohboese Decl. ¶ 14.  "If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require" these diversions.  *See Iqbal*, 556 U.S. at 685.[6]

Plaintiffs also do not address the potentially disruptive impact on regulated entities if the Court were to entertain proceeding with the litigation while the agency is simultaneously engaged in new rulemaking.  If Plaintiffs were to prevail and obtain vacatur of additional provisions of the 2020 Rule, the 2016 Rule would be revived only for so long as it takes the agency to issue its new rule (assuming it had not already done so before any litigation concluded).  Requiring regulated parties to transition from the 2020 Rule, to the 2016 Rule, and then to the agency's new rule would likely be disruptive.  And the Court should avoid "the disruptive consequences of an interim change that may itself be changed."  *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990).

### C.  Plaintiffs' Cited Cases Do Not Support Lifting the Stay

Plaintiffs rely on several non-binding district court cases in their effort to undermine the institutional interests that favor maintaining the stay.  Mot. to Lift Stay at 10-12.  But Plaintiffs rely on cases where, unlike this case, the agency's rulemaking was theoretical or where a reconsideration was equally likely to address a plaintiff's concerns as not to address them.  Plaintiffs cite no case involving the same number of complex claims as Plaintiffs raise here.  More importantly, Plaintiffs cite no case that addresses claims that had already been subject to the kind of thorough preliminarily review this Court has provided.  None of Plaintiffs' cases involved a court that had already preliminarily granted relief on all claims other than those that a plaintiff

---

[6]  Plaintiffs also have indicated that they anticipate seeking attorneys' fees, costs, and expenses.  Compl. Prayer for Relief.  It makes no sense to permit Plaintiffs to continue to generate legal fees that they hope to recover from taxpayers when the agency is simultaneously working to promulgate a new rule based in part on the same concerns with the rule that Plaintiffs have.  Frohboese Decl. ¶¶ 6-9; 11-14.

could not establish standing to press or a likelihood of success in pursuing. *Whitman-Walker-Clinic, Inc.*, 485 F. Supp. 3d at 31-34, 46-53.

Plaintiffs' reliance on *Asylumworks* is particularly misplaced. The *Asylumworks* court found that "neither [the agency's] tentative plan nor defendants' filings in [the] case provide[d] any indication that [the agency] plans to alter or repeal either of [the challenged] rules and thus exposes defendants' argument that the rulemaking 'may moot or reshape the claims in this case' as entirely theoretical." *Asylumworks v. Mayorkas*, Civ. A. No. 20-cv-3715 (BAH), 2021 WL 2227335, at *5 (D.D.C. June 1, 2021). But the prospect of rulemaking that moots Plaintiffs' claims here is far from theoretical. Defendants have explained the substantial and legitimate concerns driving the agency's reconsideration process, which make lifting the stay inappropriate. Frohboese Decl. ¶¶ 6-9, 12-13. *See SKF USA*, 254 F.3d at 1029; *Anchor Line Ltd.*, 299 F.2d at 125. What is more, the *Asylumworks* court found "the DHS Secretary's ratification of the [challenged] Rule" to be "significant[]" and an "endorsement of the challenged rule that belies defendants' argument that the results of the rulemaking could alter plaintiffs' claims." 2021 WL 2227335, at *5. No such factor exists here.

Similarly, in *Garcia v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019), the court was troubled by the lack of concrete evidence of substantial and legitimate interests driving agency reconsideration. *Id*. at 106. The *Garcia* court explained that without such evidence, "the existing, binding regulations" were hardly "in 'flux.'" *Id*. Moreover, the *Garcia* court considered the government's representation that the agency "was required to complete its review of the NPRM by the end of May 2019" but "that date [had] pas[sed], and the Secretary ha[d] not informed the Court that he . . . will imminently [] promulgate an NPRM, much less that an ongoing rulemaking is likely to change [the challenged regulation] in material respects." *Id*.; *see also Consumers Union of U.S. v. Miller*, 84 F.R.D. 240, 243 (D.D.C. 1979) (stay not appropriate because "it is equally probable that the [challenged regulation] will be retained in its present form" as "be[ing] rescinded or modified"). Here, HHS anticipates issuing a NPRM no later than April 2022. Frohboese Decl. ¶ 7. That date has not yet passed. HHS's substantial and legitimate reasons for reconsidering the

2020 Rule—including the need to ensure that that the 2020 Rule's provisions adequately advance the Administration's policies—make a continued stay appropriate and undermine any argument that it is equally probable that the 2020 Rule will be retained in its present form. *Id*. ¶¶ 7-9, 12-13.[7]

### III.   IN THE ALTERNATIVE, THE COURT SHOULD MAINTAIN THE STAY AT LEAST PENDING ISSUANCE OF THE NPRM

In the alternative, if the Court is inclined to reconsider the present stay, the Court should, at minimum, maintain the stay pending HHS's anticipated issuance of a NPRM. HHS anticipates issuing a NPRM no later than April 2022. Frohboese Decl. ¶ 7. By that time, Plaintiffs will have additional certainty about whether the proposed rule will address their concerns. *See* Mot. to Lift Stay at 9-11.

### CONCLUSION

HHS has identified a substantial and legitimate interest in ensuring that the 2020 Rule's provisions adequately advance the Administration's policies. HHS intends to evaluate and address those concerns in its ongoing rulemaking proceeding. Frohboese Dec. ¶¶ 7-9, 11-13. Where, as here, HHS has committed to reconsidering the challenged rule, this Court properly granted the parties' joint request to stay the case to avoid unnecessary adjudication and interference with an ongoing administrative process. Because Plaintiffs have provided no basis to prematurely lift the stay, the Court should deny their motion.

---

[7] Plaintiffs point out that a federal court in Massachusetts denied the government's request to stay proceedings pending agency reconsideration. Mot. to Lift Stay at 2 (citing Order, *BAGLY v. HHS*, 1:20-cv-11297-PBS (D. Mass. May 10, 2021) (ECF No. 48). The government respectfully disagrees with the court's decision in *BAGLY*, but the fact that that case is moving forward provides even more reason to keep this one stayed. The *BAGLY* plaintiffs seek judicial review (and vacatur) of the same provisions of the 2020 Rule as Plaintiffs here. As the Supreme Court has explained, when the government faces a multiplicity of suits in various jurisdictions challenging regulations, "actions in all but one jurisdiction might be stayed pending the conclusion of one proceeding." *Abbott Labs.*, 387 U.S. at 155 (citing *Am. Life Ins.*, 300 U.S. at 215-16).

Dated: August 13, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: Liam.C.Holland@usdoj.gov

*Attorneys for Defendants*