**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WHITMAN-WALKER CLINIC, INC.,** *et al.*, | |
| **Plaintiffs,** | |
| v. | **Civil Action No. 20-1630 (JEB)** |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

This suit challenges a 2020 Health and Human Services Rule that revised or repealed much of a 2016 Rule, which had provided a bevy of protections for LGBTQ healthcare patients. Although Plaintiffs had previously agreed to a stay to assess how President Joseph Biden's new administration would proceed, they now ask the Court to lift that stay. The Court declines.

## I.  Background

The Court provided a detailed recounting of the statutory, regulatory, and procedural background of this litigation in its September 2020 Opinion granting in part and denying in part Plaintiffs' Motion for a Preliminary Injunction. Whitman-Walker Clinic, Inc. v. HHS, 485 F. Supp. 3d 1, 11–16 (D.D.C. 2020). Readers seeking more detail may consult that tome, as only a brief summary is necessary here.

Plaintiffs initiated this litigation in June of last year, challenging a 2020 HHS Rule that implemented Section 1557 of the Patient Protection and Affordable Care Act (ACA), which expressly prohibits discrimination in the provision of healthcare services under the ACA, 42

U.S.C. § 18116(a).  See ECF No. 1 (Compl.).  The 2020 Rule significantly rolled back

protections a 2016 Rule had established for LGBTQ individuals in the healthcare system.  See

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of

Authority, 85 Fed. Reg. 37,160 (June 19, 2020) (2020 Rule); Nondiscrimination in Health

Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) (2016 Rule).

In September 2020, the Court issued an Opinion enjoining key provisions of the 2020

Rule, but also concluding that Plaintiffs either lacked standing or were unlikely to succeed on the

merits of their challenges to other portions of the Rule.  See Whitman-Walker Clinic, Inc., 485 F.

Supp. 3d at 64–65.  President Biden entered office several months after that Opinion, and in

February 2021, the Court granted the parties' Joint Motion to Stay proceedings to allow the new

administration to determine its course of action and Plaintiffs to calibrate their strategy moving

forward.  See ECF No. 70 (Mot. to Stay); Minute Order Granting Mot. to Stay (Feb. 16, 2021).

Plaintiffs now move to lift the stay and proceed with this litigation, see ECF No. 74 (Mot. to Lift

Stay), while Defendants contend the *status quo* should remain.  See ECF No. 75 (Def. Opp.).

## II.    Legal Standard

A federal district court "has broad discretion to stay proceedings as an incident to its

power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v.

North American Co., 299 U.S. 248, 254 (1936)).  "[A] trial court may, with propriety, find it is

efficient for its own docket and the fairest course for the parties to enter a stay of an action before

it, pending resolution of independent proceedings which bear upon the case."  Hisler v. Gallaudet

University, 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting Leyva v. Certified Grocers of

California, Ltd., 593 F.2d 857, 863–64 (9th Cir. 1979)).  Once a stay is imposed, the Court may

lift it "[w]hen circumstances have changed such that the court's reasons for imposing the stay no

longer exist or are inappropriate." Marsh v. Johnson, 263 F. Supp. 2d 49, 52 (D.D.C. 2003). In determining whether to do so, the Court retains the same "inherent power and discretion" it exercised to impose the stay. Id.

## III.   Analysis

Plaintiffs urge the Court to allow this litigation to move forward, arguing that the stay is no longer warranted and that they continue to be harmed by the portions of the challenged Rule that remain in effect. See Mot. to Lift Stay at 8–18; ECF No. 76 (Pl. Repl.) at 3–21. The Court is unpersuaded, as lifting the stay is unlikely to either provide Plaintiffs the relief they seek anytime soon or make efficient use of the Court's or the parties' resources.

To begin, the provisions of the 2020 Rule that form the heart of Plaintiffs' objections are currently — and will remain — enjoined. In its September 2, 2020, preliminary-injunction Opinion, the Court barred HHS from "enforcing the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes 'discrimination on the basis of . . . sex stereotyping'" and "from enforcing [HHS's] incorporation of the religious exemption contained in Title IX." Whitman-Walker Clinic, Inc., 485 F. Supp. 3d at 64 (quoting 2016 Rule, 81 Fed. Reg. at 31,467 and 45 C.F.R. § 92.6(b) (incorporating religious "exemptions" contained in various statutes, including Title IX)). Prior to that Opinion, a federal court in the Eastern District of New York had issued a nationwide injunction prohibiting HHS from enforcing the repeal of the 2016 Rule's definitions of "on the basis of sex," "gender identity," and "sex stereotyping." See Walker v. Azar, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020); see also 45 C.F.R. § 92.4 (2019) (formerly codifying 2016 Rule's definition of Section 1557's prohibition of sex discrimination). The same Eastern District of New York court later enjoined the repeal of 45 C.F.R. § 92.206, which "required healthcare providers to 'treat individuals consistent with their gender identity'

and prohibited them from 'deny[ing] or limit[ing] health services that are ordinarily or exclusively available to individuals of one sex, to a transgender individuals based on the fact that the individual's sex assigned at birth, gender identity, or gender otherwise recorded is different from the one to which such health services are ordinarily or exclusively available.'" Walker v. Azar, No. 20-2834, 2020 WL 6363970, at *4 (E.D.N.Y. Oct. 29, 2020) (quoting 45 C.F.R. § 92.206 (2019)).

In sum, as of the filing of this Opinion, HHS is enjoined from enforcing the 2020 Rule's redefinition of "on the basis of sex," its incorporation of the Title IX religious exemption, and the repeal of the regulation prohibiting the denial of health services to transgender individuals because of their gender identity. See Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth v. DHS, No. 20-11297, 2021 WL 3667760, at *3–4 (D. Mass. Aug. 18, 2021) (summarizing nationwide injunctions and declining to address challenges to enjoined actions in similar lawsuit). As challenges to those agency actions constitute much of Plaintiffs' Complaint, decisions of this Court and others have already provided preliminary (and continuing) relief. See Compl., ¶¶ 93–101, 119–30 (objections to redefinition of "on the basis of sex" and incorporation of religious exemption); id., ¶¶ 179–216 (describing harms primarily resulting from increased discrimination on basis of sex).

That said, the Court acknowledges that portions of the 2020 Rule remain in place while the litigation is stayed, but the prejudice Plaintiffs may experience from the continuation of this stay is minimal. They contend that, with respect to the non-enjoined provisions, the stay "would prolong the harms that the [2020] Rule has and continues to impose upon Plaintiffs, their patients, and their members every day [the 2020 Rule] remains in effect." Mot. to Lift Stay at 14. But their desired outcome — a declaration of the 2020 Rule's unlawfulness — is far from

inevitable.  Indeed, this Court previously determined that Plaintiffs either lacked standing to challenge, or were unlikely to succeed on the merits of their challenges to, the portions of the Rule that remain in effect.  See Whitman-Walker Clinic, Inc., 485 F. Supp. 3d at 31–34, 46–53. This conclusion, of course, "does not constitute the law of the case," but "it can be persuasive," Belbacha v. Bush, 520 F.3d 452, 458 (D.C. Cir. 2008) (internal quotation marks and citation omitted), and it is relevant to the Court's balancing of its "interests in judicial economy and any possible hardship to the parties."  Center for Biological Diversity v. Ross, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) (quoting Belsize Social Development Ltd. v. Government of Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012)).  Given that lifting the stay may very well not ultimately provide Plaintiffs the relief they seek from the remaining portions of the 2020 Rule, and that they have already been granted preliminary relief on their central objections to the Rule, Plaintiffs' "possible hardship" is minimal.

Defendants, furthermore, have given Plaintiffs reason to believe that they will soon act to address their concerns.  On the day he entered office, President Biden issued an executive order stating his administration's intent to interpret laws that prohibit sex discrimination in line with Bostock v. Clayton County, 140 S. Ct. 1731 (2020), declaring that "[i]t is the policy of [the Biden] Administration to prevent and combat discrimination on the basis of gender identity or sexual orientation, and to fully enforce . . . laws that prohibit discrimination [on this basis]," and directing agency leaders to develop a plan to "fully implement" these laws and this policy.  See Executive Order 13988: Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation, 86 Fed. Reg. 7,023, 7,023–24 (Jan. 25, 2021); see also Def. Opp. at 3–4.  That same day, President Biden also issued Executive Order 13985, which announced a policy of "pursu[ing] a comprehensive approach to advancing equity for all, including people of

color and others who have been historically underserved, marginalized, and adversely affected

by persistent poverty and inequality."  Executive Order 13985: Advancing Racial Equity and

Support for Underserved Communities Through the Federal Government, 86 Fed. Reg. 7,009,

7,009 (Jan. 25, 2021); see also Def. Opp. at 4.

   In keeping with these directives, HHS initiated an assessment that has "raised substantial

and legitimate policy concerns with the challenged Rule that HHS intends to address in a Section

1557 rulemaking proceeding."  Def. Opp. at 5; see also ECF No. 71 (First Joint Status Report) at

1–2; ECF No. 75-1 (Robinsue Frohboese Decl.), ¶¶ 7–9.  HHS also issued a Notification of

Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the

Education Amendments Act of 1972, which explicitly commits the agency to "interpret[ing] and

enforc[ing] Section 1557's prohibition on discrimination on the basis of sex to include: (1)

Discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender

identity."  Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care

Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984, 27,985 (May 25,

2021); see also Def. Opp. at 5; First Joint Status Report at 2; Frohboese Decl., ¶ 10.

   In addition, HHS's efforts to reconsider the 2020 Rule are underway.  The agency has

held a listening session to consider recommendations for the new Rule — to which Plaintiffs

have contributed — and intends to issue a Notice of Proposed Rulemaking in early 2022.  See

Def. Opp. at 5; ECF No. 73 (Second Joint Status Report) at 2; Frohboese Decl., ¶ 7.  These

actions demonstrate that HHS shares many of Plaintiffs' concerns with the challenged Rule and

provide every indication that it is preparing to initiate a wholesale revision of the 2020 Rule.

   Finally, while Plaintiffs correctly point out that Defendants' rulemaking will not provide

them immediate relief, neither would lifting the stay.  Were the Court to do so, it would first need

to address Defendants' September 29, 2020, Motion to Dismiss — likely to be no quick task given that the last Opinion in this case required over 100 pages.  See ECF No. 57 (Def. MTD); see generally Whitman-Walker Clinic, Inc., 485 F. Supp. 3d at 1.  The Court's ruling on that Motion, furthermore, has no potential to provide Plaintiffs relief; at most, it would allow their case to continue (perhaps in truncated form) to the next round of motions.  Summary-judgment briefing would take no inconsiderable amount of time and would then be followed by another Opinion.  By that point, the "early 2022" date at which the Government has indicated it plans to issue an NPRM may well have passed.  See Def. Opp. at 5; Frohboese Decl., ¶ 7.  In the interim, a substantial amount of the parties' and the Court's resources would have been expended and potentially for little gain.

To both preserve resources and because of a lack of prejudice to Plaintiffs, the Court, exercising its "broad discretion," Clinton, 520 U.S. at 706, concludes that "circumstances have [not] changed such that the court's reasons for imposing the stay no longer exist or are inappropriate."  Marsh, 263 F. Supp. 2d at 52.  The Court thus declines to lift the stay.

## IV.   Conclusion

For the foregoing reasons, the Court will deny Plaintiffs' Motion.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 3, 2021

7